## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JUDY GRAY JOHNSON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LUMINAR TECHNOLOGIES, INC. and MIKE MCAULIFFE, | |
| Defendants. | |

Plaintiff Judy Gray Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Luminar Technologies, Inc. ("Luminar" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that

substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Luminar securities between February 28, 2023 and March 17, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants.

2.    Luminar is an automotive technology company that provides sensor technologies and software for passenger cars and commercial trucks in domestic and international markets.  The Company purports to develop, *inter alia*, photonic integrated circuits ("PICs")[1] for its semiconductor products.

3.    PICs are an important component of light detection and ranging ("LIDAR") technologies, which have become useful for a variety of industries, including the automotive industry in which Luminar operates.  LIDAR technology has become particularly useful in the development of autonomous vehicles.

---

[1] PICs are essentially a type of chip that contains photonic components, as opposed to merely electronic components.

Accordingly, the development of sleeker, simpler, and smaller LIDAR components, including PICs, has become a core focus for managing costs and economies of scale in the mass production of these technologies.

4.    In February 2023, Luminar held its "Luminar Day" investor conference.  In discussing the Company's chip strategy as part of the event, Luminar displayed an image of its purported PIC technology, which was elegant, simple in design, and appeared poised for driving economies of scale and cost reduction in the industry.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Luminar had misappropriated an image of a competitor's PIC to market the Company's own products and capabilities; (ii) the foregoing conduct subjected the Company to a heightened risk of, *inter alia*, litigation and/or regulatory enforcement action; (iii) all the foregoing, once revealed, was likely to negatively impact Luminar's business and reputation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.    On March 17, 2023, *Forbes* reported that the semiconductor developer Lidwave had accused Luminar of attempting to pass off a Lidwave PIC as Luminar's own technology after showing an image of the PIC at the Company's Luminar Day

investor conference and in materials on its website, threatening Luminar with legal action.

7.     On this news, Luminar's stock price fell $0.78 per share, or 9.09%, over two consecutive trading days to close at $7.80 per share on March 20, 2023.

8.     Notably, after Lidwave threatened Luminar with legal action, the Company removed the offending image of Lidwave's PIC from its investor presentation and website, as well as removed a *YouTube* video that included the image of Lidwave's PIC.  In updating the Luminar Day investor presentation, the Company conspicuously replaced what was originally a colorful picture of Lidwave's PIC—which presented an elegant, sleek, and simple design—with a microscopic, black-and-white photo of the Company's own PIC technology, which could have been a picture of either the entire PIC or an individual microscopic section of the chip, and which was, in any event, a far less appealing and bulkier image to market to investors.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).    Luminar is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Luminar securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Luminar is a Delaware corporation with principal executive offices located at 2603 Discovery Drive, Suite 100, Orlando, Florida 32826. Luminar's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "LAZR".

16.    Defendant Mike McAuliffe ("McAuliffe") has served as Chief Executive Officer ("CEO") of the Company's Luminar Semiconductor subsidiary at all relevant times.

17.    McAuliffe possessed the power and authority to control the contents of the presentation materials that he presented on at the Luminar Day investor conference, including the slide that incorporated an image of Lidwave's PIC. McAuliffe was provided with copies of the aforementioned presentation materials alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of his positions with Luminar, and his access to material information available to him but not to the public, McAuliffe knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  McAuliffe is liable for the false statements and omissions pleaded herein.

18.    Luminar and McAuliffe are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Luminar is an automotive technology company that provides sensor technologies and software for passenger cars and commercial trucks in domestic and international markets.  The Company purports to develop, *inter alia*, PICs for its semiconductor products.

20.    PICs are an important component of LIDAR technologies, which have become useful for a variety of industries, including the automotive industry in which Luminar operates.  LIDAR technology has become particularly useful in the development of autonomous vehicles.  Accordingly, the development of sleeker, simpler, and smaller LIDAR components, including PICs, has become a core focus for managing costs and economies of scale in the mass production of these technologies.

