UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISIION

| | |
|---|---|
| JOHN ALMS, Individually and on Behalf of All Others Similarly Situated, Plaintiff, | Case No. 6:23-cv-00982-PGB-LHP |
| v. | **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| LUMINAR TECHNOLOGIES, INC., MIKE MCAULIFFE, AUSTIN RUSSELL, and JASON EICHENHOLZ, Defendants. | |

## I.   <u>INTRODUCTION</u>

Plaintiff's claims for securities fraud do not survive the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA") and Rule 9(b). According to Plaintiff, Defendants schemed to defraud investors of Luminar Technologies, Inc. ("Luminar" or the "Company") by causing Luminar to issue an investor presentation that falsely represented a picture of a competitor's computer chip as its own. Defendants' alleged fraud, says Plaintiff, was revealed a little over two weeks later when the competitor publicly accused Luminar of using a picture of the competitor's chip rather than a picture of Luminar's chip.

But there are many holes in Plaintiff's theory of fraud. For one thing, no one even mentioned the challenged image, let alone represented that the chip depicted in the image was Luminar's proprietary chip. In fact, the surrounding context of

the presentation makes clear that the image only purported to show a general representation of a *type* of chip that Luminar's newly formed subsidiary is making. Nor does Plaintiff offer any plausible motive for the alleged fraud, or even attempt to explain *why* Defendants would try to pass off a picture of a competitor's chip as Luminar's own chip, knowing that the allegedly concealed truth that the depicted chip was not Luminar's chip could be readily exposed by the competitor.

Instead, Plaintiff asserts that Defendants, as executives of Luminar, surely would have known what Luminar's own chips look like, and based on that assertion, Plaintiff *assumes* that Defendants inserted the challenged picture into the investor presentation with "scienter," or fraudulent intent. But the PSLRA does not allow Plaintiff to rely on speculation and innuendo, or illogical and implausible assumptions. Rather, the PSLRA requires Plaintiff to plead specific facts creating a "strong inference" that Defendants made a materially false or misleading statement with "severe recklessness" or actual intent to defraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 314 (2007); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1299 (11th Cir. 2011). A "strong inference" of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S at 314. Here, the notion that a company and its executives, without any alleged motive, would attempt to pass off a competitor's

product as their own, when such an alleged fraud would be readily exposed, does not create even a plausible inference of scienter, much less an inference of scienter that is cogent and at least as compelling as the competing innocent explanation. Simply put, Plaintiff's claim for securities fraud defies common sense, and "the PSLRA neither allows nor requires [the Court] to check [its] disbelief at the door." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).

In any event, Defendants did not use a "false" photo of Luminar's chip and attempt to pass off a competitor's chip as Luminar's chip, as Plaintiff claims. While Plaintiff repeatedly insists that the challenged image purports to falsely show "***Luminar's*** core chip technology," Amended Complaint ("Compl.") ¶ 60, ***the image is not labeled as Luminar's chip***. To the contrary, the challenged image is labeled "***Photonic Integrated Circuits***," plural, a generic common name for a ***type*** of chip technology that has existed for decades. There was no representation whatsoever that the challenged image depicted a Luminar chip. During the investor presentation, Defendant Mike McAuliffe explained how Luminar's new subsidiary can develop common platforms that focus on the challenges of photon generation, detection, and processing in high scale production. In that context, the "Photonic Integrated Circuits" pictured in the challenged image are one of the four "common" technology platforms that Luminar's subsidiary would manufacture. Because the image does not purport to show Luminar's chip—and Defendants

never represented as such—the image was not actionably false or misleading.

With that context in mind, Plaintiff's Section 10(b) and Rule 10b-5 claim must be dismissed for two independently dispositive reasons. *First,* Plaintiff does not allege that any of Defendants' statements were false or misleading when made. Placed in the context of the investor presentation and presentation slides, the challenged image is not false or misleading. And while Plaintiff argues that the "false image" renders other written and oral statements about Luminar's technology false and misleading, the image conveys ***nothing*** about the capabilities of Luminar's proprietary technology, and thus Plaintiff fails to allege any ***facts*** to show that those other statements were in any way false or misleading. Plaintiff's falsity allegations also fail because the challenged written and oral statements are puzzle-pled, in violation of the PSLRA's and Rule 9(b) particularity requirements, and many of those challenged statements are also legally inactionable puffery.

