IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOHN ALMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>LUMINAR TECHNOLOGIES, INC., MIKE MCAULIFFE, AUSTIN RUSSELL, and JASON EICHENHOLZ,<br><br>Defendants. | Case No.: 6:23-cv-982-PGB-LHP<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

**INTRODUCTION**

This is a straightforward case with few factual disputes. Plaintiff alleges that at the Company's first-ever Investor Day presentation, Defendants misled investors regarding the true state of the Company's technological advances by falsely passing off an image of a much more sophisticated looking PIC chip developed by a rival as its own product.[1] That rival, Lidwave, later sent a written complaint to the SEC that Luminar was falsely misrepresenting its products to investors.

---

[1] All "¶__" references are to the Amended Class Action Complaint ("AC" or "Complaint"), ECF No. 37. All emphases are added, and all internal citations and quotation marks are omitted. Capitalized terms not otherwise defined have the same meaning as those used in the AC. "MTD" refers to Defendants' motion to dismiss ("ECF No. 46"), and "Ex. ___" refers to the MTD's exhibits.

1

Defendants do not dispute that the PIC shown in its presentation to the market was not Luminar's PIC or that it was actually a PIC developed by a competitor, Lidwave. Instead, Defendants argue that their use of Lidwave's proprietary image is not actionable because it was meant to be a generic representation of the type of technology Luminar manufactured. This argument defies common sense considering the context of the image's usage. There was no clarification during the presentation that Defendants were showing investors generic images of technology platforms rather than Luminar's own technology. Indeed, the slide in question (the "Slide"), ¶62, expressly represents that Luminar had solved a drawback to a particular processing problem ("We solve 1550") through its architecture, advanced packaging, and scale. Any reasonable investor would view the images shown as representing Luminar's own technology to address these particular problems. Defendants' post-hoc effort in this litigation to recast these images as "generic" should be rejected. At best, Defendants have raised a question of fact that should be resolved later by a jury. Moreover, Lidwave's PIC image was available only on Lidwave's website and is not a publicly available generic image that Defendants could have obtained to represent a "generic" type of technology.

Defendants also challenge scienter, arguing that they had no motive to mislead the market. However, the motive here is clear: Luminar, which had

been losing money since it went public, was desperate to demonstrate to investors that it possessed cutting-edge technology that will prevail over its competitors. Lidwave's PIC appears to be much more sophisticated in design and function than Luminar's outdated and bulky-looking technology.

In any event, motive is not required: severe recklessness suffices. It was, at the very least, severely reckless to pass off a competitor's PIC as Luminar's own at the Company's high-profile Investor Day presentation.

Defendants' misrepresentation, and the attendant artificial inflation of its stock price, was made apparent to the market when Forbes published an article regarding its investigation of Lidwave's SEC complaint about Defendants' actions. The market clearly was shocked to learn of the deception exposed by the Forbes investigation. There is no dispute among the parties that when the Forbes article was published, Luminar's stock immediately plummeted over 9% resulting in significant losses to investors.

## STATEMENT OF FACTS

### A.    LiDAR and Photonic Integrated Circuits

LiDAR is a remote sensing technology that aids vehicles in detecting their surroundings to ensure safer navigation. ¶¶27-28. To scale LiDAR down, manufacturers have been using more advanced PIC chips. ¶¶30, 32. PICs allow for high yield, volume manufacturing, and lower prices. ¶32. Given these advantages, companies have been racing to create the sleekest,

most economical PICs for LiDAR.  ¶32.

## B.    Background of Luminar and Luminar Semiconductor

Luminar manufactures commercial LiDar and the accompanying software for vehicles.  ¶¶4, 34.

Central to Luminar's "chip-level up" strategy was its acquisition of three semiconductor companies: Black Forest; Optogration; and Freedom Photonics, which manufacturers PIC chips and, as Eichenholz said, "enables a new level of economies of scale, deepens our competitive moat and strengthens our future technology roadmap."  ¶35.  These companies were consolidated into Luminar Semiconductor ("LS"). ¶¶35, 36, 87.

