UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN ALMS,

    Plaintiff,

v.

LUMINAR TECHNOLOGIES, INC.,
MIKE MCAULIFFE, AUSTIN
RUSSELL, and JASON
EICHENHOLZ,

    Defendants.
_____/

Case No: 6:23-cv-982-JSS-LHP

## ORDER

Defendants move to dismiss Plaintiff's Amended Class Action Complaint (Dkt. 37) (Motion, Dkt. 46), and request that the court take judicial notice of exhibits in support of the Motion (Dkt. 48). Plaintiff responded in opposition to both. (Dkts. 49, 50). Without leave, Defendants filed a reply directed to the motion to dismiss. (Dkt. 52). Upon consideration, the Motion is granted.

### BACKGROUND

Founded in 2012, Defendant Luminar Technologies, Inc. (Luminar) is a publicly traded, autonomous vehicle technology company. *See* Luminar Technologies, Inc. (Tik: LAZR), Annual Report (Form 10-K) (Feb. 28, 2024). On February 28, 2023, Luminar hosted an open presentation for investors about the company's plans to economize its LiDAR technology. During the presentation,

1

Luminar featured a slide entitled "Common Platforms Drive Scale" that included a picture of a competitor's photonic integrated circuit (PIC) chip. (Dkt. 37 ¶¶ 6–7, 64.).[1] As can be seen below, the slide makes no indication that the pictured chip is not Luminar's product:



(*Id.* ¶ 62.)  A particular engineering challenge in the highly competitive autonomous vehicle industry is scaling LiDAR technology down to better integrate into the car's frame—and increasingly advanced PIC chips have provided an avenue to shrink the product, allowing for high yield, volume manufacturing, and lower prices. (*Id.* ¶¶ 30, 32.)  Acknowledging this challenge, Luminar unveiled its Iris+ lidar sensor, a new version of its product that offers a slimmer profile for more seamless integration into vehicle rooflines. (*Id.* ¶ 53.)

---

[1] LiDAR is a remote-sensing technology that produces 3-D imaging of a particular space, effectively functioning as an autonomous vehicle's eyes.  (Dkt. 37 ¶¶ 27–28.)

Defendant Mike McAuliffe, CEO of Luminar's recently formed chip-making subsidiary, presented the slide while discussing the company's "broader ambition to be a photonics player in the wider market" outside the automotive industry, explaining that innovations in chip architecture, advanced packaging, and production volume could make that happen. (*Id.* at 61; Dkt. 47-4 at 4:6–22.) "[W]e have other customers solving similar, very difficult photonic problems," he said, "So we can now take the same platforms, the same products, closely aligned, and leverage that across multiple markets." (Dkt. 47-4, p. 4:11–15.) Specifically, he made the following remarks:

> It's fundamental to our strategy to understand that th[ese] common needs can drive common platforms, we only focus on the hardest Photon processing problems generation detection and processing . . . .
>
> We solved 1550. There is a general perception that 1550 is an expensive, traditionally, an expensive process and it's maybe a drawback. That is not the case. We have solved that problem through, number one: architecture, as Jason described. Number two: advanced packaging. And number three: we can drive the economies of scale and the economics associated with that by leveraging both Luminar volume and volume to the wider market. So, we're shifting gears. We're shifting gears to take what has been a sub-scale industry, sub-scale ecosystem, and industrializing that at scale. And we need to do that, we need to do that both for the economics and for size, weight, and cost, in order to deliver lidars at millions of units.
>
> And as an example, the other key advantage of siliconization is this: people think that maybe the biggest advantage is you control your own supply chain, that's true. You can control the quality, that's true. You can control the performance, that's true. But the biggest advantage of siliconization in general, is you can take a lot of complexity and cost out of the product. Complexity in cabling.

3

> Complexity in optics. Complexity in electromechanical. So anything you can put in silicon, you can put in silicon.
>
> And I think we can see from other industry leaders like big fruit companies, that owning that stack, and internalizing, and siliconizing anything that you can, delivers elegant architecture, breakthrough performance, and breakthrough economics.

(Dkt. 37 ¶ 61.) He also represented that Luminar's strategy to bring "these advanced receiver, laser and processing chip technologies in-house has enabled its unmatched lidar performance while further securing and industrializing the lidar supply chain." (*Id.* ¶ 63.)

