IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOHN ALMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>LUMINAR TECHNOLOGIES, INC., MIKE MCAULIFFE, AUSTIN RUSSELL, and JASON EICHENHOLZ,<br><br>Defendants. | Case No.:  6:23-cv-982-JSS-LHP<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

**INTRODUCTION**

Plaintiff alleges that at the Company's first-ever Luminar Investor Day ("Investor Day"), Defendants misled investors regarding the truth of Luminar's technological advances by falsely passing off a pivotal image of a rival's photonic integrated circuit ("PIC") as its own.[1]  In its dismissal order ("Order," Dkt. 55), the Court agreed with Plaintiff that Defendants' use of its rival's image was misleading (Order 13), but found that the "misleading graphic is immaterial in this particular context because it does not convey anything about the capabilities of Luminar's product." *Id.* The Court further held that the

---

[1] All "¶__" references are to the Second Amended Class Action Complaint ("SAC" or "Complaint"), Dkt. 59.  All emphases are added, and all citations and internal quotation marks are omitted.  Capitalized terms not otherwise defined have the same meaning as those used in the SAC.  "MTD" refers to Defendants' motion to dismiss ("Dkt. 66").

1

complaint failed to plead scienter because no motive was alleged and that "the graphic does not convey any specific capabilities or information pertinent to the valuation of Luminar's stock." *Id.* at 16. The SAC now includes important new allegations that remedy the deficiencies identified by the Court.  New evidence shows that the opposing graphics, one from Luminar, one pirated from Lidwave, a competitor of Luminar, convey specific information regarding Luminar's capabilities and information pertinent to the valuation of Luminar's stock.

The motive to mislead the market is clear and sufficiently alleged. Prior to the Class Period, the SEC sought answers from Luminar about certain representations in its SEC filings. In response, Luminar was forced to admit that "at the end of 2021," it "neither achieved technological feasibility of its developed software nor achieved a level of certainty to anticipate imminent sales of commercial grade series production lidar sensors, . . ."  This humiliating admission came just days after Luminar announced Investor Day to unveil its long-term product and technology roadmap.  Thus, Luminar was under significant pressure to demonstrate that it had advanced its PIC to achieve technological feasibility (which it had not) so that it could raise the investor capital on which it depended to fund its business.

The SAC also goes into great detail describing the technological capabilities of the Lidwave PIC that the misappropriated image conveys and

on which Defendants relied to falsely convey that Luminar's chip possessed those same capabilities.  In the competitive lidar industry, the key to getting ahead is cost-effective miniaturization–a.k.a., "scalability."  To do this, it is widely acknowledged that getting as many components as possible onto a single silicon-based PIC is key to scaling lidar, and that making PICs from integrated circuits on miniature silicon chips—*i.e.*, "siliconizing" —is the key to this process, as stated by Luminar.  These capabilities are clearly reflected in the Lidwave PIC image, but clearly lacking in the image of Luminar's PIC Chip.

To save face (and potential future capital raises), Luminar intentionally passed off the image of Lidwave's silicon PIC as its own during its Investor Day presentation, while touting its ability to "siliconize" and scale production. After a Forbes article revealed the misappropriation and posted a photo of Luminar's ***actual*** PIC—which appeared to involve non-silicon based clunky wiring and appeared to be far behind Lidwave's in terms of "siliconization" (the actual Luminar PIC image was from 2019)—Luminar's stock dropped over 9%. The CEO of Luminar's competitor MicroVision accused the Company of playing the game of "fake it until you make it" and suggested that Luminar may have shown computer aided design graphics instead of real products.

Defendants continue to challenge falsity, materiality and scienter, but the SAC's new allegations more than sufficiently plead those elements.

