UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN ALMS,

     Plaintiff,

v.                                     Case No: 6:23-cv-982-JSS-LHP

LUMINAR TECHNOLOGIES, INC.,
MIKE MCAULIFFE, AUSTIN
RUSSELL, and JASON
EICHENHOLZ,

     Defendants.

_____/

## ORDER

     Defendants move to dismiss Plaintiff's Second Amended Class Action Complaint with prejudice. (Motion, Dkt. 66). Plaintiff opposes the Motion. (Dkt. 68.) Upon consideration, the Motion is granted in part and denied in part.

## BACKGROUND

     Defendant Luminar Technologies, Inc. (Luminar) is a publicly traded company that develops technology used in autonomous vehicles, including light detection and ranging (LiDAR) sensors. (Dkt. 59 ¶¶ 11–14, 39). LiDAR is a remote-sensing technology that produces 3-D imaging of a particular space, effectively functioning as an autonomous vehicle's eyes. (*Id.* ¶¶ 48–49.) A critical engineering challenge in the highly competitive autonomous vehicle industry is scaling LiDAR technology down to decrease the cost of manufacturing and to allow the devices to integrate into cars'

frames more seamlessly. (*Id.* ¶¶ 50–54.) Increasingly advanced photonic integrated circuit, or "PIC," chips have provided a means to accomplish this. (*Id.* ¶¶ 12–13.)

Luminar was founded in 2012 specifically to develop sensor technologies and software for use in the automotive industry, (*id.* ¶ 55), but as of the end of 2021 it stated that it had not "achieved technological feasibility of its developed software" and that it did not "anticipate imminent sales of commercial grade series production [LiDAR] sensors," (*id.* ¶ 3; Dkt. 59-1 at 7). Luminar acquired and consolidated three entities— Black Forest Engineering, Optogration, and Freedom Photonics—into a new subsidiary entity, Luminar Semiconductor, in February 2023. (Dkt. 59 ¶¶ 56–57.) Luminar Semiconductor's primary purpose was to continue developing PIC chips for implementation in Luminar's LiDAR sensors. (*Id.* ¶ 57.)

On February 28, 2023, Luminar hosted an open presentation for investors about the company's plans to economize its LiDAR technology. (*Id.* ¶¶ 14–15.) During the presentation, Luminar featured a slide entitled "Common Platforms Drive Scale" that included a picture of a competitor's PIC chip. (*Id.* ¶¶ 15, 87.) As seen below, the slide does not indicate that the pictured chip (the graphic at the bottom right of the slide) is not Luminar's product.



(*Id.* ¶ 87.)  Defendant Mike McAuliffe, CEO of Luminar Semiconductor, presented the slide while discussing the company's "broader ambition to be a photonics player in the wider market" outside the automotive industry.  (*Id.* ¶ 58.)  McAuliffe further remarked:

> It[ is] fundamental to our strategy to understand that th[ese] common needs can drive common platforms . . . .  We solved 1550.[1]  There is a general perception that 1550 is an expensive . . . process . . . .  That is not the case.  We have solved that problem through, number one: architecture . . . .  Number two: advanced packaging. . . .  [N]umber three: we can drive the economies of scale and the economics associated with that by leveraging both Luminar volume and volume to the wider market.  So, we[ are] shifting gears . . . to take what has been a sub-scale industry, sub-scale ecosystem, and industrializing that at scale.  And we need to do that . . . both for the economics and for size,

---

[1] "'1550' refers to the development of laser technology that uses the longer wavelength of 1550 nanometers, as opposed to the traditional wavelength of 905 nanometers.  The use of the higher-power laser with 1550 [nanometers] allows for measurements with higher fidelity, at longer distances, and with more accurate results than any other wavelength option."  (Dkt. 59 ¶ 86 n.5.)

weight, and cost, in order to deliver [LiDAR] at millions of units.

And as an example, the other key advantage of siliconization is this: people think that . . . the biggest advantage is you control your own supply chain, that[ is] true. You can control the quality, that[ is] true. You can control the performance, that[ is] true. But the biggest advantage of siliconization in general, is you can take a lot of complexity and cost out of the product. Complexity in cabling. Complexity in optics. Complexity in electromechanical. So anything you can put in silicon, you can put in silicon.

And I think we can see from other industry leaders like big fruit companies, that owning that stack, and internalizing, and siliconizing anything that you can[] delivers elegant architecture, breakthrough performance, and breakthrough economics.

(*Id.* ¶ 86.) He also represented that Luminar's strategy to bring "these advanced receiver, laser[,] and processing chip technologies in-house ha[d] enable[d] its unmatched [LiDAR] performance while further securing and industrializing the [LiDAR] supply chain." (*Id.* ¶ 88.)

