IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| JOHN ALMS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LUMINAR TECHNOLOGIES, INC. and MIKE MCAULIFFE, <br><br> Defendants. | Case No.:  6:23-cv-982-JSS-LHP |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF MICHAEL LEBBY, PhD. AND REFERENCES THERETO IN THE THIRD AMENDED COMPLAINT**

Lead Plaintiff John Alms ("Plaintiff")[1] respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Strike Expert Report of Michael Lebby, Ph.D. ("Lebby Report" or "Report" or "Ex. 1") and References Thereto in the Third Amended Complaint (Dkt. 82) ("Motion to Strike" or "MTS").

**PRELIMINARY STATEMENT**

Defendants' Motion to Strike the Report of Michael Lebby, Ph.D.—who

---

[1]    All "¶" references are to the Third Amended Class Action Complaint ("TAC"), Dkt. 78. Unless otherwise noted, all capitalized terms mean the same as in the TAC and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss TAC, filed herewith, all emphasis is added, and all citations, internal quotation marks, and footnotes are omitted.

worked for 40 years in the fields of electronics and Photonic Integrated Circuits ("PIC") at companies including Motorola, Intel, Tyco Electronics, AT&T Bell, and as an entrepreneur and executive at other photonics companies—is entirely misplaced and should be rejected.

Contrary to Defendants' argument, the "great weight of authority" supports considering the Lebby Report and the TAC's allegations that incorporate his Report. *See, e.g., Mazzeo v. Nature's Bounty, Inc.*, 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015) (court considered expert's factual statements incorporated into the complaint). The Lebby Report supports and bolsters the TAC's allegations—that also stand on their own—with a non-speculative and fact-based analysis of the technical features and capabilities reflected in the images of the chips that are at issue in this case. His report includes a fact-based "Technical Overview" and a section with his factual conclusions titled "Technical Analysis." Defendants nowhere dispute the accuracy of Dr. Lebby's factual analysis and descriptions of the various images he reviewed. Only the very last paragraph of Dr. Lebby's Report is entitled "Expert Opinion," on which Defendants appear to rely to argue to strike the entirety of his Report.

Defendants argue that the Lebby Report cannot be considered because it is not a "written instrument" under Rule 10(c). MTS 4-5. However, as Defendants' own authority acknowledges, "there is no inflexible rule"

2

regarding the status of expert affidavits with pleadings and courts routinely consider an expert's non-speculative analysis, like the Lebby Report. *See, e.g., Mazzeo*, 2015 WL 1268271, at *3; *see also Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Mannkind Sec. Actions*, 835 F. Supp. 2d 797, 820-21 (C.D. Cal. 2011) (discussing *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220, 1221-22 (S.D. Cal. 2001)).

Dr. Lebby provided in his report a factual analysis of the image of the advanced Lidwave silicon photonics PIC chip that Luminar improperly held out as its own, and a factual analysis of an image of Luminar's actual chip, which is not a silicon photonics PIC chip at all, but rather a type of older-model tunable laser chip fabricated on an Indium Phosphide ("InP") wafer. Ex. 1 ¶29-35; ¶¶114-28. It is this factual analysis that supports a number of the TAC's independent factual allegations. Critically, the Lebby Report's analysis includes in-depth factual references to each chip's components, features, and capabilities. *Id.* The Lebby Report supports the TAC's allegations that knowledgeable investors would have been materially misled into believing that Luminar was having great success in "developing cutting edge PIC chips," when in fact it was not. ¶¶3-4, 20-23, 108-28; Ex. 1 ¶¶2, 4, 7, 12, 26, 29-33, 36.

Thus, Defendants' argument that the inclusion of Dr. Lebby's analysis would require the Court to engage in a complex evidentiary *Daubert* analysis under Federal Rule of Evidence ("FRE") 702 falls flat. MTS 6. At the motion

to dismiss ("MTD") stage, pleadings and the sources upon which their allegations rely are not subject to the same evidence standards as those omnipresent in summary judgment proceedings. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000); *see also Lugo v. Int'l Bhd. of Elec. Worker Local #134*, 2017 WL 1151019, at *9 (N.D. Ill. Mar. 28, 2017). In reviewing a MTD, a court must accept all well-pleaded allegations as true. *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993). Additionally, "all reasonable inferences drawn from those facts are taken as true." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), *overturned on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

At bottom, the Lebby Report and the TAC's well-pled factual allegations that are independent of, yet fully supported by it, buttress the basis for Plaintiff's falsity and materiality allegations and correct all of the deficiencies the Court noted about the Second Amended Complaint. Both the Report and the related new allegations in the TAC meet all of the requirements for inclusion under Federal Rules of Civil Procedure ("Rules") 10(c) 12(f), and FRE 702 and should be considered by the Court when ruling on Defendants' MTD.

