IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOHN ALMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>LUMINAR TECHNOLOGIES, INC., and MIKE MCAULIFFE,<br><br>Defendants. | Case No.: 6:23-cv-982-JSS-LHP |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff John Alms ("Plaintiff"), on behalf of himself and the proposed Settlement Class,[1] respectfully moves for preliminary approval of the proposed Settlement. This motion is supported by the memorandum of law herein, the Stipulation, and the exhibits thereto submitted herewith.

## I. SUMMARY OF RELIEF REQUESTED AND BASIS THEREFOR

The proposed Settlement resulted from arm's-length negotiations

[1] All capitalized terms unless otherwise defined have the same meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation" or "Stip."), dated August 14, 2026, filed herewith. All emphases are added, and internal citations, quotation marks, and alterations are omitted unless otherwise noted.

between experienced counsel, including a mediation before Jed D. Melnick, Esq. of JAMS, followed by Confirmatory Discovery after the parties reached an agreement-in-principle. That discovery included a review of internal emails and various iterations of the Investor Day presentation, as well as an interview with Defendant Michael McAuliffe ("Defendant"). As part of Plaintiff's due diligence in evaluating the Settlement's fairness, adequacy, and reasonableness, Plaintiff's counsel also conducted an interview with a former Luminar employee who was identified as CW 1 in the Third Amended Class Action Complaint ("TAC"), Dkt. No. 78. If approved, the Settlement will provide a cash recovery of $5.5 million for the benefit of the Settlement Class and fully resolve the claims in the Action against Defendant and Luminar Technologies, Inc. ("Luminar").[2] Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate, representing approximately 10.7% of the Settlement Class's maximum estimated damages if all claims were proven. The terms and conditions of the Settlement are set forth in the Stipulation.

Accordingly, Plaintiff requests that the Court enter the proposed Preliminary Approval Order (Stip. Ex. A), pursuant to Rule 23: (1) preliminarily approving the proposed class action Settlement; (2) preliminarily

[2] Defendant Luminar was voluntarily dismissed from the Action without prejudice. Dkt. No. 106.

certifying the Settlement Class for Settlement purposes; (3) approving the form, content, and manner of providing notice to the Settlement Class; (4) setting a hearing date to consider final approval of the Settlement, approval of the proposed Plan of Allocation for distributing the proceeds of the Settlement, and Lead Counsel's Fee and Expense Application (the "Final Approval Hearing"); (5) appointing RG/2 Claims Administration ("RG/2") as the Claims Administrator; and (6) granting such other and further relief as the Court may deem just and proper.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff alleges that, during Luminar's first-ever Investor Day conference on February 28, 2023, Defendant McAuliffe misled investors regarding the extent of Luminar's technological advancements in the lidar industry. *See* ¶ 18.[3] Specifically, Plaintiff contends that Defendant presented an image of a silicon photonic integrated circuit ("PIC") created by competitor Lidwave as if it were Luminar's own technology. *See* ¶ 99.

On March 17, 2023, *Forbes* published an article titled "Lidar Maker Luminar Accused of Using Image of Rival's Chip in Investor Conference." ¶¶ 26, 97. The article reported that Lidwave identified the challenged image as its own, sent Luminar a cease-and-desist letter threatening legal action for

---

[3] "¶___" references are to the TAC.

copyright infringement, and notified the SEC about Luminar's "misuse of [Lidwave's] product image to falsely promote [Luminar's] abilities and securities to investors." *Id.*

The article was later updated to reflect that Luminar had replaced the disputed image. ¶¶ 100–02. Plaintiff alleges that the market reacted negatively to these disclosures, causing a decline in Luminar's stock price that formed the basis of the putative Class's damages.