### Materially False and Misleading Statements Issued During the Class Period

21.    The Class Period begins on February 28, 2023, when Luminar held its Luminar Day investor conference.  In presentation materials used by Luminar to discuss the Company's chip strategy at that conference, Luminar referenced a picture of Lidwave's PIC, which appeared elegant, sleek, simple in design, and poised for

driving economies of scale and cost reduction in mass producing LIDAR technologies:



(Lidwave's PIC appears as the rightmost image at the bottom of the above investor presentation slide.) Notably, Defendants failed to attribute the foregoing image of the PIC to Lidwave, thereby indicating to investors that the PIC displayed in the image was Luminar's own product and of the Company's own design. In addition to being displayed to investors at the Company's headquarters during the Luminar Day investor conference, as well as via a live and recorded webcast of that conference on the video-sharing platform *YouTube*, Luminar also included the image of Lidwave's PIC in investor presentation materials available on the Company's website.

22.    As Defendants displayed the image of Lidwave's PIC to investors as part of the presentation slides at the Luminar Day investor conference, Defendant

8

McAuliffe, referencing the presentation slide, simultaneously touted the Company's development of LIDAR-enabling technologies, such as PICs, that solved major economic and complexity issues for the industry in producing these technologies at scale. Specifically, as Defendant McAuliffe was referencing the slide containing Lidwave's PIC to investors, without any reference to Lidwave, he stated, in relevant part:

> We only focus on the hardest photon processing problems—generation, detection, and processing. This is what LIDAR is. It's one of the biggest, most difficult physics problems today, with other customers solving similar, very difficult photonic problems. So, we can now take the same platforms, the same products, closely aligned, and leverage that across multiple markets. We solve 1550. There is a general perception that 1550 is an expensive, traditionally an expensive process and it's maybe a drawback. That is not the case. We have solved that problem through, number one, architecture, as Jason described, number two, advanced packaging, and number three, we can drive the economies of scale and the economics associated with that by leveraging both Luminar volume and volume to the wider market. So, we're shifting gears, we're shifting gears to take what has been a sub-scale industry, sub-scale ecosystem, and industrializing that at scale. And we need to do that. We need to do that both for the economics and for the size, weight, and cost in order to deliver LIDAR at millions of units. And as an example, the other key advantage of siliconization is this: people think that maybe the biggest advantage is you control your own supply chain, that's true, you can control the quality, that's true, you can control the performance, that's true. But the biggest advantage of siliconization, in general, is you can take a lot of complexity and cost out of the product—complexity in cabling, complexity in optics, complexity in electromechanical. So, anything you can put in silicon, you can put in silicon. And I think we can see from other industry leaders, like big fruit companies, that owning that stack and internalizing and siliconizing anything you can delivers elegant architectures, breakthrough performance, and breakthrough economics.

23.     Following the Luminar Day investor conference, Luminar's stock price fell $0.78 per share, or 9.09%, over two consecutive trading days to close at $7.80 per share on March 20, 2023.

24.     The statements referenced in ¶¶ 21-22 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Luminar had misappropriated an image of a competitor's PIC to market the Company's own products and capabilities; (ii) the foregoing conduct subjected the Company to a heightened risk of, *inter alia*, litigation and/or regulatory enforcement action; (iii) all the foregoing, once revealed, was likely to negatively impact Luminar's business and reputation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

25.     On March 17, 2023, half an hour before markets closed, *Forbes* published an article (the "*Forbes* Article"), reporting that the semiconductor developer Lidwave had accused Luminar of attempting to pass off a Lidwave PIC as Luminar's own technology after showing an image of the PIC at the Company's

Luminar Day investor conference and in materials on its website, threatening Luminar with legal action.  Specifically, the *Forbes* Article stated, in relevant part:

> Luminar . . . is accused of passing off a next-generation chip design created by a rival as its own technology after showing an image of the processor at a recent investor conference and in materials on its website. Lidwave, the Israeli startup making the claim, says it plans to take legal action over the matter.

> The image, identified as a [PIC] by Luminar in its February 28 conference and webcast with no reference to Lidwave, looks identical to a chip on Lidwave's website that is its core technology. The Jerusalem-based company sent a cease-and-desist letter to Luminar on March 14 asking it to remove the image. It also notified the [SEC] of Luminar's "misuse of its product image to falsely promote its abilities and securities to investors."

> Lidwave said it hadn't received a response from the company as of 3 p.m. New York time on Friday.