***Second***, Plaintiff fails to allege particularized facts creating the required "strong inference" that any Defendant acted with scienter. As noted, Plaintiff's theory of fraud is illogical, and he fails to allege any plausible motive for inserting a purportedly misleading thumbnail photo in a 165-page, four-hour investor presentation. Plaintiff also does not allege a single specific fact to show that any Defendant knew that any challenged statement was false or misleading when made, and Plaintiff's attempt to establish scienter through boilerplate allegations of

Defendants' institutional knowledge or Luminar's "core operations" fails as a matter of law. When Plaintiff's allegations are viewed holistically, as they must be under the PSLRA, any inference that Defendants sought to defraud investors is greatly outweighed by the innocent alternative explanation, which is that a member of Luminar's investor presentation team included the challenged image in the presentation merely to give a visual illustration of the generic type of chip technology that Luminar's newly formed subsidiary manufactures.

For those reasons, Plaintiff's claims should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Luminar and the Individual Defendants

Luminar is a publicly traded company that develops technologies for self-driving cars, including a light detection and ranging sensor, or "lidar," and the software to run it. *See* Ex.[1] A at 3. Austin Russell is Luminar's founder, chief executive officer, president and chairman of the board, and Dr. Jason Eichenholz is Luminar's co-founder and chief technology officer.

Luminar builds its lidar sensors from the "chip level up," meaning the Company constructs the diverse elements of the sensors in-house. Compl. ¶ 34; Ex. A at 3. Elements of the "technology stack" that Luminar manufactures include a proprietary laser, a dynamic scanner, an ultra-low noise detector, and a processor,

---

[1] "Ex." refers to the Exhibits attached to the Declaration of John M. Brennan, Jr. in Support of Defendants' Motion to Dismiss Amended Complaint.

or photonic integrate circuit ("PIC"). *See* Compl. ¶ 43; Ex. B at 76, 85.

Michael McAuliffe is the chief executive officer of Luminar Semiconductor ("LS"), a wholly-owned subsidiary of Luminar. Luminar formed LS in February 2023 with the goal of developing semiconductor technologies that could be used by Luminar *and* marketed to third-party customers. Compl. ¶¶ 36-40.

## B.    Mr. McAuliffe Introduces LS at Luminar Day

On February 28, 2023, Luminar hosted "Luminar Day," a four-hour investor presentation where Company representatives introduced Luminar's business and technology, demonstrated its products, and discussed its forward-looking financial plan, among other things. *See* Ex. B.[2] As part of Luminar Day, Mr. McAuliffe made a presentation introducing LS, the Company's then-brand-new subsidiary. *See* Ex. D; Ex. B at 83 *et seq*. As Mr. McAuliffe discussed, LS was formed to drive "the current and future Luminar [technology] roadmaps, but importantly, also to create a broader ambition to be a photonics player in the wider market," by "build[ing] chip scale components and chip scale optoelectronic engines to solve really impactful problems for the world." Ex. D at 2:16-22; Ex. B at 84. Referencing the "stack" of technologies that go into Luminar's lidar, *see* Ex. B at 85, Mr. McAuliffe noted that the "same technologies and the same capabilities that make Luminar successful, they can be applied to other markets" and "other

_____

[2] A recording of the entire Luminar Day livestream is available at https://youtu.be/-OL-8bML7Sg (the "Livestream"). A certified transcript of Mr. McAuliffe's portion of the presentation is provided as Ex. D.

customers [who] have similar problems" as Luminar," Ex. D at 3:20-4:1.

Mr. McAuliffe then turned to the presentation slide at issue in this case, which is titled "Common Platforms Drive Scale." Ex. B at 86 (the "Common Platforms slide"). Mr. McAuliffe stated that "it's fundamental to [LS's] strategy to understand that those common [technology] needs can drive common platforms," and that LS "only focus[es] on the hardest photon processing problems[,] generation detection and processing." Ex. D at 4:6-10. Tellingly, the Complaint uses an ellipses to omit, *see* Compl. ¶ 61, what Mr. McAuliffe said next:

> [W]e have **other customers** solving similar, very difficult photonic problems. **So we can now take the same platforms**, the same products, closely aligned, **and leverage that across multiple markets**.