## C.    Luminar Investor Day

In December 2022, Luminar announced its inaugural Luminar Investor Day ("Luminar Day"), to be held at its headquarters on February 28, 2023. ¶50.  Luminar had been losing money since it went public, so a lot was riding on this event, the goal of which was to showcase Luminar's "long-term product and technology roadmap."  ¶¶3, 46.  At Luminar Day, the Company unveiled its Iris+ LiDAR, which featured a slimmer profile for a more seamless integration into vehicle rooflines compared to Iris, Luminar's previous generation LiDAR sensor.  ¶¶42-43, 53.  McAuliffe was featured to explain LS's importance to Luminar and scaling LiDAR.  ¶¶36, 61.  A slide he presented included the image of the Lidwave PIC chip. ¶62.

### D.    The Truth Is Disclosed

On March 17, 2023, the truth was revealed when Forbes published an article titled "Lidar Maker Luminar Accused Of Using Image Of Rival's Chip In Investor Conference."  ¶¶11, 69.  The fact that the revelation of the truth about the image was ***material*** and ***caused significant loss*** to investors is clear.  Defendants do not challenge the adequacy of the pleadings as to loss causation or materiality—nor could they.  When Forbes exposed Defendants' misuse of Lidwave's PIC, Luminar's stock price fell 9.09% over two trading days.  ¶¶69, 75.  After Forbes published its article, Luminar replaced the Lidwave PIC with Luminar's own much less sophisticated PIC.  ¶¶77-78.

## ARGUMENT

The court must presume all factual allegations of the complaint as true and draw "all plausible inferences" in Plaintiff's favor.  *Owl Creek I, L.P. v. Ocwen Fin. Corp.*, 2018 WL 4844019, at *4 (S.D. Fla. Oct. 4, 2018).

## I.    THE AC IS NOT A PUZZLE PLEADING

The AC's allegations are not a "puzzle pleading" as argued by Defendants.  MTD 14-15.[2]  The AC identifies each challenged statement, ¶¶61-65, "with the reasons [why] they are false or misleading [and] contains sufficiently particularized counts allowing [the] reader to match up alleged

---

[2] The Slide is not part of Defendants' puzzle pleading argument.

misstatements and omissions with their explanatory counterparts." *SEC v. Kingdom Legacy Gen. Partner, LLC*, 2017 WL 417093, at *4 (M.D. Fla. Jan. 31, 2017). Defendants' puzzle pleading argument is also undercut by their demonstrated understanding of Plaintiff's arguments.[3] *See* MTD at 14-19.

## II. DEFENDANTS MADE MATERIALLY FALSE AND MISLEADING STATEMENTS

It is unlawful to (1) "make any untrue statement of a material fact" or (2) "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). "A statement is misleading if in the light of the facts existing at the time of the [statement] ... [a] reasonable investor, in exercise of due care, would have been misled by it." *SEC v. Hope Advisors, LLC*, 2017 WL 3485765, at *7 (N.D. Ga. Jan. 11, 2017).

### A. Materially False And Misleading Statements Of Fact Made During McAuliffe's Presentation

On Luminar Day, while McAuliffe spoke about Luminar's accomplishments and how Luminar would scale its LiDAR, Defendants

---

[3] Defendants' authorities are inapposite. In *Hattaway v. Apyx Medical Corp.*, 2023 WL 4030465, at *7-8 (M.D. Fla. June 15, 2023), unlike here, plaintiffs failed to explain how the numerical figures were false or misleading when there was no allegation that they were inaccurate and the allegedly omitted information was public. In *Theodore v. PureCycle Technologies, Inc.*, 2022 WL 20157415, at *3 (M.D. Fla. Aug. 4, 2022), it was not easily distilled what statements were at issue, but here the AC expressly identifies the five paragraphs containing the challenged statements, ¶¶61-65, and clearly explains why they are false and misleading, ¶66.

presented the Slide containing a PIC that, unbeknownst to investors, did not belong to Luminar, but to a competitor. ¶¶61-62. This Slide was false when presented because it passed off Lidwave's PIC as Luminar's own. ¶66.