McAuliffe explained the chip-making subsidiary—formed through the acquisition of three different companies—would serve as an integral part of the company's "chip level up" strategy to expand its manufacturing capacity. (Dkt. 37 ¶¶ 35–36, 61.) One of the acquired companies, Freedom Photonics, manufactures PIC chips and "enables a new level of economies of scale, deepens our competitive moat and strengthens our future technology roadmap," according to Defendant Jason Eichenholz (Eichenholz), Luminar's chief technology officer and chairman of the chip-making subsidiary. (*Id.* ¶ 35.) An earlier slide said that Luminar's integrated circuits are "designed from scratch in-house." (*Id.* ¶ 55.) Defendant Austin Russell (Russell), Luminar's founder and CEO, also contributed to and oversaw the content and preparation of the presentation, according to Plaintiff. (*Id.* ¶¶ 20–24.) With many analysts now expressing optimism about the company's future, Luminar's stock price

experienced a significant bump in the days following the presentation, peaking at $9.89 on March 3, 2023, a roughly 18 percent increase. (Dkt. 37 ¶¶ 57, 68, 93.)

Two weeks after the presentation, a news article appeared on Forbes.com headlined "Lidar Maker Luminar Accused of Using Image of Rival's Chip in Investor Conference." (*Id.* ¶¶ 11, 69.)[2] In it, the rival, Lidwave, identified the PIC chip image on the slide as its own graphic and reported sending both a cease-and-desist letter to Luminar threatening legal action for copyright infringement and a complaint to the Securities and Exchange Commission about the company's "misuse of its product image to falsely promote its abilities and securities to investors." (*Id.*) In response, Luminar quickly removed the image from its investor-day materials online and replaced it with a picture of its own PIC chip:



(*Id.* ¶ 78.) The picture of Luminar's chip came from a 2019 presentation provided by Freedom Photonics, which was the source of the other photos on the offending slide

---

[2] *See also* Alan Ohnsman, *Lidar Maker Luminar Accused of Using Image of Rival's Chip in Investor Conference*, FORBES.COM (Mar. 17, 2023), https://www.forbes.com/sites/alanohnsman/2023/03/17/lidar-maker-luminar-accused-of-using-image-of-rivals-chip-in-investor-conference/?sh=166619da4abf. Courts may take judicial notice of documents such as newspaper articles for the limited purpose of determining which statements the documents contain "but not for determining the truth of those statements." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015).

of actual Luminar products. (*Id.*) Over the next two consecutive trading days after the article's publication, Luminar's stock fell by a little more than 9 percent, to close at $7.80 on March 20, 2023. (*Id.* ¶ 12.) Four days after that, to address the "volatility" of its share price, Luminar published a letter to shareholders on its website in part addressing the competitor's public accusations and threats of legal action:

> First, as part of our Luminar Day, a member of our team included a thumbnail of a generic graphic of a photonic integrated circuit on a single slide in a 165 page presentation. This thumbnail was there to give a visual illustration of a generic photonic integrated circuit in our semiconductor section of the presentation. A startup company that Luminar has never heard of contacted the media claiming that we were improperly passing off their tech as ours. This is clearly not the case. For the avoidance of doubt, we replaced the thumbnail with an actual microscopic photo of one of our integrated circuits. Let me be clear—all of our key semiconductor intellectual property at Luminar is home grown and owned by us.

(Dkt. 47-3.) Despite the letter, the stock price did not rebound. Luminar did not report receiving any subpoenas or otherwise being under investigation by the SEC in its FY 2023 annual report. *See* Luminar Technologies, Inc. (Tik: LAZR), Annual Report (Form 10-K) (Feb. 28, 2024).[3]

On May 26, 2023, a shareholder filed this class action against Luminar and its management on behalf of purchasers of stock between February 28, 2023 and March 17, 2023, alleging violations of the Exchange Act and Rule 10b-5 stemming from the

---

[3] A court may judicially notice relevant documents legally required by and publicly filed with the SEC, for purpose of determining what statements the documents contain and not to prove truth of documents' contents. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

competitor's PIC chip graphic included in the investor presentation. (Dkt. 1). The current class representative is John Alms (Plaintiff). (Dkt. 20.) On October 2, 2023, Plaintiff filed the Amended Complaint. (Dkt. 37). Defendants now move to dismiss the Amended Complaint for failure to state a claim, and in a separate motion, asked the court to take judicial notice of certain attached exhibits. (Dkts. 46, 47, 48.) Plaintiff responded in opposition to both filings. (Dkts. 49, 50.) Without leave, Defendants filed a reply. (Dkt. 52.)

## LEGAL STANDARD

A claim brought under Rule 10b-5 must satisfy (1) the federal notice pleading requirements, (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b), and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (PSLRA). *FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the complaint contains sufficient factual allegations to allow the court "to draw

7

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 670).

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity. *In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, 1138 (M.D. Fla. 2005). A plaintiff satisfies Rule 9(b)'s particularity requirement for fraud when the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "A sufficient level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (internal citations omitted).