3

## STATEMENT OF FACTS

Just a few days after announcing Investor Day, the Company had been forced to admit that "at the end of 2021, the Company neither achieved technological feasibility of its developed software nor achieved a level of certainty to anticipate imminent sales[.]" ¶3. Due to this revelation, plus the fact that the Company had been losing money since it went public, Investor Day was critical to showing investors that Luminar made substantial progress in achieving technological feasibility. ¶¶2-5, 30. It featured presentations from top management, including CEO Russell, CTO Eichenholz, and McAuliffe, CEO of Luminar subsidiary Luminar Semiconductor ("LS"). ¶¶58, 76, 86-87. The LS subsidiary was described as "enabl[ing] Luminar to fulfill its mission." ¶59. During his presentation, McAuliffe described LS as building chips to solve, *inter alia*, "probably the most impactful problem of them all[:]" a smaller, scalable lidar sensor for passenger and commercial vehicles. ¶58. While displaying a slide purportedly featuring Luminar's PIC—the key to achieving that scalability—McAuliffe misleadingly touted LS's unique ability to minimize cost and complexity through its technology, specifically regarding "industrializing" the industry "at scale" using siliconization. ¶¶86-87. In context, it was clear that McAuliffe's statements were about the PIC. Other misstatements regarding Luminar's technological capabilities were made that day as well. ¶¶88-89.

4

On March 17, 2023, the truth was revealed when *Forbes* revealed the misappropriation, quoting Lidwave's CEO as stating Luminar used Lidwave's PIC "to falsely promote its ***abilities*** and securities to investors." ¶94. Lidwave also issued a statement describing its chip capabilities: "This technology allows us to integrate all optical parts at the chip level, ***as demonstrated in the Lidwave product image*** that Luminar copied without our permission." ¶20. Forbes updated the article that day to include Luminar's actual PIC, ¶¶97-98, which was ***from 2019***, ¶¶102-03, and looked nothing like the one Luminar tried to pass off as its own.  This revelation made it clear that Luminar's PIC was not as advanced as represented during Investor Day.  On this news, Luminar's stock price fell 9.09% over two trading days.  ¶100.

## ARGUMENT

The court must presume all factual allegations of the complaint as true and draw "all plausible inferences" in Plaintiff's favor.  *Owl Creek I, L.P. v. Ocwen Fin. Corp.*, 2018 WL 4844019, at *4 (S.D. Fla. Oct. 4, 2018).

## I.   RESPONSE TO REQUEST FOR JUDICIAL NOTICE

Plaintiff does not object to the Court considering MTD Exhibits A-C to ascertain what they say, but not for the truth of the matters asserted therein. *See Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999).

## II.   DEFENDANTS MADE MATERIALLY FALSE AND MISLEADING STATEMENTS

Plaintiff only challenges the statements contained in the false and

misleading statement section (¶¶86-89), not the statements in ¶¶6-7.  For additional clarity, Plaintiff bolded and italicized the statements currently challenged in McAuliffe's quote at ¶86, which do not include the statements the Court previously found were puffery (Order 11 n.5).  *See Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at *5 n.1 (S.D. Cal. Sept. 19, 2016) (challenged statements clearly identified where plaintiff italicized them).  The statements Plaintiff ***does*** challenge in the SAC are addressed below.

It is unlawful to (1) "make any untrue statement of a material fact" or (2) "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).

## A.     The Use Of The Lidwave PIC Was Material

A misrepresented or omitted fact is material if there is a "substantial likelihood" that the information "would have been viewed by [a] reasonable investor as having significantly altered the 'total mix' of information made available" to investors.  *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1245 (11th Cir. 2012).  In other words, context is crucial. Here, Defendants' passing the Lidwave PIC off as Luminar's own was crucial to convincing investors that the Company had meaningfully advanced towards technological feasibility.

To be competitive in the lidar industry and get much-needed investor capital, Luminar needed to pull ahead in the race to miniaturize (*i.e.*, scale

down) its lidar, which is dependent on developing a sufficiently advanced PIC. ¶¶27, 53. Indeed, analysts anticipated that Investor Day would, *inter alia*, "update investors on [Luminar's] progress towards scaling production…" ¶78. Thus, the technological advancement of Luminar's PIC since 2021 was clearly material to investors. ¶53.