McAuliffe explained that Luminar Semiconductor would serve as an integral part of Luminar's mission to "develop[] economically advantageous [LiDAR] for passenger and commercial vehicles." (*Id.* ¶ 59.) Similarly, Jason Eichenholz, Luminar's CTO and chairman of Luminar Semiconductors, boasted that Luminar's acquisition of Freedom Photonics would "enable[] a new level of economies of scale, deepen[] [Luminar's] competitive moat[,] and strengthen[] [its] future technology roadmap." (*Id.* ¶¶ 42, 56.) Austin Russell, Luminar's founder and CEO, noted that "Luminar [wa]s very uniquely positioned to be able to deliver real revenue, scalable

profits[,] and exponential growth from [its] multi-billion dollar order book over both the near . . . and long term." (*Id.* ¶¶ 7, 41.)

With many analysts expressing optimism about the company's future, Luminar's stock price rose from $8.87 at market close the day before the presentation to $9.06 at market close the day after the presentation. (*Id.* ¶¶ 82, 93.) On March 3, 2023, Luminar's price peaked at $9.89 for the period between February 28, 2023 and March 17, 2023 (Class Period). (*Id.* ¶ 121.) However, on March 17, 2023, Forbes released an article headlined "Lidar Maker Luminar Accused of Using Image of Rival's Chip in Investor Conference." (*Id.* ¶¶ 31, 94.)[2] In the article, Lidwave, a start-up that also develops LiDAR, identified the PIC chip image on the slide as its own graphic and reported sending both a cease-and-desist letter to Luminar threatening legal action for copyright infringement and a complaint to the Securities and Exchange Commission about Luminar's "misuse of [Lidwave's] product image to falsely promote its abilities and securities to investors." (*Id.* ¶¶ 31, 91, 94.) Lidwave claimed that "Luminar does not have the ability to produce" the PIC chip pictured in the slide, which demonstrates "integrat[ion of] all optical parts at the chip level." (*Id.* ¶¶ 20, 25, 73, 75.)

---

[2] *See also* Alan Ohnsman, *Lidar Maker Luminar Accused of Using Image of Rival's Chip in Investor Conference*, FORBES.COM (Mar. 17, 2023), https://www.forbes.com/sites/alanohnsman/2023/03/17/lidar-maker-luminar-accused-of-using-image-of-rivals-chip-in-investor-conference/?sh=166619da4abf. "[C]ourts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

In response to the Forbes article, Luminar quickly replaced the image that had appeared on the slide with the following image of its own PIC chip:



(*Id.* ¶¶ 97–98.)  This replacement image came from a 2019 presentation produced by Freedom Photonics, the source of the other photos of actual Luminar products on the Common Platforms Slide.  (*Id.* ¶¶ 102–03.)  Based on this image, the second amended complaint alleges that Luminar's PIC chip—which is described as "crude looking" with "rough edges"—could not be "repeatedly printed on silicon sheets for use in commercial mass production," while Lidwave's "far more advanced . . . chip" could. (*Id.* ¶¶ 19–23.)

Over the two consecutive trading days following the Forbes article, Luminar's stock fell, closing at $7.80 on March 20, 2023.  (*Id.* ¶ 32.)  Four days after that, to address the "volatility" of its share price, Luminar published a letter to shareholders on its website in part addressing Lidwave's public accusations and threats of legal action:

> [A]s part of our [February 28, 2023 presentation] . . ., a
> member of our team included a thumbnail of a generic

> graphic of a . . . [PIC chip] on a single slide in a 165[-]page
> presentation. This thumbnail was there to give a visual
> illustration of a generic . . . [PIC chip] in our semiconductor
> section of the presentation. A startup company that
> Luminar has never heard of contacted the media claiming
> that we were improperly passing off their tech as ours. This
> is clearly not the case. For the avoidance of doubt, we
> replaced the thumbnail with an actual microscopic photo of
> one of our integrated circuits. Let me be clear—all of our
> key semiconductor intellectual property at Luminar is home
> grown and owned by us.

(Dkt. 67-3 at 3; *see* Dkt. 59 ¶ 107.)[3]  Despite the letter, Luminar's stock price did not

rebound. (*See* Dkt. 59 ¶ 8.) Luminar did not report receiving any subpoenas or

otherwise being under investigation by the SEC in its 2023 annual report. *See* Luminar

Technologies, Inc. (Tik: LAZR), Annual Report (Form 10-K) (Feb. 28, 2024).[4]

---

[3] Defendants request that the court consider three documents they argue are incorporated by reference in the second amended complaint, (Dkt. 66 at 8), which they have attached to a separate filing, (Dkts. 67-1 (transcript of McAuliffe's remarks at the February 28, 2023 presentation), 67-2 (transcript of MicroVision, Inc's FQ4 2022 Earnings Call), & 67-3 (letter from Luminar's CFO Tom Fennimore to shareholders).) Defendants argue that these documents are central to Plaintiff's claims and undisputed. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[W]hen resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims[] and (2) undisputed, meaning that its authenticity is not challenged."). In his response, Plaintiff states that he "does not object to the [c]ourt considering [these documents] to ascertain what they say, but not for the truth of the matters asserted therein." (Dkt. 68 at 5.) Because Plaintiff does not appear to dispute the documents' centrality or authenticity, the court will consider them incorporated by reference. Moreover, because Plaintiff cites only caselaw discussing the doctrine of judicial notice rather than the doctrine of incorporation by reference, (*see id.* (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999)); *see also Bryant*, 187 F.3d at 1280 n.16 ("[The d]efendants . . . were not relying on this doctrine [of incorporation by reference]; rather, [the d]efendants seek only consideration . . . pursuant to the judicial notice concept specified by Fed. R. Evid. 201(b).")), any argument he had to the contrary has been waived, *see Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

[4] "[A] court . . . considering a motion to dismiss in a securities fraud case[] may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed." *Bryant*, 187 F.3d at 1278.