## STANDARD

Courts in the Eleventh Circuit view motions to strike as a drastic and disfavored remedy and sparingly use their discretion to grant them. *See*

4

*TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010); *FTC v. Alcoholism Cure Corp.*, 2010 WL 4840046, at *2 (M.D. Fla. Nov. 23, 2010).  A court will exercise this limited discretion under Rule 12(f) only where the material sought to be introduced is "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P. 12(f).  Matter is "immaterial or impertinent" under Rule 12(f) if it is irrelevant to the resolution of the legal issues in the case.  *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004).

Thus, in order for a court to grant a motion to strike, it must meet this "exceedingly high standard[.]" *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999); *U.S. ex rel. Chabot v. MLU Servs., Inc.,* 544 F. Supp. 2d 1326, 1330 (M.D. Fla. 2008).

## ARGUMENT

### I.    THE COURT MAY PROPERLY CONSIDER THE LEBBY REPORT IN PLAINTIFF'S TAC

#### A.    The Lebby Report Reflects Dr. Lebby's Factual And Non-Conclusory Analysis Of Technical Capabilities, The Accuracy Of Which Defendants Do Not Dispute

Defendants argue that the Lebby Report does not meet the technical requirement of Rule 10(c) as a "written instrument[.]" MTS 4.  But Rule 10(c) does not prescribe an "inflexible rule governing the sort of written instruments that may be attached to a pleading." *Mannkind*, 835 F. Supp. 2d at 820-21. The 16-page Lebby Report constitutes a highly relevant, factual and non-

5

conclusory expert analysis that "merely . . . buttresses [p]laintiffs' contentions . . . upon which [p]laintiffs' complaint rests." *Id.* at 821; *see also Sanchez v. Bay Area Rapid Transit Dist.*, 2013 WL 4764485, at \*9 (N.D. Cal. Sept. 5, 2013).[2]

In *Jiaxing Super Lighting Electric Appliance Co., Ltd. v. Bruggeman*, the court allowed the plaintiffs to rely on their expert's affidavit in the complaint, and in doing so explained that "to the extent the allegations in the TAC reflect [the expert's] analysis, such allegations constitute non-conclusory assertions . . . which are properly considered in determining whether plaintiff has plausibly made out the elements of a . . . claim." 2023 WL 4628974, at \*4-5 (N.D. Cal. July 18, 2023).

Indeed, the Lebby Report is nothing like the expert opinions that offered legal opinions as substitutes for factual allegations in the cases cited by Defendants. For example, in *Niagara Distributors, Inc. v. Northern Insurance Co. of New York*, an expert affidavit was used to "bolster its punitive damages claim … instead of setting forth specific factual allegations in [its] [c]omplaint." 2011 WL 13096635, at \*2 (S.D. Fla. Jan. 8, 2011) (MTS 4-5). The same is true of *Yuan v. Facebook, Inc.*, where the plaintiff attached an opinion from an economist to opine on loss causation in a Section 10(b) case, clearly addressing a question of law and seeking to substitute the expert's opinion for factual

---

[2]     Defendants' authority, *Rose v. Bartle*, 871 F.2d 331, 336, 339-40 (3d Cir. 1989), is entirely inapposite because the court was addressing a non-expert affidavit of probable cause in a criminal case. MTS 5.