**B. Procedural History**

The action was filed on May 26, 2023. Dkt. No. 1. Thereafter, John Alms was appointed as Lead Plaintiff and Faruqi & Faruqi, LLP was appointed as Lead Counsel. Dkt. No. 29. The operative complaint is the TAC, filed on January 10, 2025. Dkt. No. 78. The TAC asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against McAuliffe and Luminar, alleging that they made materially false and misleading statements and omissions as described above. *See generally, id.*

On February 24, 2025, Luminar and McAuliffe filed a motion to dismiss, Dkt. No. 81, which was denied, Dkt. No. 89. Defendant and Luminar filed their Answer to the TAC on October 24, 2025. Dkt. No. 92.

On December 19, 2025, Luminar Technologies, Inc. filed a Suggestion of Bankruptcy under Chapter 11 of the Bankruptcy Code. Dkt. No. 99.

Thereafter, all claims against Luminar were stayed due to its bankruptcy proceedings, Dkt. No. 100, and the Parties agreed to stay the Action against Defendant McAuliffe temporarily while the Parties mediated the TAC's claims. Dkt. Nos. 103-04. The stay has since been extended pending approval of the Settlement. Dkt. No. 109.

On May 13, 2026, the Parties participated in a mediation before Mr. Melnick, an experienced mediator of securities cases, to explore a negotiated resolution of the Action. The mediation was preceded by the exchange of detailed mediation statements and included extensive discussions regarding the Parties' respective positions and the potential terms of a settlement.

With Mr. Melnick's assistance, the Parties reached an agreement-in-principle to resolve the Action for $5.5 million, subject to the completion of Confirmatory Discovery. Defendant then produced, at Lead Counsel's request, internal Luminar documents relating to the 2023 Investor Day presentation. After reviewing those documents, Lead Counsel used them while conducting interviews of Defendant and CW-1 concerning the internal processes for planning, preparing, and drafting the Investor Day presentation; how the challenged image was selected and inserted into the final Investor Day presentation; and the persons or groups responsible for selecting and reviewing materials shown to investors. The Confirmatory Discovery process has confirmed to Plaintiff and Lead Counsel that the Settlement is fair, reasonable,

and adequate.

## III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure ("Rule") 23(e) requires court approval before a class action may be settled. Courts reviewing a class action settlement employ a two-step process: *First*, the court conducts a preliminary review to determine whether it "will likely be able to" approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *See* Rule 23(e)(1)(B). *Second*, after notice has been provided and class members have had an opportunity to respond, the court holds another hearing to determine whether the settlement should receive final approval. *See* Rule 23(e)(2).

In determining whether a settlement is fair, adequate, and reasonable, Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

In addition to Rule 23(e)'s factors, courts in this Circuit also consider the factors set forth by the Eleventh Circuit in *Bennett v. Behring Corp.*, 737 F.2d

982 (11th Cir. 1984), which "overlap significantly" with the factors set forth in Rule 23(e)(2). *See City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, No. 9:22-CV-80418-MIDDLEBROOKS, 2024 WL 5468489, at *3 (S.D. Fla. Feb. 1, 2024). Those factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the [anticipated] complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement;[4] and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

### A. The Court "Will Likely Be Able to Approve" the Settlement

#### 1. The Settlement Class Was Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel" have adequately represented the class. "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-T-60SPF, 2020 WL 10486665, at *5 (M.D. Fla. Oct. 21, 2020). Both prongs are met here.

Lead Counsel is a national law firm that is qualified, experienced, and

[4] The Settlement Class Members' reaction cannot yet be determined because they have yet to receive notice of the Settlement.

able to conduct this litigation. *See* Decl. of James M. Wilson, Jr. ("Wilson Decl.") Ex. 1, Faruqi Firm resume. Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action and has fought to preserve those claims. Additionally, Plaintiff's interests are directly aligned with those of other Settlement Class Members, as he claims to have suffered damages from the same alleged conduct, and through those claims, seeks the same recovery from Defendant.