> * * *

> "***Integrated photonics allows lidar to become as scalable and profitable as anybody has imagined. . . . But surprisingly, the picture Luminar presented of a [PIC] as their solution is not their solution, but basically the exact image of our lidar***," Lidwave CEO Yehuda Vidal told *Forbes*. "We will continue with a lawsuit if needed because it's a very huge problem for us. Some of our customers are very confused about what we do versus what they do."

> * * *

> The image appeared during a presentation by Mike McCauliffe, head of Luminar's semiconductor team. The full Luminar Day webcast on YouTube, which had nearly 750,000 views, was taken down and removed from the company's website.

"We have removed and replaced that image with an image of a new Luminar Semiconductor [PIC]," company spokesman Milin Mehta told *Forbes*. "It was inconsequential to the presentation."

(Emphasis added.)

26.    The *Forbes* Article included a picture of Defendant McAuliffe as he presented on the offending picture of Lidwave's PIC during the Luminar Day investor conference:



Mike McCauliffe, head of Luminar's semiconductor team, discusses the company's chip strategy during its February 28 investor conference. LUMINAR VIA YOUTUBE

27.    The *Forbes* Article also included an image of Lidwave's PIC as shown on Lidwave's website, which indeed appeared identical to the PIC image used in Luminar's investor presentation:



Lidwave's integrated photonics chip.  LIDWAVE

28.    Moreover, the *Forbes* Article highlighted why the development of sleeker, simpler, and smaller LIDAR components, including PICs, had become so important to companies developing LIDAR technologies when managing costs and economies of scale in their production.  The *Forbes* Article also noted that this was especially integral to Luminar's business, since the Company "is poised to be the biggest supplier of the technology by driving down the cost dramatically in the years to come":

> Lidar's ability to create detailed, 3-D maps of a vehicle's surroundings using lasers has made it a core technology in the race to perfect self-driving cars and trucks. But it's also relatively expensive, with individual units costing thousands of dollars each. Luminar, which has high-volume supply agreements with automakers including Mercedes-Benz, Volvo, Nissan, Polestar, China's SAIC and truck maker Daimler, is poised to be the biggest supplier of the technology by driving down the cost dramatically in the years to come.
>
> Over the past five years, Orlando-based Luminar, created by optics prodigy (and Forbes 30 Under 30) alum Austin Russell moved from being one of dozens of lidar startups vying to challenge Velodyne, the first company to commercialize the technology for autonomous vehicles, to the de facto industry leader, in terms of the number of

vehicles that will be using its sensors. Russell told *Forbes* last month that he intends to have Luminar lidar in "millions of vehicles on the road within a few years."

* * *

Processing vast amounts of data collected by laser sensors requires ever more powerful chips that must also be cheaper and easier to produce. Lidwave's Vidal said that is exactly what his company, formed in 2019 and hoping to begin commercial deliveries in 2024, is working to perfect.

"The main problem holding back wide-scale adoption of lidar is its cost resulting from extremely complex microprecision assembly. Today there is no lidar producer that's conclusively solved the economy-of-scale (production) challenge," he said. "A photonic integrated chip platform is basically the Holy Grail for lidar."

Accordingly, Defendants were particularly motivated to show attractive, simple, and cost-efficient designs of these LIDAR components in their presentation materials for the Luminar Day investor conference, including by misappropriating an image of Lidwave's PIC technology.  Taken in conjunction with Defendant McAuliffe's statements regarding the importance of driving down the costs and complexities of these technologies, as referenced in ¶ 22, *supra*, as the Company displayed Lidwave's PIC to investors, the market was duped into believing that Lidwave's simple and sleek PIC design was Luminar's design.

29.    Following publication of the *Forbes* Article, Luminar's stock price fell $0.78 per share, or 9.09%, over two consecutive trading days to close at $7.80 per share on March 20, 2023.

30.    Notably, after Lidwave threatened Luminar with legal action, the Company removed the offending image of Lidwave's PIC from its investor presentation and website, as well as removed a *YouTube* video that included the image of Lidwave's PIC.  In updating the Luminar Day investor presentation, the Company conspicuously replaced what was originally a colorful picture of Lidwave's PIC—which presented an elegant, sleek, and simple design—with a microscopic, black-and-white photo of the Company's own PIC technology, which could have been a picture of either the entire PIC or an individual microscopic section of the chip, and which was, in any event, a far less appealing and bulkier image to market to investors:



(Luminar's PIC appears as the rightmost image at the bottom of the above amended investor presentation slide.)  Indeed, if the Company *did* have a comparable photo of its own PIC technology to market to investors, it utterly failed to provide such an

image in either its original Luminar Day investor presentation materials or when replacing the image of Lidwave's PIC in the amended materials.