Ex. D at 4:11-15 (emphases added). Across the bottom of the Common Platforms slide are examples of the "common platforms" that Mr. McAuliffe was referencing, which include semiconductor technologies at the "Chip die level," those with "Hybrid Integration," "OptoElectronic Engines," and "Photonic Integrated Circuits," each with a small picture of the type of common platform being named. Ex. B at 86.[3] Mr. McAuliffe stated that LS "can control, design, and optimize semiconductor platforms for achieving th[at] full stack of technologies." Ex. D at 6:20-22. Importantly, at no time during Mr. McAuliffe's presentation did

---

[3] Mr. McAuliffe finished by discussing (i) LS's team of design experts, Ex. B at 87, (ii) the variety of industries where LS's semiconductor platforms can be utilized, *id.* at 88, and (iii) the industries where LS already has third-party customers, *id.* at 89; *see also* Ex. D at 7-10.

he reference Photonic Integrated Circuits in general or the image in question at all.

**C. Luminar Is Accused of Showing Another Company's Chip on the Common Platforms Slide**

Just over two weeks later, on March 17, 2023, *Forbes.com* published an article in which another chip manufacturer claimed that the thumbnail image of the "Photonic Integrated Circuits" on the Common Platforms slide was not Luminar's chip. *See* Compl. ¶ 69. The article stated that the competing chip maker had "notified the [SEC] of Luminar's 'misuse of its product image.'" *Id.*

In a March 24, 2023 letter to shareholders, Luminar chief financial officer Tom Fennimore wrote, in pertinent part, that:

> as part of our Luminar Day, a member of our team included a thumbnail of a generic graphic of a photonic integrated circuit on a single slide in a 165 page presentation. This thumbnail was there to give a visual illustration of a generic photonic integrated circuit in our semiconductor section of the presentation. A startup company that Luminar has never heard of contacted the media claiming that we were improperly passing off their tech as ours. This is clearly not the case. For the avoidance of doubt, we replaced the thumbnail with an actual microscopic photo of one of our integrated circuits.

Ex. C at 2. As Mr. Fennimore's statement indicates, since March 2023, both the Livestream and the presentation deck available online feature a revised Common Platform slide, with a picture of one of Luminar's many PIC circuits in the thumbnail image of the "Photonic Integrated Circuits." *See* Ex. B at 87.

**III. THE COMPLAINT'S ALLEGATIONS**

Plaintiff alleges violations of Section 10(b) and 20(a) of the Exchange Act,

and Rule 10b-5 promulgated thereunder, on the basis of two categories of alleged misstatements. ***First***, Plaintiff challenges certain oral and written statements made during the Luminar Day presentation, Compl. ¶ 61, in press releases issued the same day, *id.* ¶ 63, and in the Company's 2022 Form 10-K annual report, which was also issued on the same day, *id.* ¶ 64 (together, the "Challenged Statements"). Plaintiff block-quotes the Challenged Statements in the Complaint and does not identify which specific portions are alleged to be misleading, but generally speaking, the Challenged Statements discuss: LS's strategy to design and market "common platform" technologies, *id.* ¶ 61, Luminar's strategy for bringing "advanced . . . technologies in-house," *id.* ¶ 63, Luminar's year being off to a "strong start," and its team doing a "great job" *id.*, and Luminar's "Iris" lidar product, and the "Core Sensor Software" that drives it, *id.* ¶ 64.

Plaintiff claims the Challenged Statements were misleading because they omitted to disclose that (i) "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival," and (ii) Luminar "relied on a false image of its core technology" on the Common Platforms slide. *Id.* ¶ 66. But none of the Challenged Statements references or refers to Luminar's proprietary PIC chip, *id.* ¶¶ 61, 63, or to the image that appears on the Common Platform slide, and none of the Challenged Statements references or refers to any competitor's chip, or seeks to compare Luminar's chip to a competitor's chip in

any way. Nor are there any fact alleged to show how Luminar's PIC chip was "less sophisticated" than its competitor's chip in any event.

**Second**, Plaintiff challenges the thumbnail image of the "Photonic Integrated Circuits" featured on the Common Platforms slide. *Id.* ¶¶ 60, 65 (the "Challenged Image"); Ex. B at 87. Plaintiff insists that the slide identifies the Challenged Image as "***Luminar's*** core chip technology," Compl. ¶ 60 (emphasis added),[4] and argues that because the image does not show Luminar's own chip, it a "false image," *id.* ¶ 66, that renders the "entire deck of slides" false and misleading, *id.* ¶ 60.