Defendants argue that Lidwave's PIC was used to represent a generic chip technology, not Luminar's own. However, whether a statement is actionable depends on the context and how it would be interpreted by a reasonable investor, and "even absent a duty to speak, a party who discloses material facts . . . assumes a duty to speak fully and truthfully on those subjects." *In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342, 1352 (N.D. Ga. 2018). Even assuming, *arguendo*, that the slide was not literally false, it was at the very least misleading in context for omitting that it was not Luminar's PIC and that Luminar's actual PIC was nothing like the one pictured. *Id.*

First, the slide was presented on LS's portion of the ***Luminar*** Day presentation, an event whose goal was to showcase ***Luminar's*** "long-term product and technology roadmap . . . ." ¶50. LS's mission in particular was to scale ***Luminar's LiDAR*** for vehicles, which was largely dependent on PICs. ¶36. Second, the Slide was presented while McAuliffe, LS's CEO, discussed ***Luminar's*** technology and ***Luminar*** scaling its LiDAR. ¶¶36, 61-62. For example, the Slide was displayed while McAuliffe misleadingly spoke about

how Luminar had solved 1550[4] through architecture, advanced packaging, and by "driv[ing] the economies of scale and [its associated] economics . . . by leveraging both Luminar volume and volume to the wider market."  ¶61. McAuliffe also stated that Luminar was "shifting gears to take what has been a sub-scale industry, sub-scale ecosystem, and industrializing that at scale," which Luminar needed to do "in order to deliver lidars at millions of units." *Id*.  The slide also included the language: **"© 2023 Luminar Technologies, Inc. All rights reserved**."  ¶62.  Thus, McAuliffe clearly conveyed to the market that the PIC image was of technology that belonged to Luminar.  *See Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc*., 564 F. Supp. 3d 1272, 1300-01 (N.D. Ga. 2021).  In context, no reasonable investor would think that the PIC was someone else's.

Separately and cumulatively, when viewed in context, McAuliffe's oral statements and the Slide created the false and misleading impression that the PIC displayed was Luminar's and that Luminar's technology, particularly its PIC, was sophisticated in design and function compared to its rival.  ¶¶56, 61-62, 66-67, 73.

Defendants also argue that because there were certain other "generic" photos on the slide, their failure to disclose that the image was not their own

---

[4] 1550 nanometers is a measurement of wavelength of the laser that is used in LiDAR.  ¶35, n.3.

is not actionably misleading. MTD at 18. But there is no indication in the slides or in McAuliffe's presentation that any of these images were meant to be a generic representation of the type of technology Luminar manufactured. Indeed, the slide in question expressly represents that Luminar had solved a drawback to a particular processing problem ("We solved 1550") through its architecture, advanced packaging and scale. ¶61. Any reasonable investor would view the images shown as representing Luminar's own technology to address these particular problems.

Moreover, Defendants admit that other slides utilized images of Luminar technology, but claim now that it was labelled as such. MTD at 19. But the Slide included ***non-generic*** images: two were photos of Luminar's products taken from a Freedom Photonics document, one of the three companies that made up LS. ¶¶62, 77. The "Hybrid Integration" image was also not generic because it appeared earlier in the presentation, MTD at 18 n.6, under the heading "Enabling Broad Lidar Adoption" and was necessarily meant to depict Luminar's own technology, not "generic" technology. *See* Ex. B at 57; Luminar Day 2023 Livestream (MTD at 6 n.2) at 1:10:17-1:10:45. The Lidwave PIC that Luminar used was also non-generic: it is undisputed that it was only available on Lidwave's website, and did not come up in Google searches of PIC images at the time. ¶¶82-83.