Additionally, the PSLRA, codified at 15 U.S.C. § 78u-4(b), further heightens the pleading burden by requiring that the complaint contain: (1) factual specificity as to the alleged misleading or omitted statements and (2) particular facts raising a "strong inference" that a defendant acted with "the required state of mind." Failure to meet either of these provisions mandates the dismissal of the complaint on the motion by any defendant. 15 U.S.C. § 78u-4(b)(3)(A).

8

With respect to the "required state of mind," the Eleventh Circuit has held that scienter is satisfied by a showing that the defendant had "an intent to deceive, manipulate or defraud," or that the defendant "acted with a severely reckless state of mind." *Bryant*, 187 F.3d at 1282-83. Severe recklessness is "'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id.* at 1282 n. 18 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)). While averments of motive and opportunity to commit fraud "may be relevant to a showing of severe recklessness . . . such allegations, without more, are not sufficient to demonstrate the requisite scienter." *Id.* at 1285. Further, "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).

In evaluating allegations of scienter, the Supreme Court holds that since "[t]he strength of an inference cannot be decided in a vacuum" but is "inherently comparative," a court must engage in a comparative evaluation in determining whether a strong inference of scienter has been pled. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A "strong inference" is one that is "cogent and compelling, thus strong in light of other explanations." *Id.* District courts are directed to weigh the alleged inferences through a three-step process: (1) accepting all factual

9

allegations as true, (2) "holistically" evaluating the complaint in its entirety—as well as other sources courts ordinarily examine like "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"—to determine whether all of the facts give rise to a strong inference of scienter, and (3) taking into account plausible opposing inferences of non-fraudulent intent. *Id.* at 322–26. A complaint will survive only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 309.

## ANALYSIS

Before proceeding to the merits, the court reminds the parties that this district does not permit replies to motions to dismiss as a matter of right and requires a party to seek leave before filing one. M.D. Fla. Loc. R. 3.01(d). Also, argument regarding whether the court should take judicial notice of exhibits must be made in the motion itself, which has a 25-page limit unless the court has granted leave to file excess pages. M.D. Fla. Loc. R. 3.01(a). Defendants filed their request for judicial notice of exhibits and a reply without seeking leave. (Dkts. 46, 48.) Because these filings do not comply with the rules, the court will strike them, as well as Plaintiff's response in opposition to judicial notice.[4]

The issue at the heart of Defendants' Motion is whether placing a graphic of a competitor's "much more sophisticated looking" PIC chip on a slide presented to

---

[4] This decision does not impact the Court's decision to grant Defendants' Motion.

investors—without a specific reference to the picture or expressly passing off the product as its own—satisfies the elements of material falsity and scienter. (Dkt. 46 at 49).[5] To state a claim under § 10(b) and Rule 10b–5, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *FindWhat Inv'r Group*, 658 F.3d at 1295. As to the first element, it is unlawful to (1) "make any untrue statement of a material fact" or (2) "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). A misstatement or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact

---

[5] All the additional statements alleged in the Amended Complaint are only misleading because Luminar included the competitor's PIC chip on the slide, according to Plaintiff. Many of these statements appear as block quotes, which leaves the court speculating concerning which parts of the statements "Plaintiff challenges and why." *Hattaway v. Apyx Med. Corp.*, 8:22-cv-1298-WFJ-SPF, 2023 WL 4030465, at *7 (M.D. Fla. June 15, 2023); *see also Theodore v. Purecycle Techs., Inc.*, 6:21-cv-809-PGB-GJK, 2022 WL 20157415, at *3 (M.D. Fla. Aug. 4, 2022) ("excessive block quoting"). In his response, Plaintiff focuses on the statement "We solved 1550," a manufacturing issue to scaling production. As Defendants note, none of the identified written and oral statements mention the PIC chip, nor does Plaintiff identify any PIC chip capabilities conveyed to investors that Luminar's product does not have. *Meide v. Pulse Evolution Corp.*, 3:18-cv-1037-J-34MCR, 2020 WL 5350325, at *15 (M.D. Fla. Sept. 4, 2020) (plaintiff must allege with particularity "facts showing that these statements were actually false or misleading at the time they were made"). For example, Plaintiff does not plead facts showing that Luminar had not solved 1550. *See Theoharus v. Fong,* 256 F.3d 1219, 1226–27 (11th Cir. 2001). Further, Plaintiff complains about statements like "advanced manufacturing" and "breakthrough performance," which are clearly non-actionable puffery. (Dkt. 49 at 11); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1319 (11th Cir. 2019). As such, the oral and written statements depending on the misleading image are not actionable.

would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *S.E.C. v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (internal quotation omitted). As to the second element, a plaintiff "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Tellabs*, 551 U.S. at 328–29.