Lidwave's PIC image clearly demonstrates the advanced technology of PIC chip integration, the holy grail in the lidar field. ¶74. As Lidwave publicly stated after it learned of Luminar's misappropriation, "After intensive R&D we have invented the Finite Coherent Ranging - FCRTM architecture (Lidwave's core IP). This technology allows us to integrate all optical parts at the chip level, as demonstrated in the Lidwave product image that Luminar copied without our permission." ¶75. Had Luminar used an image of *its* PIC, it would have been clear to investors that the Company's technology was far inferior to that described at the event. Sufficiently advanced PICs integrate multiple functions in one small chip, often using silicon, rather than bulky wired circuits. ¶¶15, 51-54. Luminar's PIC looked more like the latter. ¶22.

Moreover, the fact that Luminar had not made meaningful progress towards technological feasibility is supported by the fact that the only image it could muster of its actual PIC was from a ***2019*** brochure of a company it recently acquired, Freedom Photonics. ¶102-03. As the Court previously noted, that brochure was publicly available. Order 17. Using that picture at

the 2023 Investor Day would unquestionably undermine Luminar's claims of progress in scaling its lidar since 2021 not only because of its appearance, but because of its age. That the misappropriated PIC was communicating information about Luminar's capabilities to investors is clear not only from the image itself, but from McAuliffe's contemporaneous statements about "siliconization" and "scalability," discussed in §II.B, below.  Thus, the fact that the image was not Luminar's would have "significantly altered the total mix of information" available to investors.  *Matrixx*, 563 U.S. at 47.

Furthermore, when *Forbes* published its article disclosing the omitted fact—that Luminar used Lidwave's PIC image—it updated it later that night to include the revised slide with Luminar's 2019 PIC on it.  ¶97.  Thus, in addition to revealing that the image was stolen, it also revealed the true state of Luminar's PIC, causing the stock to drop 9.09% over two consecutive trading days.  ¶100.  *See Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1183 (S.D. Cal. 2009) ("[t]he significance of this information is illustrated by … the market reaction to the alleged disclosures").

### B. Defendants' Remaining Statements Were Materially Misleading

In his portion of the presentation on Investor Day, as the slide with the misappropriated PIC was presented, McAuliffe misleadingly touted Luminar's unique ability to scale down lidar through its technology, stating, "*We're*

8

*shifting gears to take what has been a sub-scale industry, sub-scale ecosystem, and industrializing that at scale.  And we need to do that . . . both for the economics and for size, weight, and cost, in order to deliver lidars at millions of units*."  ¶86.  He continued to discuss the Company's use of "***siliconization***" in making this scaling possible.  *Id.*[2]

Defendants seek to separate McAuliffe's words from the slide accompanying them, but "[w]ords … cannot be viewed 'in complete isolation' but must instead be 'read in light of all the information then available to the market' to decide if they 'conveyed a false or misleading impression.' … Circumstance, setting, and even 'manner of presentation' all matter."  *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 670 (N.D. Cal. Dec. 2021).

When viewed in context of his PowerPoint presentation, McAuliffe's statements about siliconization and scaling were necessarily about the PIC image.  It is well known that the key to "industrializing at scale" and making lidar smaller in "size, weight, and cost" is manufacturing sufficiently advanced PICs, and that making PICs with silicon furthers this goal.  ¶¶15, 51-54, 86. That the challenged statements were about the PIC is also clear from the fact that he made these statements while presenting the slide, which features the PIC as the finished product of the other components pictured (as indicated by

---

[2] Defendants argue that the Court previously found that McAuliffe's statements in ¶86 were not discussing the PIC chip, but that language pertained to "[w]e solved 1550," which is not challenged in the SAC. Order 11 n.5.

the arrows pointing to it).  ¶87.