On May 26, 2023, a shareholder filed this class action against Defendants on behalf of purchasers of Luminar's stock during the Class Period, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (Exchange Act) and the SEC's Rule 10b-5 because of Defendants' use of Lidwave's PIC chip in the investor presentation. (Dkt. 1.)  The current class representative is John Alms.  (Dkt. 20.)  Plaintiff filed an amended complaint on October 30, 2023.  (Dkt. 37).   Upon Defendants' motion, the court dismissed that complaint without prejudice for failure to state a claim for securities fraud.  (Dkt. 55.)  Specifically, the court found that Plaintiff failed to adequately plead materiality and scienter.  (*Id.* at 12–18.)  Plaintiff then filed a second amended complaint, (Dkt. 59), which Defendants move to dismiss with prejudice for failure to state a claim, (Dkt. 66).  Plaintiff opposes the Motion. (Dkt. 68.)

## APPLICABLE STANDARDS

A claim brought under Rule 10b-5 must satisfy (1) the federal notice pleading requirements, (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b), and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (PSLRA).  *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).  Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the complaint contains sufficient factual allegations to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity.  *In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, 1138 (M.D. Fla. 2005).  A plaintiff satisfies Rule 9(b)'s particularity requirement for fraud when the complaint sets forth "(1) precisely what documents or oral representations were made," "(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same," "(3) the content of such statements and the manner in which they misled the plaintiff," and "(4) what the defendants obtained as a consequence of the fraud."  *Id.* (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).  "A sufficient level of factual support for a [Rule 10b-5] claim may be found where the circumstances of the fraud are pled in detail.  This means the who, what, when[,] where, and how: the first paragraph of any newspaper story."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quotation omitted).

Additionally, the PSLRA, codified at 15 U.S.C. § 78u-4(b), further heightens the pleading burden by requiring that the complaint contain: (1) factual specificity as to the alleged material misleading or omitted statements and (2) particular facts raising

a "strong inference" that a defendant acted with "the required state of mind."  15 U.S.C. § 78u-4(b)(1)–(2).  Failure to meet either of these provisions mandates the dismissal of the complaint on the motion of any defendant.  15 U.S.C. § 78u-4(b)(3)(A).

## ANALYSIS

Plaintiff alleges Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 by "knowingly or recklessly" "making . . . false and misleading statements . . . concerning Luminar's PIC [chip]."  (Dkt. 59 ¶¶ 138–50.)  Plaintiff also alleges that Defendants McAuliffe, Russell, and Eichenholz violated § 20(a) of the Exchange Act, (*id.* ¶¶ 151–60), which "provides for joint and several liability for 'control persons' once a plaintiff has demonstrated a § 10(b) violation." *FindWhat Inv. Grp.*, 658 F.3d at 1294 n.9.  Thus, the success of this latter claim depends upon the success of the former.  *Id.* ("[N]o § 20(a) claim can lie without first establishing a successful § 10(b) claim.").  To state a claim under § 10(b) and Rule 10b–5, a plaintiff must allege

> (1) a material misrepresentation or omission[,] (2) made with scienter[,] (3) a connection with the purchase or sale of a security[,] (4) reliance on the misstatement or omission[,] (5) economic loss [i.e., damages][,] and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

*Id.* at 1295.

In their Motion, Defendants argue that Plaintiff fails to adequately allege the first two elements, a material misrepresentation or omission, (Dkt. 66 at 10–15), and

scienter, (*id.* at 15–23).  The central issue is whether Defendants' use of an image of

Lidwave's PIC chip—which allegedly appeared to be "much more sophisticated" than

the image of Luminar's own PIC chip—without a specific reference to the picture or

an explicit statement that the image represented one of Luminar's products, satisfies

these elements.  (*Id.* at 1–2; Dkt. 68 at 1–2.)

### A. Materiality

The court previously found that neither Defendants' statements nor their use of

the image of Lidwave's PIC chip in their February 28, 2023 presentation were

material.  (Dkt. 55 at 11 n.5, 12–15.)  With regard to Defendants' statements, this was

partially because Plaintiff buried them in block quotes, which "le[ft] the court

speculating concerning which parts of the statements 'Plaintiff challenges and why.'"