6

allegations required by the PSLRA.  2021 WL 4503105, at *2 (N.D. Cal. Sept. 30, 2021) (MTS 5).  In *In re Ashworth, Inc. Securities Litigation*, another case cited to by Defendants, the court struck an expert opinion offered to support an allegation that the timing of defendants' stock sales supported scienter. 2001 WL 37119391, at *3 (S.D. Cal. Nov. 29, 2001) (MTS 8).[3]

Moreover, a majority of the cases cited by Defendants refused to strike the factual and non-conclusory portions of the expert reports at issue.  *See, e.g., DepoTech*, 149 F. Supp. 2d at 1219-22 (court *refused to strike* the expert's factual allegations) (MTS 4-7); *Mazzeo*, 2015 WL 1268271, at *3 ("consider[ing] the expert's *factual* statements that are incorporated in the SAC") (MTS 4, 8); *Blackwell*, 440 F.3d at 285-86 ("refus[ing] to consider the expert's conclusions (opinions)" but considering the expert "affidavit's nonconclusory, factual portions") (MTS 4-5, 8); *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 455 (D. Md. 2019) (holding that "any factual allegations in the [SAC] that were derived from the expert reports . . . shall be accorded the consideration due to factual allegations") (MTS 4-5, 7); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F.

---

[3]    None of Defendants' remaining cases serve as a basis to disqualify the Lebby Report. In *City of Atlanta Police Officer' Pension Plan v. Celsius Holdings, Inc.*, the plaintiff failed to "attach an expert report" and did not "describe the expert's qualifications."  2023 WL 1998174, at *10 (S.D. Fla. Feb. 13, 2023), *report and recommendation adopted*, 2023 WL 2601816 (S.D. Fla. Mar. 22, 2023) (MTS 7).  Similarly, in *Meeks v. Murphy Auto Group, Inc.*, the court found that "while the affidavit may well contain relevant and admissible expert opinions" it was "based on **pure speculation** without sufficient factual basis."  2009 WL 3669638, at *1 (M.D. Fla. Oct. 30, 2009) (MTS 4).

Supp. 3d 199, 222 (S.D.N.Y. 2018) (declining to "consider any conclusory allegations in the SAC based on the Declaration" but "consider[ing the] well-pleaded factual allegations that cite to the Declaration") (MTS 4); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (holding that while "opinions cannot substitute for facts under the PSLRA," "it is permissible for a plaintiff to bolster a complaint by including a nonconclusory opinion to which an expert may potentially testify") (MTS 7).[4]

Here, the TAC alleges—independently of Dr. Lebby's analysis—the advantages of PIC chips, that the image of the Lidwave PIC chip showed features that were technologically more advanced than the chip depicted in the image Luminar later substituted for its own (¶37, 53), including:

- "Indeed, currently the biggest obstacle holding back large-scale production of lidar for use in vehicles is the cost of assembling such complex components with extreme precision. Scaling the production of the devices remains a challenge for manufacturers, and therefore, integrating as many functions into smaller, more advanced PIC chips was important in the advancement of the technology and lowering costs of production. It would be well understood by investors that advances in the state of design of Luminar's PICs to make them more powerful and to integrate more functions (not unlike what Intel Corp. has done with its processors for home computers) would be critical to the success of the Company" (¶60);

- "As one analyst report put it, Freedom Photonics, Black Forest Engineering, and Optogration were merged to 'enhance [Luminar's] supply chain capabilities' and provide semiconductor products to a wider market. Indeed, Luminar Semiconductor was created 'in an effort to industrialize Luminar's photonics and optoelectronics based technologies to cater to opportunities in Datacom/Telecom, Aerospace, Precision Manufacturing

---

[4]     Even if the Court were to interpret any portions of the Lebby Report as "conclusory allegations" or "speculative" opinions, the clear weight of authority does not warrant striking the ***entire report*** as Defendants request, only those portions.

and Life Sciences together making a TAM [total addressable market] of over $50 bn.'" (¶68);

- "LiDAR-on-a-chip solves problems posted by traditional lidar devices, which are expensive, bulky, contain moving parts, and are difficult for commercialization. LiDAR-on-a-chip integrates all the optical components necessary for lidar (i.e., it uses integrated photonics) onto a single photonic chip, allowing for faster production at a lower cost per chip." (¶74);

- "According to Lidwave, its Finite Coherent Ranging architecture—its core technology—allows it to integrate all optical parts at the chip level, which is what is demonstrated in the picture below (Figure 1) of the Lidwave PIC:"



(¶75);

- "The slide presented while McAuliffe was speaking was entitled 'Common Platforms that Drive Scale' and appeared as follows:"



(¶93);