**2. The Settlement Was Negotiated At Arm's Length**

Rule 23(e)(2)(B) requires the Court to consider whether the proposed settlement "was negotiated at arm's length[.]" Here, Plaintiff and Lead Counsel diligently prosecuted this action by: (1) conducting a thorough investigation into the facts alleged, including reviewing and analyzing documents filed publicly with the SEC and press releases, news articles, financial information, and public statements issued by or concerning Luminar; (ii) consulting with a photonics industry expert (Dr. Lebby) and a damages consultant; (iii) drafting three complaints; and (iv) opposing three motions to dismiss. Only then did counsel engage in the mediation process before Mr. Melnick, which included the exchange of detailed mediation statements. *See Kukorinis v. Walmart, Inc.*, No. 8:22-cv-2402-VMC-TGW, 2024 WL 3226772, at *1, *5 (M.D. Fla. June 28, 2024) (approving settlement and noting that the settlement agreement resulted from "arm's-length negotiations" between

experienced counsel and with the assistance of a neutral and experienced mediator); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Given the stage of the proceedings, the Parties also agreed that Plaintiff would be provided with Confirmatory Discovery to ensure the Settlement is fair, reasonable, and adequate. At Lead Counsel's request, Defendant produced documents and emails concerning the planning and preparation of the 2023 Luminar Investor Day. Lead Counsel then conducted interviews of Defendant and CW-1 to address, among other topics, Luminar's internal processes for planning, preparing, and drafting the Investor Day presentation; how the challenged PIC image was selected and inserted into the final presentation; and the persons or groups responsible for selecting and reviewing materials shown to investors. This Confirmatory Discovery further informed Lead Counsel's assessment of the strengths and weaknesses of the claims and provided an additional basis for concluding the proposed Settlement is fair, reasonable, and adequate.

### 3. The Relief Provided Is Adequate

#### i. The Costs, Risks and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of

trial and appeal. This inquiry is addressed here with *Bennett* factors 1–4: "the likelihood of success at trial," the "range of . . . recovery," "the point . . . at which a settlement is fair, adequate, and reasonable," and the "complexity, expense, and duration of litigation." *Bennett*, 737 F.2d at 986.

Although Plaintiff remains confident in the merits of the claims and the evidence supporting them, Plaintiff also recognizes that continued litigation entails significant risks and uncertainties, which is "particularly so in securities class action litigation." *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021), *R. & R. adopted by*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

As with any securities fraud action, Plaintiff would face substantial challenges establishing all elements of his claims, as well as overcoming the inevitable defenses asserted by Defendant. Defendant has vigorously disputed each element of Plaintiff's claims and maintained that Plaintiff would be unable to prove liability at trial. Among other arguments, Defendant averred that Plaintiff could not establish that the challenged image was false or misleading, that the image was material to a reasonable investor, that Defendant acted with the requisite scienter or possessed any plausible motive to mislead investors, or that the alleged misconduct caused investors to suffer compensable losses. *See* Defs'. Mot. to Dismiss TAC 10–11, 17, 18–23, Dkt. No. 81.

Furthermore, absent the Settlement, Plaintiff would face substantial additional hurdles before any recovery could be obtained for the Settlement Class. Specifically, Plaintiff would soon be required to obtain and maintain class certification, a process that would involve complex and heavily contested issues, including market efficiency, price impact, and reliance. *See Barrett v. Apple Inc.*, No. 5:20-cv-04812-EJD, 2024 WL 5339480, at *5 (N.D. Cal. Dec. 19, 2024) ("[T]he notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

Plaintiff would then need to complete extensive fact and expert discovery. Fact discovery would involve subpoenas and depositions of third parties, including those from Israel-based Lidwave and the U.S. Securities and Exchange Commission, *see* TAC ¶¶ 29, 72, which are notoriously difficult to enforce. *See, e.g., Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *3 (S.D.N.Y. Sep. 29, 2022) (noting that courts readily recognize foreign discovery as a complexity favoring settlement). Expert discovery would be particularly extensive, as proving this case will rely in part on the status of Luminar's lidar's technology at the time of Investor Day as compared to the technology that was depicted in the image of Lidwave's PIC. *See* TAC ¶¶ 90–96.