31.    Even more conspicuous, Defendant McAuliffe, being the CEO of the Company's semiconductor subsidiary, would have presumably known what the Company's own PIC technology actually looked like, and should have been on notice that the image of Lidwave's PIC technology in the original Luminar Day investor presentation materials was not an actual image of the Company's own technology.

32.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Luminar securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Luminar securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Luminar or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Luminar;

- whether Defendant McAuliffe caused Luminar to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Luminar securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Luminar securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Luminar securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

42. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Luminar securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Luminar securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or

issuance of the presentation materials, statements, and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Luminar securities.  Such presentation materials, statements, and documents were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Luminar's technology and business prospects.

46.     By virtue of his positions at Luminar, Defendant McAuliffe had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As a senior manager of Luminar, Defendant McAuliffe had knowledge of the details of Luminar's internal affairs.

48.     Defendant McAuliffe is liable both directly and indirectly for the wrongs complained of herein.  Because of his positions of control and authority, Defendant McAuliffe was able to and did, directly or indirectly, control the content of the statements of Luminar.  As an officer and/or senior manager of a publicly held company, Defendant McAuliffe had a duty to disseminate timely, accurate, and truthful information with respect to Luminar's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading presentation materials, releases, and public statements, the market price of Luminar securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Luminar's business and/or technology, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Luminar securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, Luminar securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Luminar securities at prices

artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Luminar securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Luminar securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented statements to the investing public.

## <u>COUNT II</u>

### (Violations of Section 20(a) of the Exchange Act Against Defendant McAuliffe)

52.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, Defendant McAuliffe participated in the operation and management of Luminar, and conducted and participated, directly and indirectly, in the conduct of Luminar's business affairs.  Because of his senior positions, he knew the adverse non-public information about Luminar's misstatements.

54.    As officer and/or senior manager of a publicly owned company, Defendant McAuliffe had a duty to disseminate accurate and truthful information with respect to Luminar's condition and operations, and to correct promptly any public statements issued by Luminar which had become materially false or misleading.

55.    Because of his positions of control and authority as senior officer and/or manager, Defendant McAuliffe was able to, and did, control the contents of the various reports, presentations, and public filings which Luminar disseminated in the marketplace during the Class Period concerning Luminar's technology.  Throughout the Class Period, Defendant McAuliffe exercised his power and authority to cause Luminar to engage in the wrongful acts complained of herein.  Defendant McAuliffe, therefore, was a "controlling person" of Luminar within the meaning of Section 20(a) of the Exchange Act.  In this capacity, Defendant McAuliffe participated in the unlawful conduct alleged which artificially inflated the market price of Luminar securities.

56.    Defendant McAuliffe, therefore, acted as a controlling person of Luminar.  By reason of his senior management positions, Defendant McAuliffe had the power to direct the actions of, and exercised the same to cause, Luminar to engage in the unlawful acts and conduct complained of herein.  Defendant McAuliffe possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.    By reason of the above conduct, Defendant McAuliffe is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Luminar.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated: May 26, 2023    Respectfully submitted,

          **MILLER SHAH LLP**

          <u>*/s/ Jayne A. Goldstein*</u>
          Jayne A. Goldstein
          Nathan C. Zipperian
          1625 N. Commerce Pkwy, Suite 320
          Fort Lauderdale, Florida 33326
          Telephone: (954) 515-0123
          Facsimile: (866) 300-7367
          jagoldstein@millershah.com
          nczipperian@millershah.com

          **POMERANTZ LLP**
          James M. LoPiano (lead counsel)
          (*pro hac vice* application forthcoming)
          600 Third Avenue
          New York, New York 10016
          Telephone: (212) 661-1100
          Facsimile: (917) 463-1044
          jlopiano@pomlaw.com

          *Attorneys for Plaintiff Judy Gray Johnson*