But the Common Platforms slide does not identify the Challenged Image as Luminar's proprietary PIC chip. Ex. B at 86. Rather, it identifies the Challenged Image as "Photonic Integrated Circuits," a generalized term describing one of the common types of circuits that will help LS develop the "common platforms" that, as Mr. McAuliffe explained, LS plans to "leverage across markets." *Id.*; *see also* Ex. D at 4:11-15. Put simply, Mr. McAuliffe and the Common Platforms slide make it clear that the Challenged Image shows a generalized ***category*** or ***type*** of technology—***not*** Luminar's proprietary technology. Were there any doubt, the fact

---

[4] *See also* Compl. ¶ 7 (the slide showed "image of a sophisticated PIC chip design ***purporting to be Luminar's proprietary design***"), ¶ 8 (the "image ***purport[ed] to be Luminar's chip***"), ¶ 11 (Luminar "lie[d] about ***its core lidar component***"), ¶ 12 ("the false depiction of ***Luminar's PIC chip***"), ¶ 56 ( the image "***Luminar pictured for the culmination of its chip design process*** [was] an imposter chip), *id.* (the Challenged Image was "showcased to investors ***as demonstrating Luminar's advanced chip technology***"), ¶ 66 (Luminar "relied on a false image of ***its core technology***"), ¶ 69 ("the picture Luminar presented of a [PIC] as ***their solution***").

that the Challenged Image is labeled "Photonic Integrated Circuit*s*"—plural—shows that the slide is not referring to **Luminar's** proprietary PIC chip, or to any one specific PIC chip, but rather to the generalized type of "Photonic Integrated Circuit*s*" that LS expects to market to third-party clients.

Plaintiff likewise misrepresents Mr. McAuliffe's presentation. According to Plaintiff, the "image purporting to be Luminar's chip []. . . was **highlighted in particular** during McAuliffe's presentation." Compl. ¶ 8 (emphasis added). But Mr. McAuliffe did not "highlight" or even **refer** to the Challenged Image during his presentation, and made no mention of a PIC chip, let alone **Luminar's** proprietary PIC chip. *See* Ex. D. Instead, during the period when the Common Platforms slide was on the screen, Mr. McAuliffe discussed how "common needs . . . drive common platforms," which included the "Photonic Integrated Circuits" illustrated by the Challenged Image. *Id.* at 4:6-8; *see also* Compl. ¶ 61.

On the issue of Defendants' alleged scienter, or intent to deceive, the Complaint offers nothing more than speculation, and does not allege a single specific fact to show any Defendant's state of mind. In total, Plaintiff claims: the "false image of [Luminar's] core technology [] would have been obviously erroneous to Luminar management," Compl. ¶ 66; "Defendants appeared to want to cover up . . . that their PIC chip was less complex," *id.* ¶ 67; Defendants "chose [not] to use" an image of Luminar's PIC chip, "opting instead for a pirated image,"

*id.* ¶ 74; Defendants had "possession of or access to information indicating" that the Challenged Image was wrong, as well as "access to the correct photo," *id.* ¶¶ 77, 79; Mr. McAuliffe "would have known that the PIC featured in the slide did not belong to Luminar," *id.* ¶ 80; "[i]t is nonsense that a company that produces a PIC would put a photo of a generic device on its presentation rather than the image of its own mission-driving, groundbreaking PIC," *id.* ¶ 82; "it is clear that [another company's chip] was deliberately sought out and placed in the slide, not mistakenly included," *id.* ¶ 84; and "[b]ecause the fraud alleged herein relates to the core business of Luminar . . . knowledge of the facts underlying the fraudulent scheme may be imputed to the Individual Defendants," *id.* ¶¶ 86, 91.

## IV. <u>LEGAL STANDARD</u>

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere labels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient, and bare assertions are not "entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009). The PSLRA and Rule 9(b) impose additional exacting pleading requirements on Plaintiff's Section 10(b) and Rule 10b-5 claim.

***First***, Plaintiff must specify with particularity each statement alleged to have been false or misleading and the reasons why it was false or misleading when

made, and all facts on which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b). "[S]tatements must be analyzed in context when determining whether or not they are materially misleading." *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1352 (N.D. Ga. 2001). ***Second***, Plaintiff must allege particularized facts giving rise to a "strong inference" that Defendants acted with scienter, 15 U.S.C. § 78u-4(b)(2), *i.e.*, an "intent to defraud or severe recklessness on the part of the defendant," *FindWhat*, 658 F.3d at 1299. A strong inference of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S at 314. The Court must weigh all facts and inferences, including those that weigh ***against*** a finding of scienter. *Id.* at 323-24. If the facts alleged do not create an inference of scienter that is cogent and at least as compelling as the competing innocent explanation, the complaint must be dismissed. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238-39 (11th Cir. 2008).