Defendants' argument that their pluralization of "Photonic Integrated Circuits" somehow shows that it was meant to refer to generic PICs and not Luminar's *specifically* defies logic. MTD at 11. Defendants were touting their ability to scale Luminar's LiDAR; they were also conveying to investors that they would be mass producing PICs for their LiDAR, since mass producing the parts (*e.g.,* PICs) for LiDAR would be essential for producing LiDAR at scale. ¶¶88-90. Therefore, using the plural version of the word does nothing to suggest that Defendants were referring to PICs generically, rather than Luminar's own PICs.

Further, Defendants claim that Plaintiff fails to provide evidence that Luminar's PIC was less sophisticated and of a lower quality. MTD at 16. However, that is not Plaintiff's case or the issue. The issue is that Defendants utilized an image of a sophisticated technology that appears to be much more sophisticated than what Luminar had developed and presented it to investors as its own. Indeed, the images speak for themselves, ¶¶7, 9, and it makes no sense that Luminar would have used Lidwave's PIC, if their own easily accessible PIC was just as advanced looking, ¶¶77-84. Furthermore, according to Lidwave's CEO, Luminar does not have the ability to produce a product like Lidwave's PIC, as Lidwave is the only company that has invented a physical method that enables integration at the chip level. ¶85.

Defendants also argue that McAuliffe's accompanying statements, ¶61, constituted inactionable puffery. MTD at 16-17. Not so. "Statements constitute puffery if they are too general to cause a reasonable investor to rely on them." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1223 (N.D. Ga. 2019). Context is key when determining whether a statement is puffery. *Id.* at 1224.[5] Here, McAuliffe's statements were not inactionable puffery because in context a reasonable investor would have relied upon them to conclude that LS had advanced technology capable of scaling its LiDAR. While a picture of the Lidwave PIC was being shown, McAuliffe said that Luminar had "solved 1550" in part through "***advanced packaging***," and that "owning that stack," as Luminar boasted it did, "delivers . . . ***breakthrough performance***[.]" ¶61. Whether and how Luminar solved 1550 and whether Luminar's ownership of its own technology means it can deliver breakthrough performance were verifiable when the statements were made and not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance . . . ." *Equifax*, 357 F. Supp. 3d at 1224; *Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d

---

[5] Unlike here, *Theoharous v. Fong*, 256 F. 3d 1219, 1226-27 (11th Cir. 2001) involved vague forward-looking financial projections that did not falsely portray the company's financial condition as it existed when the statements were made. And unlike in *Xiaojiao Lu v. Align Technology, Inc.,* 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019) and *Meide v. Pulse Evolution Corp.*, 2020 WL 5350325, at *15 (M.D. Fla. Sept. 4, 2020), Plaintiff here explains how the challenged statements are connected to the reasons why they are actionable.

1244, 1257 (S.D. Fla. 2020) (holding that statements that "represent tangible, verifiable actions [Defendant] . . . was taking" were not puffery).[6]

## B. Additional Materially Misleading Statements

Defendants made additional misleading statements in press releases and in the Company's 2022 Form 10-K on Luminar Day. For example, Luminar stated that by "bring[ing] these advanced receiver, laser and processing chip technologies in-house," Luminar "further secur[ed] and industrializ[ed] the lidar supply chain." ¶63. These statements were misleading because they omitted that Luminar's PIC appeared less sophisticated in design and function than its rival and that it relied on a pirated image of a competitor's chip during its inaugural investor conference in order to falsely convey to investors the scalability of its LiDAR. ¶¶62, 66.

Similarly, statements about Defendants' "unmatched lidar performance"; that Luminar was "successfully executing [their] plans across .

---

[6] Defendants' authorities do not compel a different result. *See Hattaway*, 2023 WL 4030465, at *7-9 (optimistic comments about future growth inactionable where defendants disclosed products were being used off-label and plaintiff failed to specify how prevalent off-label usage was); *Phila Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th Cir. 2014) (statements about rigorous processes, accuracy and efficiency of operations, and effective staff training, were immaterial in case involving strength of foreclosure-processing business); *Next Century Commc'ns Corp. v. Ellis*, 318 F. 3d 1023, 1029 (11th Cir. 2003) (involved GA state law claims and not federal securities fraud claims); *Mich. Carpenters' Pension Plan v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *5-6, *20-21, *23-24 (M.D. Fla. Mar. 29, 2019) (vague statements about quality and consistency of company's specialties were immaterial puffery in case involving company's unsuccessful transition to another business).