### I.     Materiality

First, Defendants argue that including a picture of a competitor's chip without labeling it as such is neither material nor false. (Dkt. 46 at 10–11.)[6] Because McAuliffe and the slide did not expressly purport to show Luminar's chip, Defendants say, failing to disclose that the pictured chip belonged to a competitor was not misleading. (*Id.* at 19.) Rather, the surrounding context indicates the pictures on the offending slide were meant to be general pictures of the type of products Luminar intended to manufacture at scale, they argue, not specific pictures of Luminar's actual products. (*Id.* at 17–19.) The court disagrees. Little about the presentation of the offending slide dealt with the generalities of manufacturing. A reasonable investor would not expect pictures of products on a slide presenting a company's plans for scaling manufacture of *those exact*

---

[6] In support of its motion, Defendants include a copy of the company's Form 10-K, the entire investor presentation slide deck and transcript, and the letter to shareholders. (Dkts. 47-1--47-4.) On a motion to dismiss a securities fraud claim, courts commonly take judicial notice of a defendant's SEC filings and investor presentations where those documents are "central to the plaintiff's claims and [are] undisputed in terms of authenticity," so the Court shall take judicial notice of the exhibits. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005). However, Defendants' counsel averred that the attached slide deck was a true and correct copy of the February 28, 2023 investor presentation. (Dkt. 47 at ¶ 3). That is not accurate. It is a copy of the slide deck after the Forbes article was published, with the competitor's image removed and replaced with the picture of Luminar's product. (Dkt. 47-2 at 87).

*products* to contain a picture of a competitor's product as a general example. This is especially true when two of the pictured products were of Luminar's own technology. (Dkt. 37 ¶ 78.) While presenting the slide, McAuliffe discussed how Luminar had "solved 1550" through architecture, advanced packaging, and by "driv[ing] the economies of scale and [its associated] economics . . . by leveraging both Luminar volume and volume to the wider market." (*Id.* ¶ 61.) Additionally, the slide was labeled as Luminar's copyright with "all rights reserved," when the company clearly would not have a copyright to an image of a competitor's product. (*Id.* ¶ 62.) To place a picture of a competitor's product next to pictures of the company's own products on an investor presentation slide, displayed during a discussion of the company's specific manufacturing capabilities and plans, marked as the company's copyright, would lead a reasonable investor to infer the company owns the pictured product. Omitting a disclaimer identifying the graphic as Lidwave's product implicitly conveys to a reasonable investor that the depicted PIC chip belongs to Luminar, regardless of whether Defendants expressly represented the graphic is its own, which it arguably did by marking the slide as its copyright. Accordingly, the inclusion of the competitor's PIC chip, rather than Luminar's own, on the investor presentation slide was misleading.

However, the misleading graphic is immaterial in this particular context because it does not convey anything about the capabilities of Luminar's product. The misrepresentation must "be considered significant to the trading decision of a

reasonable investor[.]" *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988). "It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant." *Id.* at 238. According to Plaintiff, comparing Lidwave's graphic with the picture of Luminar's chip reveals "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival." (Dkt. 37 ¶ 66.) But he does not explain what "sophisticat[ion]" or "function" the graphic conveyed that Luminar's chip lacks (or how it did so). (*Id.* ¶¶ 11, 66–67.) Plaintiff leaves unexplained *how* the small, professional-looking graphic on a single slide communicated to investors any impression regarding the quality, capabilities, or "sophisticat[ion]" of Lidwave's chip that Luminar tried to pass off. He alleges the graphic demonstrates Lidwave's "Finite Coherent Ranging architecture," its "core product," that "allows it to integrate all optical parts at the chip level," a characteristic Luminar's chip does not share. (*Id.* ¶ 49.) But how the graphic of Lidwave's product, available on its website, demonstrates the company's proprietary chip architecture is unclear. Lidwave's graphic obfuscates visible details of the chip's architecture:



(Dkt. 37 ¶ 7.) A reasonable investor would not believe a graphic on an investor presentation would depict a company's trade secret chip architecture, and Plaintiff's assertion otherwise is unpersuasive. (*Id.* ¶ 49.) By including Lidwave's graphic in the

presentation, Defendants allegedly tried to pass off the competitor's image as Luminar's own—but there is insufficient factual support for the idea Defendants also sought to pass off Lidwave's capabilities or degree of sophistication.