These statements were misleading when made because they created an "impression of a state of affairs that differs in a material way from the one that actually exists."  *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*, 2019 WL 5394011, at *9 (M.D. Fla. Oct. 16, 2019), *adopted by* 2020 WL 1072582 (M.D. Fla. Feb. 14, 2020).  Namely, Luminar had advanced in the area of "siliconization" and had created the PIC featured in the slide, which appeared far more advanced and "siliconized" than Luminar's actual PIC.  This was made clear by Lidwave's CEO, who told *Forbes* and the SEC that Luminar "***misuse[d] its product image to falsely promote its abilities*** and securities[.]"  ¶94.  *See Bellocco v. Curd*, 2005 WL 2675022, at *3 (M.D. Fla. Oct. 20, 2005) (finding statements regarding progress in developing and producing HB-LED products misleading where company incapable of commercial production of HB–LEDs that "was [c]ritical to its success").

Indeed, had Luminar put its own PIC on the screen, featuring prominent cables that were not in alignment instead of the sleek integrated circuits, ¶98, it would have contradicted McAuliffe's statement that siliconization solves "[c]omplexity in cabling," ¶86.  By contrast, the pilfered Lidwave graphic demonstrates the scalability that McAuliffe falsely claimed to have—it is small, thin, and appears advanced.  *Compare* ¶15, *with* ¶22.  Thus, when viewed in context, the slide conveyed to the market material, albeit false,

10

information about Liminar's PIC capabilities with respect to scalability.  *See*

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v.*

*Allscripts-Misys Healthcare Solutions, Inc.*, 778 F. Supp. 2d 858, 879 (N.D. Ill.

2011 (finding statement misleading "in context" because it "may have misled a

reasonable investor into developing an overly rosy picture of the risks and the

resulting problems Allscripts was facing in" releasing new product).

These statements were not, as Defendants now posit, about Luminar's

"aspirational efforts," (MTD 11) considering that they were made while

McAuliffe was touting what the company had achieved.  *See* ¶¶86-87.  Indeed,

in other statements made on Investor Day, Luminar and Russell discussed its

Iris lidar, speaking in the present tense about its scalability. ¶89. As PICs are

the driving force behind that quality, these statements reinforced the

misleading impression given by the PIC image.

Furthermore, Defendants made misleading statements representing

that Luminar's technology was ahead of its competitors in this area, stating

that the Company's "strategy to bring these advanced receiver, laser and

processing chip technologies in-house has enabled its unmatched lidar

performance while further securing and industrializing the lidar supply

chain," and that they are "leading in this new era[.]"  ¶88.  These statements

were misleading because, unbeknownst to investors, Luminar's PIC technology

was not "leading" or "unmatched."  If it truly had been, they would have had

11

no need to seek out a hard-to-find image of a competitor's core PIC chip technology. Clearly, Luminar made a special effort to hide the fact that they were behind in this race as the only image of their own PIC chips they found to use as a substitute for the misappropriated image came from 2019.

These facts are further corroborated by statements from others in the industry. For example, Lidwave's CEO Mr. Vidal stated that Lidwave is the only company that has succeeded in inventing a physical method that enables the integration at the chip level, and that Luminar does not have the ability to produce a product like Lidwave's. ¶111. Mr. Sharma, the CEO of competitor MicroVision, called out Luminar on Investor Day, stating that it was playing a game of "fake it till you make it" with respect to its technology. ¶2. It was clear he was referring to Luminar because he mentioned that the competitor "admitted to the SEC that their technology has not shown viability yet and contracts are not guaranteed," but "cause[s] a lot of market confusion with extensive marketing events and press releases" and are able to "raise huge amounts of capital from the market" that they use for, *inter alia*, "buying $80 million mansions in Pacific Palisades."[3] MTD Ex. B at 6. When asked directly about Investor Day, he suggested that Luminar may not have much more than Computer Aided Design graphics. ¶9 n.1.

---

[3] Mr. Russell bought such a mansion. *See* Lauren Beale, *The Most Expensive U.S. Real Estate Sales for 2021*, Forbes (Jan. 16, 2022), https://www.forbes.com/sites/laurenbeale/2022/01/16/most-expensive-us-real-estate-sales-2021/.

Defendants argue that neither Mr. Vidal nor Mr. Sharma know anything about the status of Luminar's technology, but their knowledge of the industry provides sufficient knowledge to comment and corroborates the other facts pled concerning the state of Luminar's technology.[4]

## III. DEFENDANTS ACTED WITH THE REQUISITE SCIENTER

A plaintiff may satisfy the scienter standard by showing "either an intent to deceive, manipulate, or defraud, __or__ severe recklessness." *State of Alaska v. Ryder Sys., Inc.*, 603 F. Supp. 3d 1229, 1238-39 (S.D. Fla. 2022). A court must "assess all the allegations **holistically**[,]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007), to determine whether plaintiff's "inference of scienter [is] *at least as* strong as any opposing inference[.]" *Alaska*, 603 F. Supp. 3d at 1239-40. Plaintiff added additional allegations in the SAC that create a strong inference of scienter.

### A. Defendants Were Severely Reckless

As Defendants' own authority states, severe recklessness can be shown "by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *In re Pegasus Wireless Corp. Sec.*

---

[4] Defendants' cases are inapposite, as they involve the facts necessary to allege **confidential** witness allegations, which require more detail because their source's identity is unknown. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239-40 (11th Cir. 2008); *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 890 (N.D. Cal. 2008). MTD 9, 14.

*Litig.*, 657 F. Supp. 2d 1320, 1327-28 (S.D. Fla. 2009).  The SAC sufficiently pleads why Luminar's use of a competitor's image instead of its own PIC was "so obviously" material, *see* §II.A.

By presenting the slide, McAuliffe is deemed its "maker" for the purposes of §10(b) liability.  *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011).  At this stage of the litigation, it can be inferred that McAuliffe prepared, or directed the preparation, of the slide.  He was responsible for presenting it, and as LS's CEO, was necessarily involved in preparing the presentation regarding this new entity to the market.  ¶¶86-87, 105.  McAuliffe was also necessarily familiar with Luminar's PIC, what it looked like, and its capabilities, considering his role and the PIC's roles in making scalable lidar.  ¶¶51-54, 57-59, 105; MTD Ex. A at 2:9-10 (mentioning "the chip-up strategy"), at 2:19-20 ("[w]e build chip-scale components"), at 10:2-4 ("our to-do list in the company [is] [n]umber one [to] drive a chip-level roadmap for Luminar.").  He also had access to Luminar's PIC from the Freedom Photonics brochure used for the other images.  ¶¶102-05.

Even if someone else prepared the challenged slide for him, McAuliffe still needed to review it before presenting at Investor Day, otherwise he would not have been able to prepare or deliver his oral statements.  ¶¶86-87.  Thus, it would have been "so obvious" to him that the PIC pictured was not

14

Luminar's, and that using that image was likely to mislead investors given what it communicated about the PIC's technological status.

It is also highly likely that Russell, as Luminar's CEO, and Eichenholz as Luminar's CTO, were also involved in the preparation of, or at least reviewed, the slide in advance, given Investor Day's and the PIC's importance in demonstrating scalability. ¶¶3-4, 14, 77-78; *see Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1302 (N.D. Ga. 2021) ("core operation" can "bolster" scienter allegations). Thus, it is implausible that placing Lidwave's image in the presentation "could be completed without the involvement of any upper management officials."[5] *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 237–38 (E.D. Pa. 2021) (rejecting a defense of "a mere copy and paste" error and finding strong inference of scienter where the defendants attended the presentation and "tolerated the misrepresentation.").

Eichenholz's status as Luminar's CTO and Chairman also suggests that he had access to Luminar's PIC, what it looked like, and what its capabilities are, as his responsibility over Luminar's technology and LS puts this information "squarely within his bailiwick." *In re Amgen Inc. Sec. Litig.*, 2014

---

[5] *Mizzaro* is inapposite. 544 F.3d at 1250-51 (no facts showed "how knowledge of the fraud would or should have percolated up to senior management" in a company **as large as Home Depot**).

15

WL 12585809, at *12 (C.D. Cal. Aug. 4, 2014); *see also* ¶¶56, 102-104. The same

is true of CEO Russell.  *See* ¶¶41, 102-104.

The Individual Defendants would also have known what Luminar told

the SEC in a public filing about the status of its technology, as they each

needed to be consulted about its status in order for the Company to make such

a filing in the first place due to their roles.  ¶¶3-4, 40-42.

The Individual Defendants' knowledge is also demonstrated by their own

detailed statements.  *See* ¶¶56, 86-87, 89, 106.[6]  "It is unclear what further

facts [P]laintiff[ ] would need to plead to create a stronger inference that

[Defendants] had access to information [they] discussed publicly."  *Voulgaris*

*v. Array Biopharma Inc.*, 2020 WL 8367829, at *21 (D. Colo. Nov. 24, 2020).

The foregoing supports the conclusion that Defendants knew that the

PIC on the slide did not belong to Luminar, that Luminar's PIC was not as

advanced as they portrayed it, and that the challenged statements were likely

to mislead investors without clarifying that the PIC was Lidwave's.  The

presentation was live-streamed on the internet and the PowerPoint

presentation was made available to viewers worldwide.  ¶¶83-84. Indeed, the

owners of Lidwave had no problem viewing the details of the pirated image

---

[6] Defendants' authorities are inapposite because Plaintiff is not resting his scienter allegations solely on Defendants' roles, or on information Defendants did not have notice of or could not have known before making the statements.  *See Theodore v. PureCycle Techs., Inc.*, 2022 WL 20157415, at *14 (M.D. Fla. Aug. 4, 2022); *In re SportsLine.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1172 (S.D. Fla. 19, 2004).  MTD 17.

while in another country.  *See* §II.  Its details were also clear enough that Lidwave's clients and investors recognized it and brought it to Lidwave's attention.  ¶111.

Defendants argue that their awareness that the image was Lidwave's is insufficient to plead scienter, but severe recklessness can be inferred where, as here, defendants "possessed knowledge of facts or [had] access to information contradicting their public statements[.]" *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1360 (N.D. Ga. 2010).[7]

### B. Defendants' Motive Supports An Inference Of Scienter

Insider sales ***have never been*** required to demonstrate scienter, and motive is not required to plead securities fraud.  *See Tellabs*, 551 U.S. at 325. That said, a compelling motive existed here.  Having admitted to the SEC that it had not "achieved technological feasibility" in 2021, Luminar was under significant pressure to demonstrate substantial progress in developing scalable lidar.  In this highly competitive industry, numerous competitors were all vying for the same investor capital, and Luminar's future success was

---

[7] *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at *13 (M.D. Fla. June 15, 2023), does not compel a different result. MTD 18. There, awareness of ***potential*** compliance issues could not be equated to an intent to defraud where defendants repeatedly disclosed those issues to investors. *Hattaway*, 2023 WL 4030465, at *13. Defendants here did not tell investors they were using a competitor's image. *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, (MTD 18) is also inapposite. 2019 WL 1429667, at *29 (MD. Fla. Mar. 29, 2019) (finding defendants ultimately incorrect projections were not made with scienter because the information in their possession at the time was not inconsistent with the projections).

dependent on convincing investors that its technology would prevail. ¶¶26, 30. Knowing that an image of their actual PIC would reveal the true status of its technology, *see* §II.A, Defendants intentionally sought out an image of its competitor's more technologically-advanced chip. That Lidwave's PIC was intentionally sought out is also supported by the fact that it was *only* available on Lidwave's website. ¶¶16, 107-10. Thus, Defendants were motivated to use the pilfered image, hoping that because its competitor was a small, foreign company, ¶¶17, 71, the market would be none the wiser while Luminar secured the investments needed to continue working on its own technology. Such corporate decision-making is akin to "embezzling in the hope that winning at the track will enable the embezzled funds to be replaced before they are discovered to be missing." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 686 (5th Cir. 2014).

Defendants complain that Plaintiff alleges no need to raise capital or any actions they took to do so during the Class Period. MTD 20. But the misleading statements were made at Luminar *Investor* Day, an event necessarily designed to elicit investments, especially since Luminar had been losing money. This was not a "routine" event either[8] – it was the first of its kind,

---

[8] Thus, *Neiman v. Bulmahn*, 854 F.3d 741, 747-48 (5th Cir. 2017) (MTD 20) is distinguishable for this reason as well as the fact that the motive allegations did not make sense where the company voluntarily disclosed the truth two months later. Here, Luminar only disclosed the truth when Lidwave forced it to. ¶111. In *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1250

hotly anticipated by the market, and came on the heels of Luminar's admission that it had not achieved "technological feasibility" at the end of 2021. *See* ¶¶3, 77-78. Thus, Luminar's need to raise money is a compelling motive under these circumstances.

### C. The Inference Of Scienter Is At Least As Compelling As Defendants' "Innocent" Explanation

When the parties present a competing inference for the court to consider in connection with scienter, "***a tie favors the plaintiff***[.]" *Spitzberg*, 758 F.3d at 686. The new allegations in the SAC explain why the inference of scienter is at least as compelling as Defendants' innocent inference. *See Tellabs*, 551 U.S. at 326. For example, the SAC explains what Luminar's PIC would have conveyed about its capabilities, what Lidwave's PIC conveyed, and why Defendants acted with severe recklessness to the challenged statements' propensity to mislead and were motivated to lie. Although analysts did not explicitly mention the PIC in their post-Investor Day reports, they did discuss Luminar's "path to high volume production[,]" ¶82, which was dependent on the PIC and appeared farther along than it would have if Luminar used its 2019 PIC.

Defendants' argument that "the Challenged Image was included in the

_____

(M.D. Fla. 2002) (MTD 21), a general economic benefit to the corporation was not enough of a motive to artificially inflate the stock price, and neither were higher bonuses because bonuses were based on ***performance***, not stock price.

presentation 'to give a visual illustration of a generic photonic integrated circuit,'" rather than to pass the image off as Luminar's is belied by the facts surrounding the presentation and is not a more compelling inference. MTD 21. Lidwave's PIC could not be mistaken for a "generic" one considering the impossibility of finding it when searching for such an image, ¶¶16, 107-10, and the fact is that Lidwave's PIC was not generic because Lidwave "is the only company in the world that has succeeded in inventing a physical method that enables the integration at the chip level." ¶25; *see also* ¶74 (stating Lidwave's work in PIC chip integration is "pioneering"). Furthermore, Luminar did not voluntarily correct the slide—it was forced to when the misappropriation became public. *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) ("[E]vidence of concealment is strongly indicative of scienter.").[9]

## CONCLUSION

Plaintiff respectfully requests Defendants' motion be denied.

Dated: September 12, 2024             Respectfully submitted,

By: */s/ Jeffrey L. Haberman*
        Jonathan R. Gdanski (FL. Bar No. 32097)
        Jeffrey L. Haberman (FL. Bar No. 98522)

_____

[9] Moreover, contrary to Defendants' argument that they did not attempt to remove from the internet the image with Lidwave's PIC (MTD at 7), the presentation slides available on the Company's website and YouTube channel contain the corrected slides with Luminar's PIC.

**SCHLESINGER LAW OFFICES, P.A.**
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:
Jonathan@schlesingerlawoffices.com
JHaberman@schlesingerlawoffices.com

*Liaison Counsel for Lead Plaintiff*

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (admitted pro
hac vice)
Robert W. Killorin (admitted pro hac
vice)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Lead Counsel for Lead Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: */s/ Jeffrey L. Haberman*
Jeffrey L. Haberman
(FL. Bar No. 98522)

22