(*Id.* (quoting *Hattaway v. Apyx Med. Corp.*, 8:22-cv-1298-WFJ-SPF, 2023 WL 4030465,

at *7 (M.D. Fla. June 15, 2023)).)  Moreover, "none of the identified written and oral

statements mentions the PIC chip, nor does Plaintiff identify any PIC chip capabilities

conveyed to investors,  either through Defendants' statements or otherwise, that

Luminar's product does not have."  (*Id.* (citing *Meide v. Pulse Evolution Corp.*, 3:18-cv-

1037-J-34MCR, 2020 WL 5350325, at *15 (M.D. Fla. Sept. 4, 2020) (noting that a

plaintiff must allege with particularity "fact showing that [the challenged] statements

were actually false or misleading at the time they were made")).)  Other statements,

the court determined, were simply nonactionable puffery.  (*Id.* (citing *Carvelli v. Ocwen

Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) ("Excessively vague, generalized, and

optimistic comments—the sorts of statements that constitute puffery—aren't those that

a 'reasonable investor,' exercising due care, would view as moving the investment-decision needle—that is, they're not material."))    The most serious problem for Plaintiff, however, was that, for the statements to be materially misleading, the use of Lidwave's PIC chip must have been so, too—but the court found that Defendants' use of the graphic depicting Lidwave's PIC chip was not material.    (*Id.* at 12–15.) Nevertheless, Plaintiff still maintains this central assumption.    (*See, e.g.*, Dkt. 68 at 10.) The court again determines that Defendants' use of Lidwave's PIC chip was not material.    For this reason and others discussed below, the court also determines that Defendants' statements were not material.

A material misleading or omitted statement is "any untrue statement of a material fact" or "[failure] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).    A misrepresentation or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *S.E.C. v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (internal quotation omitted).

The court previously determined that Luminar's use of Lidwave's PIC chip in its presentation misled investors into believing the graphic depicted Luminar's PIC chip.  (Dkt. 55 at 12–13.)  However, this "misleading graphic was immaterial in this particular context because it does not convey anything about the capabilities of

Luminar's product." (*Id.* at 13.) Central to the court's reasoning was Plaintiff's failure to "explain what 'sophisticat[ion]' or 'function' the graphic conveyed that Luminar's chip lacks (or how it did so)." (*Id.* at 14; *see also id.* ("Plaintiff leaves unexplained *how* the small, professional-looking graphic on a single slide communicated to investors any impression regarding the quality, capabilities, or 'sophisticat[ion]' of Lidwave's chip that Luminar tried to pass off.").) To be sure, Plaintiff attempts to make this showing—he alleges that, "[a]ccording to Lidwave, its Finite Coherent Ranging architecture," which is its "core technology" that "allows it to integrate all optical parts at the chip level," is demonstrated by the image of Lidwave's PIC chip that Defendants appropriated:



(Dkt. 59 ¶ 73.) In what manner this image conveys the sophistication Lidwave claims its PIC chip possesses remains, however, unclear, and so the court must reiterate that "there is insufficient factual support for the idea Defendants . . . sought to pass off Lidwave's capabilities or degree of sophistication." (Dkt. 55 at 15.)

For allegations of a misrepresentation to survive the rigorous standards imposed upon claims of securities fraud, the alleged misrepresentation must "be considered

significant to the trading decision of a reasonable investor." *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988). "It is not enough that a statement is false or incomplete[] if the misrepresented fact is otherwise insignificant." *Id.* at 238. Plaintiff argues that the graphic of Lidwave's PIC chip conveyed capabilities that Luminar's PIC chip lacked, thereby misleading investors into believing that Luminar's PIC chip was more siliconized and scalable than was true. (Dkt. 68 at 2, 7–8.) According to Plaintiff, "advanced PICs integrate multiple functions in one small chip, often using silicon, rather than bulky wired circuits," (Dkt. 68 at 7; Dkt. 59 ¶¶ 15, 51–54), and the challenged image demonstrates Lidwave's PIC chip's advanced ability to integrate multiple functions in this way. (Dkt. 68 at 7; Dkt. 59 ¶¶ 73, 75.)

As the court previously determined, however, a "reasonable investor would not believe a graphic on an investor presentation would depict a company's trade secret chip architecture, and Plaintiff's assertion otherwise is unpersuasive." (Dkt. 55 at 14.) Plaintiff's conclusory allegation that Luminar's PIC chip is "obviously far less sophisticated in design and function" than Lidwave's, (Dkt. 59 ¶ 92), fails to provide the "factual specificity" required to satisfy the PSLRA's rigorous pleading standards, because Plaintiff has not shown that reasonable investors, "in the exercise of due care," would have been misled by Luminar's use of the challenged image. *FindWhat Inv. Grp.*, 658 F.3d at 1305. "Plaintiff provides no basis to believe a reasonable investor would have been affected if Luminar had placed the photograph of its PIC chip on the presentation slide initially." (Dkt. 55 at 15 (citing *Basic*, 485 U.S. at 236–38)); *compare In re Recoton*, 358 F. Supp. 2d at 1141 (determining that the plaintiffs had satisfied the

PSLRA's pleading standard where "[t]he Complaint set[] forth in detail the statements alleged to be false, when the statements were made, who made the statements, why the statements were false, and what the [d]efendants stood to gain in making the statements"), *with Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 827 (S.D. Tex. 2014) (determining that the plaintiffs had failed to allege that statements in the defendant corporation's Form 10-K were materially misleading where they provided no "allegations of fact capable of proving that" the defendant corporation's product could not achieve the results it claimed).    Allegations that the materiality of a misrepresentation is obvious fall short of the PSLRA's pleading requirements.  *See* 15 U.S.C. § 78u-4(b)(1) ("[T]he complaint shall specify each statement alleged to have been misleading, [and] *the reason or reasons why the statements is misleading . . . .*" (emphasis added)).  "For that reason, the misleading image was not material, and there[fore] not actionable." (Dkt. 55 at 15.)[5]

With regard to Defendants' statements, Plaintiff claims to have cured the deficiencies identified by the court in its order dismissing his amended complaint. First, he has bolded and italicized the specific language from McAuliffe's statements

---

[5] Plaintiff also cites an SEC filing in which Luminar acknowledged that at the end of 2021 it had not "achieved technological feasibility," as well as the market's reaction to the Forbes article, to support his assertion that the use of Lidwave's PIC chip image was materially misleading.  (Dkt. 68 at 6, 8, 17; Dkt. 59 ¶¶ 3, 31–32; Dkt. 59-1 at 7.)  However, Luminar admitted that it had not achieved technological feasibility before it acquired Freedom Photonics—the organization that created the PIC chip pictured in the image Luminar replaced Lidwave's graphic with.  (Dkt. 59 ¶¶ 56, 102–03.) Further, as explained when the court granted Defendants' first motion to dismiss, "Plaintiff does not sufficiently allege that the stock price . . . fell because the replacement picture of Luminar's own product corrected some false impression left on investors by Lidwave's graphic, rather than other reasons such as costs associated with defending against its rival's threat of legal action." (Dkt. 55 at 17.)

made during the presentation that he claims are actionable.  (*See* Dkt. 59 ¶ 86.)[6]  This

includes the following: "We[ are] shifting gears to take what has been a sub-scale

industry, sub-scale ecosystem, and industrializing that at scale.  And we need to do

that . . . both for the economics and for size, weight, and cost, in order to deliver

[LiDAR]s at millions of units."  (*Id.* (emphasis omitted).)  However, Plaintiff alleges

no facts rendering these statements false or misleading—he does not, for example,

plead that Luminar is not "shifting gears," nor attempting to "deliver [LiDAR]s at

millions of units."  (*See* Dkt. 59); *Meide*, 2020 WL 5350325, at *15 ("[Defendant] fails

to allege with particularity any facts showing that these statements were actually false

or misleading at the time they were made." (emphasis omitted)).  Indeed, these

statements appear sufficiently "vague, generalized, and optimistic" so as to fall

squarely within the definition of puffery.  *See Carvelli*, 934 F.3d at 1320.

Plaintiff also challenges McAuliffe's emphasis that Luminar was focused on

"siliconization" and "scalability," (Dkt. 59 ¶ 86), arguing that this constituted a

material misrepresentation because the statements "were necessarily about the PIC

image," (Dkt. 68 at 9).  That is, Plaintiff asserts that the graphic of Lidwave's PIC chip,

in conjunction with McAuliffe's statements, misled investors by claiming that

---

[6] Plaintiff failed, however, to amend his complaint so as to indicate which statements he challenges in
a separate set of block quotes.  (Dkt. 59 ¶ 89.)  Accordingly, the court is once again left speculating
which of these statements Plaintiff challenges and why he challenges them, and accordingly finds that
they are not actionable.  (*See* Dkt. 55 at 11 n.5 (quoting *Hattaway*, 2023 WL 4030465, at *7, and
*Theodore v. Purecycle Techs., Inc.*, 6:21-cv-809-PGB-GJK, 2022 WL 20157415, at *3 (M.D. Fla. Aug. 4,
2022) ("Given the Complaint fails to 'precisely [plead] what statements or omissions were made in
which documents or oral representations' with its excessive block quoting and its intermittent incorrect
identification of where statements were made, it fails to meet the standard of Rule 9(b) as required for
a securities fraud claim and must be dismissed without prejudice.")).)

Luminar's PIC chip was "advanced and 'siliconized'" such that Luminar could

presently achieve the scalability McAuliffe described.  (*Id.* at 9–10.)  The court

disagrees.  As the court has already determined, "none of the identified written and

oral statements mention the PIC chip, nor does Plaintiff identify any PIC chip

capabilities conveyed to investors that Luminar's product does not have."  (Dkt. 55 at

11 n.5 (citing *Meide*, 2020 WL 5350325, at *15).)  The statements do not describe the

PIC chip depicted on the slide but rather Luminar's broader ambitions—they refer to

Luminar's goals rather than its accomplishments.

> [T]he other key advantage of siliconization is this: people
> think that . . . the biggest advantage is you control your own
> supply chain, that[ is] true. You can control the quality,
> that[ is] true. You can control the performance, that[ is]
> true. But the biggest advantage of siliconization in general,
> is you can take a lot of complexity and cost out of the
> product.  Complexity in cabling.  Complexity in optics.
> Complexity in electromechanical.  So anything you can put
> in silicon, you can put in silicon.
>
> And I think we can see from other industry leaders like big
> fruit companies, that owning that stack, and internalizing,
> and siliconizing anything that you can[] delivers elegant
> architecture, breakthrough performance, and breakthrough
> economics.

(Dkt. 59 ¶ 86); *see Bellocco v. Curd*, No. 802CV1141T27TBM, 2005 WL 2675022, at *2

(M.D. Fla. Oct. 20, 2005) ("Statements classified as 'corporate optimism' or 'mere

puffing' are typically forward-looking statements, or [are generalized statements of

optimism that are not capable of objective] verification.  Vague, optimistic statements

are not actionable because reasonable investors do no[t] rely on them in making

investment decisions." (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119–20 (10th

Cir. 1997)); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) ("The importance of integration to [the defendants] and its investors does not . . . mean that everything defendants said on the topic was material . . . . [B]road claims by defendants regarding integration efforts and the customer experience overall are . . . non[]actionable.").

Plaintiff also challenges various statements made during the presentation. (*See* Dkt. 59 ¶ 88.) These include statements that "Luminar's strategy to bring these advanced receiver, laser[,] and processing chip technologies in-house has enabled its unmatched [LiDAR] performance while further securing and industrializing the [LiDAR] supply chain" and that Luminar was "not only leading in this new era, but also successfully executing [its] plans across hardware, software, industrialization, commercial partnerships, and beyond," and that the "year [wa]s already off to [a] strong start." (*Id.*) These statements, too, are nothing more than nonactionable puffery. *See Carvelli*, 934 F.3d at 1320 ("To say that a statement is mere puffing is, in essence, to say that it is immaterial, either because it is so exaggerated ('You cannot lose.') or so vague ('This bond is marvelous.') that a reasonable investor would not rely on it in considering the total mix of available information." (cleaned up)). Consequently, the statements Plaintiff challenges are not actionable.

## B. Scienter

Even if Plaintiff could properly allege that the use of Lidwave's image of its PIC chip or Defendants' statements in connection with the presentation were material, he fails to adequately plead that Defendants acted with scienter. To properly plead

scienter—the PSLRA's "required state of mind"—the Eleventh Circuit demands the plaintiff demonstrate that the defendant had an "intent to deceive, manipulate or defraud," or that the defendant "acted with a severely reckless state of mind." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282–83 (11th Cir. 1999). Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve . . . an extreme departure from the standards of ordinary care," and which "present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 1282 n.18 (quotation omitted). "Simple or even inexcusable negligence" is not enough. *Id.*

Moreover, the Supreme Court holds that since "[t]he strength of an inference cannot be decided in a vacuum" but is "inherently comparative," a court must engage in a comparative evaluation in determining whether a strong inference of scienter has been pled. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007). A "strong inference" is one that is "cogent and compelling, thus strong in light of other explanations." *Id.* at 324; *see also id.* ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."). District courts weigh the alleged inferences through a three-step process: (1) accepting all factual allegations as true, (2) "holistically" evaluating the complaint in its entirety, as well as other sources courts ordinarily examine like "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," to determine whether all of the facts give rise to a strong inference of scienter, and (3) taking into

account plausible opposing inferences of non-fraudulent intent. *Id.* at 322–23, 326.

Thus, Plaintiff must show that Defendants were at least severely reckless in not knowing about the picture's inclusion on the slide. *See Bryant*, 187 F.3d at 1283. Plaintiff may sufficiently allege such recklessness by providing evidence that Defendants possessed knowledge of facts or access to information contradicting their public statements so as to show that Defendants knew or should have known that they were misrepresenting material facts related to the corporation. *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1360 (N.D. Ga. 2010); *see also In re Pegasus Wireless Corp. Sec. Litig.*, 657 F. Supp. 2d 1320, 1327–28 (S.D. Fla. 2009) (noting that plaintiffs can allege severe recklessness in a non-disclosure setting by showing the defendant knew "of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors").

Plaintiff contends that including an image of a competitor's PIC chip instead of an image of Luminar's own PIC chip was obviously material such that it rises to the level of severe recklessness. (Dkt. 68 at 13–14.) As the court explained, however, the inclusion of Lidwave's PIC chip on the presentation slide was not materially misleading. Moreover, Defendants maintain that even if including Lidwave's PIC chip in the presentation slide was material, Plaintiff fails to allege support that the Defendants were responsible for including the image of Lidwave's chip. (Dkt. 66 at 17.) In response, Plaintiff argues that because McAuliffe presented the slide he is considered "its 'maker' for purposes of §10(b) liability." (Dkt. 59 ¶ 87; Dkt. 68 at 14);

*Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 143 (2011) ("Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said."). However, Plaintiff does not allege that McAuliffe referenced the graphic depicting Lidwave's PIC chip or otherwise drew attention to it during the presentation. (*See* Dkt. 59 ¶¶ 86–87). Rather, Plaintiff argues that McAuliffe's "statements about siliconization and scaling were necessarily about the" image because "the key to 'industrializing at scale' and making [LiDAR] smaller in 'size, weight, and cost' is manufacturing sufficiently advanced PICs." (Dkt. 68 at 9.) However, "[o]ne 'makes' a statement by stating it," *Janus*, 564 U.S. at 142, not by implying it. *See id.* ("The phrase at issue in Rule 10b-5, '[t]o make any . . . statement,' is thus the approximate equivalent of 'to state.'"). Plaintiff's argument that McAuliffe intended to convey misleading information regarding Luminar's PIC chip, absent an express reference to the image of Lidwave's PIC chip during the presentation or any facts directly connecting McAuliffe to the inclusion of the image in the slide, fails to satisfy the PSLRA's pleading standard. *See Theodore v. Purecycle Techs., Inc.*, No. 6:21-cv-809-PGB-GJK, 2022 WL 20157415, at *15 (M.D. Fla. Aug. 4, 2022) ("Plaintiffs are attempting to show scienter for each . . . [d]efendant by citing to inference upon inference without identifying any specific facts that support the inference. These conclusory allegations are exactly what the PSLRA's pleading standard for scienter is designed to avoid.").

Likewise, Plaintiff fails to offer facts that demonstrate McAuliffe had ultimate authority over the presentation. (*See* Dkt. 68 at 14 ("[I]t can be inferred that McAuliffe prepared, or directed the preparation, of the slide" because "[h]e was responsible for presenting it, and as [Luminar Semiconductor's] CEO, was necessarily involved in preparing the presentation regarding this new entity to the market.")); *Janus*, 564 U.S. at 142 ("For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). As this court previously held, "simply claiming the named executives must have known and signed off on [the slide] by nature of their positions with the company . . . is typically insufficient to establish scienter." (Dkt. 55 at 17 (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) (affirming a district court's finding that the plaintiff failed to plead "a cogent and compelling inference of scienter" where "there [wa]s no information about who wrote [an allegedly fraudulent operating plan] or who received it")).) Plaintiff's attempt to rely on McAuliffe's role, his statements at the presentation, and his purported access to the image of Luminar's own PIC chip (*see, e.g.*, Dkt. 59 ¶ 105 ("As the CEO of Luminar Semiconductor . . . it was McAuliffe's responsibility to be familiar with Luminar's PIC [chip]. Thus, he would have known that the PIC [chip] featured in the slide did not belong to Luminar.")) is unpersuasive because the PSLRA requires factual particularity when pleading a strong inference of scienter, and "claims of securities fraud cannot rest on speculation and conclusory allegations." *Garfield*, 466 F.3d at 1265 (quotation omitted). Plaintiff's allegations fail to meet this standard. *See Brophy*

*v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1304–05 (11th Cir. 2015) ("The investors would have us rely solely on [the executive defendant]'s position as CFO to overlook these omissions and ambiguities in the complaint . . . . Without more particularized allegations, the investors' claim that [the corporate defendant]'s fraud was too large for [the executive defendant] not to have noticed is unpersuasive."); *see also Dawes v. Imperial Sugar Co.*, 975 F. Supp. 666, 699 (S.D. Tex. 2013) (explaining that while the plaintiff adequately alleged the individual defendant's "general knowledge of Imperial's refined-sugar purchases," a strong inference of scienter requires "detailed or specific knowledge").

Plaintiff's arguments that Eichenholz and Russell possessed the requisite scienter are similarly unavailing. Plaintiff claims that Eichenholz's and Russell's statuses as high-level executives of Luminar demonstrates scienter—though, as the court has already noted, such arguments are generally unpersuasive. *See Brophy*, 781 F.3d at 1304–05. While Plaintiff attempts to bolster his allegations with a selection of the pair's public statements, (*see, e.g.*, Dkt. 59 ¶ 56; *see also* Dkt. 68 at 16), these statements show only that Russell and Eichenholz had familiarity with Luminar's PIC chip, but it does not follow from this that they had any knowledge that Lidwave's PIC chip was displayed in the presentation. *See In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1325 (M.D. Fla. 2002) ("[P]laintiffs' allegations are devoid of any suggestion that [the CFOs] had actual knowledge or were directly informed of the . . . violations.").

Regardless, it is clear after engaging in the required comparative analysis that the innocent explanation remains more compelling. *See Tellabs*, 551 U.S at 323–24 ("To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 309. In the absence of allegations as to who is responsible for assembling the presentation, it is more likely that a lower-level employee included the image of Lidwave's PIC chip on his or her own initiative rather than at the direction of McAuliffe, in an effort to artificially inflate the stock price—as the court has already found. (*See* Dkt. 55 at 17.) This theory is bastioned by the simplicity of the alleged fraud, because inclusion of the graphic of Lidwave's PIC chip could be accomplished without the involvement of any senior Luminar officials. *Mizzaro*, 544 F.3d at 1250 ("[T]he fact that [the fraud] could be completed without the involvement of any upper management officials tend to undermine the inference that it must have originated with senior Home Depot officials, rather than with store-level employees.").

The second amended complaint alleges generally that Defendants were motivated by a desire to raise capital. (*See, e.g.*, Dkt. 59 ¶¶ 26–27.) However, "generic allegations that defendants were motivated to raise capital for the company . . . are unavailing. If such allegations were sufficient to demonstrate scienter, every executive

and corporation would be exposed to liability." *In re CP Ships Ltd., Sec. Litig.*, 506 F. Supp. 2d 1161, 1169 (M.D. Fla. 2007); *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 272 (D. Mass. 2013) (reasoning that "[s]uch a generalized motive could apply to any corporate executive at any company anywhere in the United States [and] therefore cannot give rise to a strong inference of scienter"). At least one district court has determined that "there should be a negative inference regarding scienter as a result of the plaintiff's unsuccessful attempt to demonstrate motive." *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1250 (M.D. Fla. 2002).

"[T]he Supreme Court has unambiguously explained . . . that the 'strong inference' requirement, though not insurmountable, is difficult to meet—the inference must be cogent and at least as compelling as any opposing inference." *Mizzaro*, 544 F.3d at 1257. Based on a holistic review of Plaintiff's allegations and the exhibits provided, there is no indication Defendants used Lidwave's graphic "because it understood [the picture of its own chip's] likely effect on the market." *See Matrixx*, 563 U.S. at 49. The court is thus "constrained to conclude that the allegations in the [second] amended complaint do not pass Congress's stringent test," *Mizzaro*, 544 F.3d at 1257, and thus, the complaint must be dismissed.

## C. Futility

Defendants move to dismiss the second amended complaint with prejudice, arguing that "a more carefully drafted complaint could not state a claim under the heightened pleading standards of the PSLRA." (Dkt. 66 at 23 (quoting *In re*

*Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1174 (M.D. Fla. 2004)).  Leave to amend, however, should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Accordingly, absent a reason not to grant leave to amend "such as . . . repeated failure to cure deficiencies by amendments previously allowed . . . futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Rule 15(a)(2) severely restricts a district court's ability to dismiss with prejudice.  Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action without prejudice."  *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (cleaned up).

While Plaintiff has already been given one chance to amend his complaint, given the liberal standard imposed by Rule 15(a)(2), the court will afford Plaintiff one more opportunity to amend his complaint.  *See Santana-Benchettab v. Bank of Am., N.A.*, No. 8:19-cv-1764-T-35AEP, 2020 WL 13389327, at *3 (M.D. Fla. Apr. 24, 2020) ("Rule 15(a)'s liberal policy of permitting amendments to facilitate determining of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." (quotation omitted)).  The court notes, however, that failure to address the deficiencies highlighted in this Order may result in dismissal of Plaintiff's claims with prejudice.  *See Forman*, 371 U.S. at 182; *In re Sunstar Sec. Healthcare Litig.*, 173. F. Supp. 2d 1315, 1322 (M.D. Fla. 2001) ("Plaintiffs

have now had two opportunities to amend their Complaint to set forth a claim for securities fraud against the[] [d]efendants.  Although a trial court must ordinarily grant a plaintiff leave to amend where it appears that a more carefully drafted complaint might state a claim for relief, the [c]ourt finds that allowing [the p]laintiffs to file a Third Amended Complaint in this action would be futile."); *Acerra v. Trulieve Cannabis Corp.*, No. 4:20cv186-RJ-MJF, 2021 WL 6197088, at *3 (N.D. Fla. Dec. 30, 2021) (dismissing case with prejudice because "[t]he plaintiffs ha[d] been given two opportunities to amend and ha[d] not suggested they could allege anything more" and because "[t]hey surely included in the second amended complaint all pertinent facts they could properly allege").

## CONCLUSION

Accordingly:

1. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 66) is **GRANTED in part and DENIED in part**.

2. Defendants' request for the court to consider documents incorporated by reference (Dkt. 66 at 8) is **GRANTED**.

3. Plaintiff's Second Amended Complaint (Dkt. 59) is **DISMISSED without prejudice**.

4. On or before January 10, 2025, Plaintiff may file a third amended complaint consistent with this Order.  If he does, he shall fully comply with each of this Order's directives in order to avoid dismissal with prejudice.  Failure to

timely file a third amended complaint will result in the dismissal of this case with prejudice.

5.  The parties are **DIRECTED** to file a Case Management Report using the standard form on the court's website on or before January 17, 2025.

**ORDERED** in Orlando, Florida, on December 12, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record