- "The slide featuring the pilfered PIC in ¶93 above was materially false and misleading when made for two reasons. First, the statements omitted the fact that the PIC featured did not belong to Luminar, and that in reality, Luminar did not have a PIC at all, but only a chip far less sophisticated in design and function than that pictured. As opposed to the Lidwave chip, the Luminar chip was neither readily scalable nor siliconized, which was inconsistent with the narrations from McAuliffe. Their narrations were clearly intended for the Lidwave chip, to which Luminar had no rights, but wanted to give the misleading impression that they did. Second, Luminar failed to disclose that it relied on a false image of its core technology. That would have been obviously erroneous to McAuliffe who would have been tracking developments in this core operation of the company. Third, Luminar failed to disclose that if the truth were to be revealed, as it was, that revelation would impugn the company's credibility and subject it to the risk of legal and/or regulatory action. All of this undisclosed information would foreseeably cause harm to investors and a drop in stock price if and when it was revealed." (¶95);

- "In reality, the chip developed and manufactured by Luminar Semiconductor was obviously far less sophisticated in design and function with respect to the key areas McAuliffe was touting to the market: siliconization and scalability. By picturing Lidwave's PIC without properly attributing the product to Lidwave, and withholding the image of their own chip, Defendants appeared to want to cover up the appearance that their

10

chip was less siliconized and less scaleable and potentially other Luminar products were less scalable than they had been represented to be. Things were not as they seemed and Luminar intentionally misrepresented those things." (¶96);

- "On Sunday, March 19, 2023, the *Forbes* Article was updated to add that after being contacted by Forbes, a Luminar spokesperson stated that: "We have removed and replaced that image with an image of a new Luminar Semiconductor **photonics integrated circuit**[.] The revised presentation was pictured in the article and shows the replaced image of Luminar's PIC on the far-right hand side of the slide"(emphasis added) "



(¶100).

- "Notably, this chip is not a silicon PIC, and is from a publicly available . . . brochure from 2019 [produced by a company that was acquired by Luminar, Freedom Photonics]—years before Luminar Investor Day." (¶102);

- "Second, two of the images on the slide containing the misappropriated photo (Chip die level and OptoElectronic Engines) appear to have also come from a 2019 document created by Luminar Semiconductor's own Freedom Photonics:

Luminar's Slide:



Freedom Photonics Document:"



(¶132);

- **"This same Freedom Photonics document featured the chip that Luminar used to replace the picture of Lidwave's PIC:"**



(¶133).

This is critical—the TAC contains detailed allegations that Luminar substituted out the Lidwave PIC chip with an image of Luminar's actual chip (acquired in the Freedom Photonics acquisition) that Freedom Photonics had clearly identified as a "tunable WDM transmitter"—not a photonics PIC chip— even though Defendants continued to falsely call it a "photonic integrated circuit." **Dr. Lebby also independently concluded that the substituted image was not a photonic circuit but rather a tunable WDM transmitter**.

The relevant portions of the Lebby Report have been appropriately incorporated into the TAC to buttress the basis of Plaintiff's falsity and materiality allegations (including the following) and is exactly like the portions of the expert reports the courts considered in the numerous cases cited *supra*:

13

- This [the image of the Lidwave chip] is a classic silicon photonics PIC chip known by persons of skill in the art of photonics industry. Ex. 1 ¶31 (last sentence);

- The optical chip in Figure 2 [the Lidwave chip] is an advance design, showing the potential of silicon photonics to be able to handle 16 optical signals, and be able to process those signals that are sourced from an ASIC chip. *Id.* ¶32;

- The SEM image in Figure 3 [the Luminar chip] depicts a chip that has 28 electrical wire bonds and very much looks like a tunable laser chip fabricated on an Indium Phosphide (InP) wafer. This chip contains no evidence of being silicon and no evidence of having 16 parallel optical channels. *Id.* ¶33;

- There is no evidence in Figure 3 [Luminar's chip image] that this InP chip is a silicon photonics chip. An InP tunable laser chip is definitely not a silicon photonics PIC chip at all, and there is no visible evidence that this chip is capable of handling 16 channels of light that would be received from an ASIC chip. *Id.* ¶34.

The statements above by Dr. Lebby are non-speculative and non-conclusory based on facts gathered through the expert's visual and technical analysis of: (1) the image of the PIC chip Defendants illicitly held out as their own; (2) the image of Luminar's actual chip; and (3) four slides from a technical presentation on InP technology. Below is the image from the Lebby Report of a chip on another tunable InP laser:



Image taken from Lebby Report (Ex. 1) on page 16.

The similarities between this and the image below of the chip image Luminar was forced to substitute are readily apparent.

(3) showing a SEM image (labeled Figure 2) by Luminar of a basic silicon chip with electrical wire bonds that is not connected to any fiber optics, and is not designed to have parallel capability.

Figure 2. The image of Luminar's PIC that was substituted for the misappropriated image of Lidwave's PIC after the deception by Luminar was exposed.

The TAC directly quotes the contents of the Lebby Report that describe the misappropriated image of Lidwave's PIC chip as "an electronic ASIC chip that is connected via 16 parallel fiber optic cables to an optics chip . . . . [representing] a ***silicon photonics PIC chip*** . . . . [that] conveys a typical 16

15

channel optical interconnect . . . . [enabling it] to connect those fiber optic cables in a way that the optical signals from those fiber optic cables are injected into the optical chip for optical processing" which "improv[es] signal integrity." ¶¶119-21; Ex. 1 ¶31. Accordingly, this image depicts a chip with "advanced design, showing the potential of silicon photonics to be able to handle 16 optical signals, and be able to process those signals that are sourced from ASIC chips . . . . using standard optical processing photonic components." ¶121; Ex. 1 ¶32.

The image of the Luminar tunable laser chip that was substituted was succinctly described by Dr. Lebby as, "a chip that has 28 electrical wire bonds… [resembling] a tunable laser chip fabricated on an Indium Phosphide (InP) wafer [with] no evidence of being silicon… [or] of having 16 parallel optical channels." Ex. 1 ¶33; *see also* ¶¶28, 122-23. Because of these noted characteristics, the actual image of Luminar's PIC chip provides "no evidence that this chip is capable of handling 16 channels of light that would be received from an ASIC chip" and is therefore "clearly not [the advanced] silicon photonics PIC chip" that Luminar represented as its own at its investor day. ¶¶121, 124; Ex. 1 ¶33-34.

Courts in the Eleventh Circuit and other courts consistently consider experts' factual analysis like Dr. Lebby's analysis. *See Paschel Paul Bros. v. Saag*, 2014 WL 838890, at *6 (N.D. Ala. Mar. 4, 2014); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1210 (W.D. Wash. 2009);

16

*Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014), *abrogated on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

Thus, the inclusion of the Lebby Report as part of the TAC is perfectly in line with the Rules and case law.

### B.    FRE 702 Does Not Bar Consideration Of The Lebby Report

Defendants also move to strike the Lebby Report as raising "evidentiary" issues they claim are "not generally capable of resolution at the pleading stage" such as holding a *Daubert* hearing.  MTS 5-6.  Defendants' argument misses the mark—indeed, they have not even challenged the core technological analysis from Dr. Lebby—*i.e.*, that the actual Luminar chip that Defendants belatedly substituted for the Lidwave chip image is not a PIC chip.

First, *Daubert* is a rule for the admission of evidence to a trier of fact at later stages of litigation, not for a motion to dismiss.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 598-99 (1993).[5]  And, Dr. Lebby is more than qualified to offer his factual analysis of the chip images at issue here, the accuracy of which Defendants do not contest.

At the motion to dismiss stage, the Court must accept all well-pled

---

[5]    Defendants' cases on this point are inapposite as they addressed expert challenges at later stages of litigation.  *See, e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 576 (S.D.N.Y. 2017).

17

factual allegations in the complaint as true. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Pleadings are not required to conform to the standards of evidence, and securities class action complaints routinely rely on experts to supply and bolster factual allegations, none of which are subject to evidentiary rulings such as admissibility. *See, e.g., Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257-58 (5th Cir. 2005) (court held that it will not "conduct a battle of experts on a motion to dismiss," and that it "must assume the truth of the allegations pleaded with particularity in the complaint"); *In re Resonant Inc. Sec. Litig.*, 2016 WL 6571267, at *5 (C.D. Cal. July 11, 2016) ("[t]he Court assumes, under Federal Rule of Civil Procedure 12(b)(6), that the expert opinions referenced in the SAC are true").

The Lebby Report is no exception, with its properly incorporated factual and non-conclusory analysis about the differing levels of sophistication, integration and performance depicted in the chips' respective images. *In Re CommVault Sys., Inc. Sec. Litig.*, 2016 WL 5745100, at *4 (D.N.J. Sept. 30, 2016) (concluding that expert reports are "proper at the pleading stage").[6]

---

[6]    None of Defendants' authorities support excluding the Lebby Report under FRE 702. *See, e.g.*, *DepoTech*, 149 F. Supp. 2d at 1222 (court was required to confront evidentiary issues as to the "speculative" portions of expert report that contained legal conclusions ); *Blackwell*, 440 F.3d 278 at 286 (the portion of plaintiff's expert's report that provided legal "opinions/conclusions" would require the court to address complex evidentiary issues); *Chipotle*, 294 F. Supp. 3d at 224 ("evidentiary uncertainty" cited as hurdle to admitting the expert's legal opinion); *Meeks*, 2009 WL 3669638, at *1 (court addressed "the processes of challenging an expert's opinions" as set forth in "*Daubert*" because the report was "based on pure speculation without sufficient factual basis"); *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 2024 WL 873436, at *6 (S.D.N.Y. Feb. 29, 2024) (***no evidentiary issues*** identified

## II.    DR. LEBBY'S ANALYSIS IS PROPERLY INCORPORATED INTO THE TAC

Defendants' argument that the Court should also strike allegations from the TAC that cite to or "rely" on the Lebby Report is both misleading and unsupported and should be rejected out of hand.  MTS 8-9.

It is misleading to claim that the TAC relies on and cites to the Lebby Report.  As has been expressly approved by many courts, the TAC incorporates Dr. Lebby's analysis into the factual allegations—that is, his analysis is part and parcel of the TAC.  Under Defendants' own case law, his analysis is properly included in the TAC and should be considered by the Court.

None of the Defendants' case law supports the drastic relief they seek. For example, in *Mazzeo*, the court granted defendants' motion to strike the portions of the plaintiff's expert report that contained conclusory and speculative assertions ***but considered*** the portions of the complaint that contained the "expert's factual statements that [we]re incorporated into the [complaint]."  2015 WL 1268271, at *3; *see also Financial Acquisition Partners, LP v. Blackwell*, 2004 WL 2203253, at *5 (N.D. Tex. Sept. 29, 2004), *aff'd*, 440 F.3d 278 (5th Cir. 2006) (MTS 4); *Bros*, 2014 WL 838890, at *6 (granting plaintiff's motion to strike the opinions contained in an expert report but denying the portions seeking to strike factual statements and their references

_____

despite expert opinion about what defendants would have been aware of regarding the FDA approval process) (MTS 6 n.2).

19

in the complaint); *Ashworth,* 2001 WL 37119391, at *3 (finding the "legal conclusions" of an expert a proper subject of a motion to strike but finding "persuasive" the holding that "expert's nonconclusory assertions could be included within specific paragraphs of the complaint").[7]

Accordingly, the TAC allegations that incorporate the Lebby Report's factual technical analysis should not be stricken and should be considered by the Court when deciding Defendants' Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Strike in its entirety.

Dated:  March 17, 2025              Respectfully submitted,

                                   By: */s/ James M. Wilson, Jr.*
                                       James M. Wilson, Jr.

                                   James M. Wilson, Jr. (admitted pro hac vice)
                                   **FARUQI & FARUQI, LLP**
                                   685 Third Avenue, 26th Floor
                                   New York, NY 10017
                                   Telephone: 212-983-9330
                                   Facsimile: 212-983-9331

---

[7]      The only cases Defendants cite where the court completely disregarded the portions of a complaint that referenced an expert report were *Koehler v. Litehouse, Inc.* (MTS 8)*, Facebook*, and *Celsius Holdings*, the facts of which are inapposite.  In *Koehler*, the court struck the reference to an expert report because the entirety of the report was based on conclusory assertions and made "no statements of fact."  2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012).  In *Facebook*, the court declined to consider the paragraphs of a complaint that referenced an expert's report that exclusively contained speculative legal opinions.  2021 WL 4503105, at *2.  And, as set forth in n.3, *supra*, *Celsius Holdings* is similarly inapposite. 2023 WL 1998174, at *10.

Email: jwilson@faruqilaw.com

Robert W. Killorin (admitted pro hac vice)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE,
Building Four, Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Lead Counsel for Lead Plaintiff*


**SCHLESINGER LAW OFFICES, P.A.**
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:
Jonathan@schlesingerlawoffices.com
JHaberman@schlesingerlawoffices.com

*Liaison Counsel for Lead Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.