Even if the case survives summary judgment and Plaintiff prevails at trial, he would have to successfully defend any favorable judgment through

post-trial motions and appeals to recover anything for the Class. *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict favoring plaintiff class and granting judgment as a matter of law for defendants). Each of these stages presents significant litigation risk, would require considerable time and resources, and could delay any recovery for years.

Moreover, continued litigation would substantially increase the costs borne by the Settlement Class. Prosecution of a securities fraud action through trial and appeal typically requires significant expenditures for expert witnesses, discovery, motion practice, and trial preparation, all of which would reduce the net recovery—if any—ultimately available. *See Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement and observing that discovery and trial preparation would have substantially increased costs to the class); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *1, *8 (N.D. Ga. Oct. 20, 2008) (recognizing that "[t]he reaction of a jury to [] expert testimony [in securities cases] is highly unpredictable").

The Settlement presented here ameliorates each of these risks and provides an immediate and certain cash recovery of $5.5 million for the benefit of the Settlement Class. Accordingly, the Settlement represents a favorable result when weighed against the risks of continued litigation.

Indeed, the Settlement Amount represents approximately 10.7% of the Class's maximum damages as estimated by Plaintiff's expert. This best-case scenario assumes that all Plaintiff's claims are proven. *See* Wilson Decl. Ex. 2 (Edward Flores, Svetlana Starykh, and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*, NERA (Jan. 21, 2025)), at 27, Fig. 23 (reporting the median recovery for securities class actions settled between January 2016 and December 2025 with estimated damages of $50–99 million was 4.4%); *Thorpe*, 2016 WL 10518902, at *10 (describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class's maximum damages and 10% of the class's most likely damages).

**ii. The Method for Distributing Relief Is Effective**

Rule 23(e)(2)(C)(ii) directs courts to consider the effectiveness of the proposed method for distributing relief to class members. The proposed Settlement satisfies this requirement. Consistent with the procedures routinely employed in securities class action settlements, the Settlement Fund established by the Settlement will be administered and distributed by an experienced Claims Administrator, RG/2, in accordance with a Court-approved Plan of Allocation. *See* Stip. ¶¶ 20, 23.

Under the Stipulation, Settlement Class Members who wish to participate in the Settlement will submit a completed Claim Form and supporting documentation evidencing their transactions in Luminar common

stock during the Class Period. *See* Stip. ¶¶ 23, 27.a. The Claim Form provides straightforward instructions regarding the information required to submit a claim and the deadlines for doing so. *See* Stip. ¶ 27. The Claims Administrator will review all submitted Claims and determine, first, whether each Claim is valid, in whole or in part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon the Authorized Claimant's recognized loss in relation to the total recognized losses of all Authorized Claimants ("Recognized Loss"), pursuant to the Plan of Allocation set forth in the Notice or such other plan of allocation as may be approved by the Court. *See* Stip. ¶ 23.

The distribution process proposed here is fair, efficient, and consistent with those routinely approved in federal securities class actions. If funds remain after the initial distribution, and if economically feasible, the Claims Administrator will conduct one or more subsequent distributions to Authorized Claimants until the Net Settlement Fund is exhausted or further distributions are no longer cost-effective. *See* Notice 21 (Stip. Ex. A-1).

The proposed notice program likewise satisfies Rule 23 and due process requirements. Pursuant to the Stipulation, Lead Counsel will cause the Claims Administrator to disseminate the Postcard Notice to potential Settlement Class Members who can be identified through reasonable efforts, including through Luminar's transfer records and information obtained from

nominees, brokerage firms, banks, and other institutions holding Luminar common stock on behalf of beneficial owners. *See* Stip. ¶ 21. The Claims Administrator will post the Notice, Claim Form, and other Settlement documents, including the Stipulation and Preliminary Approval Order, on the Settlement website and will cause the Summary Notice to be published in accordance with the Preliminary Approval Order. *Id.* These procedures are designed to provide the best notice practicable under the circumstances and to ensure Settlement Class Members receive adequate information regarding the Settlement, their rights, and the procedures for submitting Claims or requesting exclusion from the Settlement Class. *See* Section V, *infra.*

**iii. Terms of Attorneys' Fees**

Rule 23(e)(2)(C)(iii) directs courts to consider "the terms of any proposed award of attorney's fees, including timing of payment[.]" As set forth in the Stipulation and the Notice, Lead Counsel will apply for an award of attorneys' fees equal to one-third of the Settlement Fund, to be paid upon entry of the Court's Final Judgment. *See* Stip. ¶¶ 18-19. Courts within the Eleventh Circuit have repeatedly recognized that fee awards of one-third of a common fund are customary and reasonable in class action litigation. *See Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund");

*Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *4, *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that a 33% fee award is consistent with the market rate in class actions). Courts in this Circuit have likewise approved settlements providing payment of attorneys' fees shortly after entry of final judgment. *Brink v. Raymond James & Assocs., Inc.*, No. 15-CV-60334-DIMITROULEAS/SNOW, 2019 WL 12872742, at *2 (S.D. Fla. Oct. 25, 2019) (approving payment of attorneys' fees and expenses from common fund within 10 days of final judgment).

**iv. Related Agreements**

The Settling Parties have also entered into a Confidential Supplemental Agreement ("CSA"), dated August 14, 2026, which concerns requests for exclusion from the Settlement Class. *See* Stip. ¶ 37. Pursuant to the Parties' agreement, the CSA will not be filed with the Court or otherwise disclosed publicly unless the Court orders its disclosure. The CSA sets forth the threshold number of exclusions that would permit Defendant to terminate the Settlement pursuant to the terms of the Stipulation (the "Termination Threshold"). *Id.*

Such agreements are commonplace in securities class action settlements and are routinely considered consistent with Rule 23. The purpose of maintaining the confidentiality of the Termination Threshold is to avoid encouraging Settlement Class Members to coordinate exclusion requests in an

effort to trigger termination rights and thereby gain leverage for individual settlements. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *7 (finding Rule 23(e)(2)(C) satisfied where the parties entered into a similar confidential supplemental agreement concerning opt-outs); *Gordon v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB), 2022 WL 4296092, at *5 (E.D.N.Y. Sep. 15, 2022) (same).

### 4. Settlement Class Members are Treated Equitably

The Settlement treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). The Settlement does not provide preferential treatment to Plaintiff or any subset of the Settlement Class. Rather, all Settlement Class Members who submit valid Claims to the Claims Administrator will be eligible to receive a *pro rata* distribution from the Net Settlement Fund based upon their respective Recognized Losses under the Court-approved Plan of Allocation. Thus, each Settlement Class Member's recovery will be determined by the extent of his, her, or its alleged economic loss attributable to the conduct at issue in the Action. *See* Notice 17–22; *Malespin v. Longeveron Inc.*, No. 21-cv-23303-ALTMAN/Reid, 2023 WL 11820921, at *4 (S.D. Fla. Oct. 16, 2023) (finding Rule 23(e)(2)(D) satisfied where recoveries were allocated based upon class members' relative losses).

In addition, all Settlement Class Members who participate in the Settlement will be subject to and bound by the same terms of the Settlement.

Accordingly, the proposed Plan of Allocation ensures that similarly situated Settlement Class Members are treated alike and the Settlement proceeds are distributed in a fair and equitable manner.

Although Plaintiff will participate in the Settlement on the same basis as all other Settlement Class Members, Plaintiff may also seek an award not to exceed $5,000.00 for reasonable costs and expenses (including lost wages) directly related to his representation of the Settlement Class. Stip. ¶ 18. This is authorized by the PSLRA and does not render the Settlement inequitable. *See* 15 U.S.C. § 78u-4(a)(4).

## IV. CERTIFICATION OF THE SETTLEMENT CLASS

As part of the Settlement, Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class, which, as defined in Paragraph 1(vv) of the Stipulation, shall include all Persons or entities who purchased or otherwise acquired Luminar common stock from February 28, 2023 to March 17, 2023, inclusive, and were damaged thereby. Excluded from the Settlement Class are: (i) Defendant; (ii) members of the Immediate Family of Defendant; (iii) Luminar; (iv) all subsidiaries and affiliates of Luminar and the current and former directors and officers of Luminar or any of its subsidiaries or affiliates; (v) any firm, trust, partnership, corporation, or entity in which the Defendant or Luminar has a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of

all such excluded parties; and (vii) any Persons or entities who properly exclude themselves. *See* Stip. ¶ 1(vv).

Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). This is particularly true in securities class actions because such actions "serve both the public interest in maintaining the integrity of the securities markets and the private interests of investors who would not otherwise obtain redress of grievances through a multiplicity of small individual damages suits." *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL-ALTONGA/Torres, 2023 WL 9035671, at *8 (S.D. Fla. Nov. 13, 2023).

The Settlement Class must satisfy Rule 23(a)'s requirements of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b)(1), (2) or (3). *Id.* at 614.

The Eleventh Circuit further requires showing that membership in the proposed class is "ascertainable[.]" *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). "[A]scertainability" is easily satisfied in securities class actions where, as here, claimants must submit transaction records reflecting class membership to receive disbursement from the Settlement Fund. *Id.* at 1370; *Health Ins. Innovations*, 2020 WL 10486665, at *7.

### A. The Requirements of Rule 23(a) Are Met

#### 1. Numerosity is Established

Rule 23(a)(1) requires a class so numerous that joinder of all members is impracticable. "Securities fraud actions predicated on public misrepresentations typically satisfy Rule 23(a)(1) where the securities were traded on a national public exchange[.]" *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014). Here, Luminar's common stock traded on the NASDAQ Global Select Market during the Class Period at significant daily trading volumes. *See* TAC ¶¶ 42, 45. Accordingly, the Settlement Class is sufficiently numerous. *See also In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 617 (M.D. Fla. 2006) (numerosity "generally assumed to have been met in class action suits involving nationally traded securities").

#### 2. Commonality is Established

Common questions of law and fact exist among the Settlement Class, including: (i) whether Defendant violated the Exchange Act; (ii) whether Defendant omitted and/or misrepresented material facts; (iii) whether Defendant knew or recklessly disregarded that his statements were false and misleading; (iv) whether the price of Luminar common stock was artificially inflated during the Class Period; and (v) the extent and appropriate measure of damages sustained by Settlement Class Members. *See* TAC ¶ 203. Such "allegations arising from a fraudulent scheme illustrate the kind of common

questions of law and fact anticipated by the commonality requirement." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 274 (N.D. Ala. 2009); *see also In re NetBank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) ("Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met.").

**3. Typicality is Established**

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class. "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Plaintiff's claims arise from the same alleged misstatements and omissions as the claims of the other Settlement Class Members, are based on the same facts and legal theories, and will be proven with the same evidence. Typicality is therefore satisfied.

**4. Adequacy is Established**

Plaintiff has established his adequacy under Rule 23(a)(4) for the reasons set forth in Section III(A)(1), *supra*.

**B. The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) authorizes class certification if common questions of law or

fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Predominance inquiries are based "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging . . . securities fraud [claims]." *Id.* at 625.

Common questions predominate here for the same reasons that Rule 23(a)'s commonality element is satisfied. *See* Section IV.A.2), *supra.*

Courts have long recognized that the class action is not only a superior method, but may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by securities law violations. *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Four factors guide the superiority determination:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[5]

Fed. R. Civ. P. 23(b)(3).

Here, the utility of the class action method is substantial. Damaged members of the Settlement Class could number in the thousands—many of whom suffered losses too modest to justify prosecuting individual claims independently. Denying class certification for settlement purposes could potentially give rise to hundreds of individual actions, while other injured investors would decline to pursue their claims entirely because doing so would not be cost-effective. The complexity and uncertainty attending Luminar's Chapter 11 bankruptcy proceedings would only compound these difficulties, making individual recovery efforts even less practical and further underscoring the value of resolving all claims through a single, coordinated class proceeding. Furthermore, resolution of this Action as a class action provides significant benefits for Defendant, who could not otherwise obtain the class-wide release provided in the Stipulation and would therefore lack incentive to enter into the Settlement absent class certification.

---

[5] The Court need not decide whether, if tried, intractable management problems would arise, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Rule 23(b)(3)(D).

Certification for settlement purposes allows the Settlement to be administered in an organized and efficient manner. Accordingly, resolution of the Action as a class action is superior to any other available method of resolution. See *Dukes v. Air Can.*, No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *4 (M.D. Fla. Sep. 6, 2019) ("requiring multiple actions by each [class member] would be financially burdensome and judicially inefficient").

### C. The Faruqi Firm Should Be Appointed Class Counsel

Rule 23(g)(1) states that "a court that certifies a class must appoint class counsel." The Faruqi Firm has and will continue to fairly and adequately represent the Settlement Class. *See* Section III(A)(1), *supra*.

## V. THE NOTICE PROGRAM SHOULD BE APPROVED

Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Parties have agreed to use the traditional methods for notifying the Settlement Class Members: Postcard Notice (Stip. Ex. A-2) mailed to potential Settlement Class Members and nominees; Summary Notice (Stip. Ex. A-4) published in *Investor's Business Daily* and *PR Newswire*; a longform Notice

(Stip. Ex. A-1); and a Settlement website containing, *inter alia*, the Notice and Claim Form (Stip. Ex. A-3). The contents of these documents and the methods of dissemination satisfy the requirements of Rule 23, due process, and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 12533121, at *9-10 (S.D. Fla. Aug. 4, 2015) (approving similar notice plan).

Plaintiff also requests that the Court appoint RG/2 as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Courts have routinely appointed RG/2 to serve as a claims administrator in securities cases like this one. *See, e.g., Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2019 WL 3003920, at *2 (D. Neb. July 10, 2019).

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant his motion.

Dated: August 14, 2026

Respectfully Submitted,

By: /s/ *James M. Wilson, Jr.*
James M. Wilson, Jr.

James M. Wilson, Jr. (admitted pro hac vice)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (admitted pro hac vice)
FARUQI & FARUQI, LLP
3565 Piedmont Road NE Building Four

Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Lead Counsel for Lead Plaintiff*

Jonathan R. Gdanski
Jeffrey L. Haberman
SCHLESINGER LAW OFFICES, P.A.
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:
Jonathan@schlesingerlawoffices.com
JHaberman@schlesingerlawoffices.com

*Liaison Counsel for Lead Plaintiff*

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that the Parties' counsel have conferred over this motion and represent that the Parties mutually agree on the relief requested herein.

Dated: August 14, 2026

Respectfully Submitted,

By: /s/ James M. Wilson, Jr.
James M. Wilson, Jr.

James M. Wilson, Jr. (admitted pro hac vice)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (admitted pro hac vice)
FARUQI & FARUQI, LLP
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Lead Counsel for Lead Plaintiff*

Jonathan R. Gdanski
Jeffrey L. Haberman
SCHLESINGER LAW OFFICES, P.A.
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Email:
Jonathan@schlesingerlawoffices.com

JHaberman@schlesingerlawoffices.com

*Liaison Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

By: *__/s/ James M. Wilson, Jr.__*
James M. Wilson, Jr. (admitted *pro hac vice*)