## V.     <u>ARGUMENT</u>

### A.     <u>Plaintiff Fails to Plead A Section 10(b) and Rule 10b-5 Claim</u>

Plaintiff does not plead, in accordance with the PSLRA's and Rule 9(b)'s strict requirements, a false or misleading statement, or facts creating a strong, cogent, and compelling inference that any Defendant made such a statement with scienter, and so Plaintiff's Section 10(b) and Rule 10b-5 claim must be dismissed.

### 1. Plaintiff Fails to Plead a False or Misleading Statement

As discussed above, Plaintiff alleges two categories of alleged misstatements, (i) the Challenged Statements made at Luminar Day, in press releases and in Luminar's 2022 annual report, *see* Compl. ¶¶ 61, 63-64, and (ii) the Challenged Image that appeared on the Common Platforms slide at Luminar Day, *id.* ¶¶ 60, 65. None of the alleged misstatements is actionably false or misleading.

### a. The Complaint Alleges No Facts Showing That Any of The Challenged Statements Are Misleading

Plaintiff fails to adequately plead that any of the Challenged Statements are false or misleading for four different reasons. ***First***, the Challenged Statements are puzzle-pled, in violation of the PSLRA's requirement that Plaintiff specify "***each*** statement alleged to have been false or misleading and the reasons why ***it*** was false or misleading when made." 15 U.S.C. § 78u-4(b)(1) (emphasis added). The Challenged Statements are all block-quoted, without any attempt by Plaintiff to identify which portions are allegedly misleading, Compl. ¶¶ 61, 63-64, and they are all alleged to be misleading for the same two unrelated reasons, *id.* ¶ 66. Because it is impossible "to discern exactly which parts" of the Challenged Statements "Plaintiff challenges and why," the allegations constitute "'puzzle pleading' that fails to adequately plead an actionable misstatement." *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, *7 (M.D. Fla. June 15, 2023); *see also Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415, *3 (M.D. Fla. Aug. 24,

2022) ("excessive block quoting . . . fails to meet the standard of Rule 9(b)").

**Second**, while Plaintiff alleges that the Challenged Statements are misleading by omission, Compl. ¶ 66, "[d]isclosure is required under [Rule 10(b) and Rule 10b-5] only when necessary to make … [other] statements made . . . not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011) (citation and internal quotations omitted). Here, there is a complete mismatch between the subject matter of Challenged Statements and the allegedly omitted "facts"—that is, none of the Challenged Statements refers to Luminar's PIC chip, let alone compares it to a competitor's chip, and thus the alleged omission that "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival," Compl. ¶ 66, could not have rendered the Challenged Statements actionably misleading, *see Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019) ("A plaintiff fails to adequately plead falsity under the PSLRA when 'the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves.'" (citation omitted)). Likewise, none of the Challenged Statements refers to the Challenged Image, such that the failure to disclose that it was "a false image," Compl. ¶ 66, could have rendered the Challenged Statements misleading. Put simply, even if Plaintiff's allegedly omitted "facts" were true, they would not be **inconsistent** with the Challenged Statements such that they would have caused

them to be misleading. *See Meide v. Pulse Evolution Corp.*, 2020 WL 5350325, *15 (M.D. Fla. Sept. 4, 2020) (no falsity in the absence of "facts showing how or why the statements were false or otherwise inconsistent with" the alleged truth).

***Third***, Plaintiff does not allege specific facts to show how any of the Challenged Statements was false when made. Plaintiff claims that the Challenged Statements were misleading because "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival," Compl. ¶ 66, but does not allege a single specific fact to support that claim. At most, Plaintiff simply ***concludes*** from the image of Luminar's PIC chip that it is "apparently" of lower quality. *Id.* But conclusory allegations cannot be used to state a claim, *Ashcroft,* 556 U.S. at 663 and, in any event, a picture of Luminar's PIC chip says nothing about the chip's "sophistication in design and function," let alone in comparison to another company's chip. Because Plaintiff offers only a litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, Plaintiff fails to plead the falsity of the Challenged Statements. *See Theoharous v. Fong*, 256 F.3d 1219, 1226-27 (11th Cir. 2001) ("Because the plaintiffs failed to plead any particular facts indicating whether or how any of these statements were false or misleading, these paragraphs failed to state a claim under the PSLRA").

***Fourth***, many sections of the Challenged Statements are "generalized,

vague, nonquantifiable statements of corporate optimism," or puffery, and therefore are not "materially actionable" in any event. *Hattaway*, 2023 WL 4030465 at \*9 (citation omitted). For example, statements about "advanced packaging," "breakthrough performance," Compl. ¶ 61, "advanced technologies," "unmatched [] performance," "successfully executing [] plans," a "strong start" and a "great job," *id.* ¶¶ 63-64, are not actionable because they do not assert the type of "specific, verifiable facts that reasonable investors would rely on in deciding whether to buy or sell [a company's] securities." *Phila. Fin. Mgmt. of San Francisco, LLP v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th Cir. 2014).[5] Thus, Plaintiff's Section 10(b) and Rule 10b-5 claim, to the extent it is predicated on the Challenged Statements, must be dismissed for that additional reason as well.

### b.    Plaintiff Misrepresents the Context of the Challenged Image In An Effort to Manufacture a "Misstatement"

Plaintiff also alleges that the thumbnail photo of the "Photonic Integrated Circuits" included on the Common Platforms slide is materially misleading because "Luminar failed to disclose that it relied on a false image of its core technology." Compl. ¶ 66. But the falsity of any statement must be analyzed in

---

[5] *See, e.g.*, *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003) (statements about "strong performance" are inactionable puffery); *Michigan Carpenters' Pension Plan v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, \*20-21, 23-24 (M.D. Fla. Mar. 29, 2019) (statements about "competitive advantage," and "great opportunity" are inactionable puffery); *Hattaway*, 2023 WL 4030465 at \*7 (statements about "exceptional growth," "strong adaptation of our technology," and "impressive execution" are puffery).

context, *In re S1*, 173 F. Supp. 2d at 1352, and as discussed above, the Common Platform slide does not identify the Challenged Image as Luminar's proprietary PIC chip, *see supra* at pp. 9-12. Rather, it identifies the Challenged Image using the generic term "Photonic Integrated Circuits," *see* Ex. B at 86, which is one of the common technology platforms of LS, as Mr. McAuliffe described in his talk, *see* Ex. D at 4:6-8. Alongside the Challenged Image, the Common Platforms slide lists three other common technologies—"Chip die level," "Hybrid Integration," and "OptoElectronic Engines"—none of which references Luminar's proprietary products, and each of which is accompanied by a generic photo to show the type of "Common Platform" being named. Ex. B at 86.[6] Put simply, all of the images on the Common Platform slide show common technology platforms, and because the Challenged Image does not purport to show Luminar's proprietary PIC chip, Defendants' alleged failure to disclose that the image was not Luminar's chip, Compl. ¶ 66, is not actionably misleading, *see FindWhat*, 658 F.3d at 1306 (a statement is misleading only if it "conveyed to the public a false impression").

Plaintiff calls it "nonsense" that Luminar "would put a photo of a generic device on its presentation rather than the image of its own mission-driving, groundbreaking PIC," Compl. ¶ 82, but again, Mr. McAuliffe was not discussing

---

[6] The generic image of the "Hybrid Integration" technology pictured on the Common Platform slide, *see* Ex. B at 86, is used on another slide of the Luminar Day presentation to denote the generalized category of "Lidar Chip Components" being discussed there, *id.* at 57.

*Luminar's* proprietary PIC chips, but rather the "common" categories of technology *LS* expects to produce for Luminar and third-party customers. Tellingly, where the Luminar Day presentation actually pictured Luminar's proprietary technology, *it was labelled as such*, s*ee* Ex. B at 30-31, 47-49, 77-79, 95-97, 99, 102, and where the presentation included images of *other companies' products,* they were also labeled appropriately, *id.* at 9-10.

Plaintiff argues that "the problem for Luminar is that Luminar did not design, control or have any rights to the chip it pictured." Comp. ¶ 56. But Defendant *never represented as such*, and claims of purported misappropriation or copyright infringement, *see, e.g.*, *id.* ¶ 85, are not at issue here. The question under Section 10(b) and Rule 10b-5 is whether the Challenged Image was misleading when read in context, and because it did not purport to show Luminar's chip, it was not misleading for failing to disclose it was not Luminar's chip.

### 2.    Plaintiff Fails to Allege a "Strong Inference" of Scienter

Plaintiff separately fails to plead specific facts creating a "strong inference" that any Defendant acted with scienter. Plaintiff's conclusory allegations are insufficient to satisfy the stringent pleading requirements of the PSLRA and cannot overcome the patent implausibility of Plaintiff's claim of fraud.

### a.    There Are No Specific Facts Alleged As To Any Individual Defendant's State of Mind

Plaintiff fails to allege particularized facts creating a "strong inference" of

scienter. The PSLRA requires that each Defendant's scienter be alleged "with respect to each act or omission," 15 U.S.C. § 78u-4(b)(2)(A), but Plaintiff does not even ***attempt*** to plead any Defendant's scienter as to the Challenged Statements, *see* Compl. ¶¶ 66-67, 74, 79, 80, 84, 86, 91. As alleged, the Challenged Statements were misleading because they omitted that "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival," *id.* ¶ 66, but there are no facts alleged to show that (i) Luminar's chip was in fact lacking in sophistication or design, let alone that (ii) Defendants were aware of it when any of the Challenged Statements were made, or, in any event, (iii) had any reason to believe Challenged Statements would be false or misleading, given that the Challenged Statements do not ***even reference*** the "design and sophistication" of Luminar's chip. In the absence of allegations to show that any Defendant "knew [that the Challenged statements] were false or misleading at the time they were made," or were severely reckless in not knowing, claims based on those statements must be dismissed. *See City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys.*, 649 F. Supp. 3d 1256, 1273 (S.D. Fla. 2023).

Instead, Plaintiff's conclusory scienter allegations are ***all*** aimed at the Challenged Image. *See* Compl. ¶¶ 66-67, 74, 79, 80, 84, 86, 91. According to Plaintiff, the "false image of [Luminar's] core technology [] would have been obviously erroneous" to Defendants, *id.* ¶ 66, and therefore the image must have

been "deliberately sought out and placed in the slide, not mistakenly included," *id.* ¶ 84. As discussed above, however, the Challenged Image does ***not*** purport to show "the image of Luminar's core technology." The Challenged Image is labelled "Photonic Integrated Circuits," one of four "common" technologies or common platforms that, as Mr. McAuliffe explained in his accompanying presentation, ***LS*** designs for third-party customers across different industries. *See* Ex. B at 86. In that context, even if Defendants had known the Challenge Image was not Luminar's PIC chip, they would not have understood the Image to be misleading, because the Image does not purport to show Luminar's propriety chip. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (Section 10(b) requires that plaintiff allege "intentional or willful conduct designed to deceive or defraud investors.").[7]

In any event, Plaintiff does not allege any specific facts to show that any Defendant was aware at the time that the Challenge Image was not Luminar's chip. There are no allegations, for example, to show when any Defendant purportedly became aware it was not Luminar's chip, or who told them. Indeed, there are "no particular allegations that indicate [any] Defendant['s] direct or actual awareness" that the Challenged Image was not of Luminar's chip ***at all***. *Hattaway*, 2023 WL 4030465 at *13; *see also Theodore*, 2022 WL 20157415, at *14 ("While particular

---

[7] Plaintiff speculates that there could be ambiguity regarding the Challenged Image, but under the PSLRA "omissions and ambiguities count against inferring scienter." *Tellabs*, 551 U.S. at 326.

dates, places, times, or other details of the fraudulent activity 'are not required *per se*,' their absence from the complaint may be indicative of the excessive generality of the allegations supporting scienter.").

On the question of Luminar's corporate scienter, corporations do not have states of mind of their own, so "the scienter of their agents must be imputed to them." *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, *4 (11th Cir. Aug. 8, 2023) (quoting *Mizzaro*, 544 F.3d at 1254). Here, because Plaintiff fails to adequately allege any Individual Defendant's scienter, he fails to allege Luminar's corporate scienter as well. *See Mizzaro*, 544 F.3d at 1254-55; *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010).

### b. Conclusory Allegations Based on Defendants' Positions or "Core Operations" Do Not Plead Scienter

Unable to allege particularized facts as to any Defendant's state of mind, Plaintiff argues Defendants' positions at the Company gave them "possession of or access to information indicating" that the Challenged Image was wrong, as well as "access to the correct photo," Compl. ¶¶ 74, 79, and thus they were severely reckless for not recognizing "that the PIC featured in the slide did not belong to Luminar," *id.* ¶ 80. But those conclusory, boilerplate allegations do not pass muster under the PSLRA. *See Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220-21 (M.D. Fla. 2014) ("To impute [scienter] from the mere existence of an internal reporting system, and the mere active engagement of management, would allow

almost any securities fraud case to proceed into discovery"). Rather, to plead "scienter based on a defendant's position," Plaintiff must also allege "that either an employee, government action, or report placed the executives on notice." *Theodore,* 2022 WL 20157415 at *14 (citing *Metro. Transp. Auth. Defined Benefit Pension Plan Master Tr. v. Welbilt, Inc.*, 2020 WL 905591, at *4 (M.D. Fla. Feb. 6, 2020) (general allegations about a defendant's executive position, are insufficient to plead scienter)). Here, Plaintiff points to Company documents that purportedly revealed the falsity of the alleged misstatements, Compl. ¶¶ 77-78, but there are no allegations to show that any Defendant was provided those documents, or was otherwise put on notice of a misstatement, *see, e.g., Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 792 (11th Cir. 2010).

Plaintiff likewise alleges that "[b]ecause the fraud alleged herein relates to the core business of Luminar . . . knowledge of the facts underlying the fraudulent scheme may be imputed to the Individual Defendants." Compl. ¶¶ 86, 91. The "core operations" doctrine, however, is meant to **bolster** an inference of scienter, not to relieve Plaintiff from alleging specific facts showing scienter. *See Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015). ("[T]he Court finds that merely alleging that [it] is a core operation does not lead to a conclusion that [defendants] acted with scienter because the PLSRA requires more."). Further, even assuming that PIC chips are Luminar's "core business" (in

fact, they are but one component of the "technology stack" that makes up Luminar's lidar products, *see* Ex. B at 85), the Challenged Image does not purport to show Luminar's PIC chip, and thus that "core business" is not implicated.

### c. Plaintiff Cannot Overcome the Implausibility of the Alleged Fraud

Plaintiff's failure to plead scienter is most glaring when his allegations are examined "holistically," alongside the competing innocent explanation here, as required by the PSLRA. *See Tellabs*, 551 U.S. at 323-24, 326. As discussed above, Plaintiff's theory of fraud makes no sense. As Plaintiff would have it, Defendants sought to defraud investors through a single thumbnail photo in a 165-page presentation, and publicly represented a photo of another company's chip as their own, even though the alleged "falsity" of the photo would readily be exposed—and did so *without any financial motive*. Plaintiff's claim is illogical and falls apart when the alleged misstatements are read in the context, and Plaintiff cannot even speculate a motive for any Defendant, which "weighs against inferring scienter." *Mizzaro*, 544 F.3d at 1253. At best, Plaintiff cites "conjecture and innuendo in an attempt to make [Defendants'] behavior look suspicious, but [he] conspicuously omits any facts that would require one to rule out an innocent explanation for the alleged behavior." *Kadel v. Flood*, 427 F. App'x 778, 780 (11th Cir. 2011).

Simply put, the implausibility of the alleged fraud undercuts "any inference that Defendants were aware or recklessly disregarded that the [presentation] was

misleading." *Police & Fire Ret. Sys. of City of Detroit v. Axogen, Inc*., 2020 WL 13547449, *18 (M.D. Fla. Apr. 21, 2020) (implausibility that alleged fraud would go undetected undercuts scienter inference). Against this backdrop, the competing innocent explanation is *far* more compelling than any inference of fraud.

## VI.    **CONCLUSION**

For these reasons, Plaintiff fails to state a claim under Section 10(b) and Rule 10b-5, or Section 20(a),[8] and the Complaint should thus be dismissed.

Dated: December 29, 2023

*/s/ John M. Brennan, Jr.*
JOHN M. BRENNAN, JR.
Florida Bar No. 0098456
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: 407-843-8880
Fax: 407-244-5690
john.brennan@gray-robinson.com
*Counsel for Defendants*

JAMES N. KRAMER (admitted *pro hac vice*)
California Bar No. 154709
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-5700
Fax: 415-773-5759
jkramer@orrick.com
*Counsel for Defendants*

---

[8] A "primary violation of the securities law is an essential element of a § 20(a) derivative claim." *Thompson*, 610 F.3d at 635. Because Plaintiff does not plead a primary violation of Section 10(b), Plaintiff's Section 20(a) claim fails as well. *See Mizzaro*, 544 F.3d at 1255; *Bhatt v. Tech Data Corp.*, 2018 WL 6504375, *6 (M.D. Fla. Dec. 11, 2018).

## CERTIFICATE OF COMPLIANCE

In compliance with Rule 3.01(g) of the Local Rules of United States District Court, Middle District of Florida, counsel for the Defendants certifies that (1) that they have conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised by this motion, (2) the parties were not able to come to an agreement on the resolution of all or part of the motion and (3) the conference occurred by phone on December 21, 2023.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ John M. Brennan, Jr.*
JOHN M. BRENNAN, JR.