. . industrialization;" that its LiDar "features [its] vertically integrated receiver, detector, and laser solutions developed by [their] Advanced Technologies & Services segment companies – Freedom Photonics, Black Forest Engineering, and Optogration[;]" that Luminar was "doing a great job executing [their] industrialization and scaling plans to support upcoming vehicle launches;" and that "[t]he internal development of these key technologies [developed by Freedom Photonics, Black Forest, and Optogration] gives [Luminar] a significant advantage in the development of [Luminar's] product roadmap," ¶¶63-64, were misleading for the same reasons. Given the statements' context, it is irrelevant that Defendants did not explicitly refer to PICs when making the statements because referring to, for example, "key technologies" necessarily includes Luminar's PIC because it was one of the Company's most important technologies. *Id.*; *Mohawk*, 564 F. Supp. 3d at 1300-01 (part of statement was actionable because it could plausibly be subject to objective verification and other statements were actionable considering context in which they were made).

Further, the statements are not inactionable puffery because, when viewed in context, they would have misled a reasonable investor into believing that Luminar had the technology—as evident by the misappropriated Lidwave PIC—to scale its LiDAR. *See supra*, §II.A; *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1360 (N.D. Ga.

2002); *Tung*, 454 F. Supp. 3d at 1257 (statements about "working aggressively" with customers, "strong performance," "hav[ing] established relationships," and "increasingly providing . . . services, creating more visibility around future revenue streams," considered "tangible, verifiable actions [Defendant] assured its investors it was taking").

## III.   DEFENDANTS ACTED WITH THE REQUISITE SCIENTER

A plaintiff may satisfy the scienter standard by showing "either an intent to deceive, manipulate, or defraud, **_or_** severe recklessness." *State of Alaska v. Ryder Sys., Inc.*, 603 F. Supp. 3d 1229, 1238-39 (S.D. Fla. 2022). When considering scienter allegations, a court must "assess all the allegations **_holistically_**[,]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007), to determine whether plaintiff's "inference of scienter [is] **_at least as_** strong as any opposing inference[.]" *Alaska*, 603 F. Supp. 3d at 1239-40. Under *respondeat superior* principles, the scienter of Luminar's agents and employees may be attributed to Luminar itself to establish its liability under §10(b). ¶76; *see Mohawk*, 564 F. Supp. 3d at 1302-03.

### A.   Defendants Possessed Contemporaneous Knowledge Of Luminar's Products And Their Capabilities

Severe recklessness can be inferred where defendants "possessed knowledge of facts or [had] access to information contradicting their public statements[.]" *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1360

(N.D. Ga. 2010).

Here, Defendants had physical possession of, or at least had access to, Luminar's PIC and what it looked like, which directly contradicted the image of the PIC on the Slide, and information undermining the other challenged statements. ¶¶61-65. Defendants demonstrated their knowledge of, or access to, this information when they spoke in detail about the components of Luminar's LiDar and its technological capabilities.

For example, LS's CEO, McAuliffe, discussed the purpose and current capabilities of LS. *See* §II.A, *supra*; ¶61; Ex. B at 84-92. Luminar CEO Russell signed a Form 10-K on Luminar Day that discusses Luminar's Iris lidar's capabilities and components in depth. ¶64. Luminar CTO Eichenholz also spoke in detail about the lidar hardware components and capabilities. *See* Luminar Day 2023 Livestream (MTD at 6 n.2) at 1:35:04-1:41:52.[7] "It is

---

[7]     Defendants' authorities are inapposite because Plaintiff is not resting his scienter allegations on Defendants' roles, as evidenced above, or on information Defendants did not have notice of or could not have known before making the statements. *See Theodore*, 2022 WL 20157415, at *14 ("it is insufficient to merely rely on a defendant's position . . . without alleging with more specificity what information they had received"); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1250-51 (11th Cir. 2008) (finding no scienter where "allegations that hinge entirely on a theory that senior management 'must have known' everything that was happening in a company as large as Home Depot" where no facts alleged show "how knowledge of the fraud would or should have percolated up to senior management"); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1299–302 (11th Cir. 2011) (no scienter for March 2004 statement where defendants could not have known of issue before June 2004); *Edward J. Goodman Life Income Trust v. Jabil Cir., Inc.*, 594 F.3d 783, 792 (11th Cir. 2010) ("impossible" "to determine from the complaint whether any insider should have noticed the [accounting] errors" at issue without any allegations putting the error's amount in "context of total corporate business").

unclear what further facts [P]laintiff[ ] would need to plead to create a stronger inference that [Defendants] had access to information [they] discussed publicly." *Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at *21 (D. Colo. Nov. 24, 2020).

Defendants also necessarily had knowledge of, or access to, the Freedom Photonics document that contained Luminar's actual PIC before the Luminar Day conference, as at least two other photos on the Slide (Chip Die Level and Optoelectronics) came from it. *See* ¶¶77-79. Defendants were also necessarily involved in preparing, or at least approving, the Luminar Day slides in advance because they were presenting them. ¶¶6, 36; *see also* Ex. B at 2-36, 75-82, 83-92. McAuliffe in particular needed to view the Slide in advance because he presented it at Luminar Day—otherwise, he would not have been able to prepare or deliver his oral statements. ¶81.

In addition to their in-depth knowledge of Luminar's products, Defendants' scienter is also supported by their titles and responsibilities. For example, McAuliffe is the CEO of LS and responsible for its day-to-day operations, and therefore it was his responsibility to be familiar with the PIC, a critical piece of technology that LS produced, and its capabilities. ¶¶80-81. He would have known the PIC in the Slide was not Luminar's, and that Luminar's was in fact much less sophisticated in function and design than the PIC shown. *Id.*

Eichenholz's status as CTO and Chairman of LS also suggests that he had access to Luminar's PIC, what it looked like, and what its capabilities are, as his responsibility over Luminar's technology and LS puts this information "squarely within his bailiwick." *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *12 (C.D. Cal. Aug. 4, 2014). Eichenholz also discussed his familiarity with Freedom Photonics and its products, stating, "bringing Freedom Photonics into Luminar enables a new level of economies of scale, deepens our competitive moat and strengthens our future technology roadmap . . . We've worked closely with the Freedom team for the past several years." ¶35. The same is true of Russell, who, as Luminar's CEO, founder, president and chairman of the board, was familiar with his own Company's technology and what it looked like. *See* ¶21.

Given the foregoing, Defendants necessarily knew or were severely reckless in not knowing that the PIC on the Slide did not belong to Luminar, that Luminar's PIC was far less sophisticated in design and function than Lidwave's, and that the challenged statements were likely to mislead investors. ¶¶11, 67.[8]

---

[8] Unlike *City of Hollywood Police Officers' Retirement System v. Citrix Systems, Inc.*, 649 F. Supp. 3d 1256, 1273 (S.D. Fla. 2023), this case does not involve "hindsight observations regarding [the defendants'] failure to meet expectations" but rather the use of an image Defendants knew did not belong to Luminar used to mislead investors about Luminar's **current** capabilities. And unlike in *Mogensen v. Body Central Corp.*, 15 F.

**B.     The Core Operations Doctrine Supports Scienter**

Scienter can be "bolstered" by allegations that the subject of the alleged fraud was a "core operation" of the company.  *See Mohawk*, 564 F. Supp. 3d at 1302.  Here, Luminar's only business is to make LiDAR that can be scaled down for commercial and passenger vehicles, and it is undisputed that the PIC was crucial to that ability.  ¶¶37, 86.  Luminar has consistently made no money since it started, ¶¶3, 46, so as CEO and CTO of Luminar, and CEO of LS, Defendants' focus was necessarily on Luminar's LiDAR and components.

**C.     The Inference of Scienter Is At Least As Compelling As Defendants' "Innocent" Explanation**

When the parties present a competing inference for the court to consider in connection with scienter, "*a tie favors the plaintiff* on a motion to dismiss . . . ."  *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 686 (5th Cir. 2014).  Defendants claim that they have an innocent explanation for Lidwave's PIC winding up on Luminar's slide: that it was included merely to give a visual illustration of the generic type of chip technology that LS manufactures.  MTD at 5.  This explanation falls apart on closer scrutiny and is not a more compelling inference than the strong inference of scienter alleged by Plaintiff.

Supp. 3d 1191, 1220-21 (M.D. Fla. 2014), Plaintiff specified the information Defendants had (the PIC, the Freedom Photonics document, etc.) that contradicted their statements.

First, there is no indication on the Slide that the technology pictured does not belong to Luminar, and McAuliffe's accompanying oral statements reinforces this conclusion by discussing Luminar's specific technology, not generic technology. *See* §II.A, *supra.* Even assuming, *arguendo*, that Lidwave's proprietary PIC was used to demonstrate the "generic type" of technology LS manufactures, it was at least severely reckless to do so.[9]

Second, none of the Slide's four images are "generic," as discussed above. *See* §II.A, *supra.*

Third, Lidwave's PIC was only available on Lidwave's website—a fact that Defendants do not dispute—and did not come up in Google searches for "photonic integrated circuit" for the year 2023. ¶¶82-84. This is unsurprising, as the image was not even described on Lidwave's website as a "PIC," but as "Finite Coherent Ranging architecture." ¶49. Thus, in order for Lidwave's sophisticated PIC image to end up in Luminar's slide deck, it necessarily needed to be sought out intentionally, not mistakenly included by someone looking for a generic image of a PIC. *See* ¶84. Defendants complain that scienter is undermined here because Luminar's use of Lidwave's chip

---

[9] *Hattaway*, 2023 WL 4030465, at *13 is distinguishable. There, awareness of potential compliance issues cannot be equated to an intent to defraud where defendants repeatedly disclosed those issues to investors. *Id.* Here, Defendants did not warn that the Slide contained another company's PIC, or that their PIC was not as sophisticated in design and function as Lidwave's.

"could be readily exposed" by Lidwave. MTD at 2. However, it is at least as compelling an inference that Defendants used Lidwave's PIC, as opposed to some other company's technology, precisely because it was less likely to expose Luminar's deception. Lidwave is a small, private, foreign company that would not necessarily notice Luminar using a photo of its technology. ¶¶8, 47. In fact, Lidwave might not have noticed its PIC on Luminar's slides if Lidwave's clients and investors had not alerted the company about it. ¶85.

Fourth, Luminar did not correct the Slide until it became public knowledge that they used Lidwave's image without permission. *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) ("[E]vidence of concealment is strongly indicative of scienter.").

## IV. PLAINTIFF STATES §20(a) CONTROL PERSON CLAIMS

Defendants only challenge Plaintiff's §20(a) claim on the basis that Plaintiff failed to establish a §10(b) violation. Since the §10(b) claims are viable, the §20(a) claims survive. *See Alaska*, 603 F. Supp. 3d at 1241.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests Defendants' motion be denied. If Defendants' motion is granted, Plaintiff respectfully requests leave to amend the Complaint. *See Theodore*, 2022 WL 20157415, at *19.

Dated: February 27, 2024            Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
  Jonathan R. Gdanski (FL. Bar No. 32097)
  Jeffrey L. Haberman (FL. Bar No. 98522)

**SCHLESINGER LAW OFFICES, P.A.**
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:
Jonathan@schlesingerlawoffices.com
JHaberman@schlesingerlawoffices.com

*Liaison Counsel for Lead Plaintiff*

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (admitted pro hac vice)
Robert W. Killorin (admitted pro hac vice)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com
  rkillorin@faruqilaw.com

*Lead Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: */s/ Jeffrey L. Haberman*
Jeffrey L. Haberman
(FL. Bar No. 98522)