In arguing the contrary, Plaintiff says his case is not based on any actual "evidence that Luminar's PIC was less sophisticated and of a lower quality," but rather that the image "appears to be much more sophisticated than what Luminar had developed[.]" (Dkt. 49 at 10.) But he also argues the misleading image was material because "Luminar does not have the ability to produce a product like Lidwave's PIC, as Lidwave is the only company that has invented a physical method that enables integration at the chip level." (*Id.*) For that to matter, the image must convey the physical method enabling integration unique to Lidwave's chip—a fact that Plaintiff admits he does not allege. (*Id.*) In fact, he claims "the revelation of the truth about the image['s origin] was material," not the alleged greater sophistication conveyed by the image itself, since that is when the stock price fell. (*Id.* at 4.) Yet Plaintiff provides no basis to believe a reasonable investor's trading decision would have been affected if Luminar had placed the photograph of its PIC chip on the presentation slide initially. *See Basic*, 485 U.S. at 236–38. For that reason, the misleading image was not material, and thereby not actionable.

## II. Scienter

Second, Plaintiff fails to adequately allege scienter because the misleading statement itself would not likely impact the market. He pleads no facts to establish

15

Luminar and its executives had a fraudulent motive to include the offending graphic, since it would be easily discovered, Defendants argue.  (Dkt. 46 at 13.)  Under the PSLRA, Plaintiff must show that the executives were at least severely reckless in not knowing about the picture's inclusion on the slide.  *See McDonald*, 863 F.2d at 814.  Plaintiffs may sufficiently allege such recklessness by providing evidence that defendants possessed knowledge of facts or access to information contradicting their public statements, so as to show that defendants knew or should have known that they were misrepresenting material facts related to the corporation.  *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1360 (N.D. Ga. 2010).  Where the complaint lacks facts supporting who is responsible for making the false statement, a plaintiff fails to adequately allege scienter.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008).

      Here, the inclusion of Lidwave's graphic on the presentation slide falls short of an extreme departure from the standards of ordinary care because the graphic does not convey any specific capabilities or information pertinent to the valuation of Luminar's stock.  Plaintiff alleges the executives had access before the investor conference to the Freedom Photonics document that contained the picture of Luminar's actual chip, from which at least two other photos on the offending slide originated.  (Dkt. 37 ¶¶ 77–79.)  This presents a strong inference that whoever prepared the slide looked at the Freedom Photonics document, pulled two pictures from it, saw the photo of Luminar's chip, and then decided to include a picture of Lidwave's chip instead.  *See* (*id.*)  But

16

Plaintiff never identifies who prepared the slide, simply claiming the named executives must have known and signed off on it by nature of their positions with the company, which typically is insufficient to establish scienter. *See Mizzaro*, 544 F.3d at 1249 ("there is no information about who wrote the Plan or who received it"). Further, it is more likely the company and its executives used (or turned a blind eye to using) Lidwave's graphic inadvertently than to inflate the stock price intentionally by omitting that "the PIC developed by Luminar was apparently far less sophisticated in design and function than that of its rival." (Dkt. 37 ¶ 66.) After all, the analyst reports and news articles cited by Plaintiff, written after the investor presentation, do not highlight the graphic or any alleged product capabilities falsely conveyed by it, but rather Luminar's creation of the chip-making subsidiary to advance the company's efforts to manufacture and sell its technology at scale in sectors outside the autonomous vehicle market. (*Id.* ¶¶ 39–40.) Plaintiff provides no specifics by which to find Luminar's graphic of its own chip would call into question the company's ability to expand in this way—particularly since the graphic was already a matter of public record. Therefore, Plaintiff does not sufficiently allege that the stock price just as likely fell because the replacement picture of Luminar's own product corrected some false impression left on investors by Lidwave's graphic, rather than other reasons such as costs associated with defending against its rival's threat of legal action.

Based on a holistic review of Plaintiff's allegations and the exhibits judicially noticed, there is no indication Luminar or the named Defendants used the

competitor's graphic on the presentation slide without identifying the source "because it understood [the picture of its own chip's] likely effect on the market." *See Matrixx*, 563 U.S. at 49. Thus, Plaintiff fails to state a claim for securities fraud. *See id.* Defendants' Motion will therefore be granted.

## CONCLUSION

Accordingly:

1. Defendants' Motion to Dismiss (Dkt. 46) is **GRANTED**.

2. Plaintiff's Amended Complaint (Dkt. 37) is **DISMISSED without prejudice**.

3. Pursuant to Local Rule 3.01, Defendants' Request for Judicial Notice (Dkt. 48) and Plaintiff's Response in Opposition (Dkt. 50) are **STRICKEN**.

**ORDERED** in Orlando, Florida, on May 31, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE